UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> **ARCH COAL, INC.,** *et al.,* <br><br> Debtors.[1] | Chapter 11 <br> Case No. 16-40120-705 <br><br> **(Jointly Administered)** <br><br> **Objection Deadline:** <br> February 16, 2016 <br><br> **Hearing Date and Time (if necessary):** <br> February 23, 2016 10:00 a.m. <br> (Prevailing Central Time) <br><br> **Hearing Location (if necessary):** <br> Courtroom 7 South |

**NOTICE OF THE DEBTORS' APPLICATION FOR AUTHORITY TO
EMPLOY AND RETAIN PJT PARTNERS LP AS INVESTMENT BANKER
FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

PLEASE TAKE NOTICE that this application is scheduled for hearing on February 23, 2016, at 10:00 a.m. (prevailing Central Time), in Bankruptcy Courtroom 7 South, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102.

WARNING: ANY RESPONSE OR OBJECTION TO THIS APPLICATION MUST BE FILED WITH THIS COURT BY FEBRUARY 16, 2016.  A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED.  FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.

---

[1] The Debtors are listed on Schedule 1 attached hereto.  The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY
AND RETAIN PJT PARTNERS LP AS INVESTMENT BANKER
FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

NOW COME Arch Coal, Inc. ("**Arch**") and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") and move this Court for entry of an order for the authority to retain and employ PJT Partners LP ("**PJTP**" or the "**Advisor**") as their investment banker *nunc pro tunc* to the Petition Date (as defined below) to perform the services that will be required during these chapter 11 cases. In support of this Application (the "**Application**"), the Debtors show the Court as follows:

**Relief Requested**

1. By this Application and pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014(A) and 2016-1(A) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Missouri (the "**Local Rules**"), the Debtors seek entry of an order in substantially the form included herewith (the "**Proposed Order**"):[2] (i) authorizing the Debtors to employ and retain PJTP *nunc pro tunc* to the Petition Date, as investment banker to the Debtors, under the terms and conditions set forth in that certain engagement letter (the "**Engagement Letter**") dated November 27, 2015, a copy of which is annexed as <u>Exhibit 1</u> to the Buschmann Declaration (as defined below) and incorporated by reference herein, (ii) approving the terms of the Advisor's employment, including the proposed fee structure and indemnification provisions set forth in the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code, effective *nunc pro tunc* to the Petition Date, *provided* that the proposed fee structure and indemnification

---

[2] A copy of the Proposed Order will be made available on the Debtors' case information website at *https://cases.primeclerk.com/archcoal*.

2

provisions set forth in the Engagement Letter shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except solely by the Office of the U.S. Trustee for the Eastern District of Missouri (the "**U.S. Trustee**"), who, for the avoidance of doubt, shall be entitled to review applications for payment of compensation and reimbursement of expenses of the Advisor under section 330 of the Bankruptcy Code, and (iii) granting such other and further relief as the Court deems appropriate.  In support of this Application, the Debtors submit the *Declaration of Mark Buschmann in Support of Debtors' Application for Authority to Employ and Retain PJT Partners LP as Investment Banker for the Debtors Nunc Pro Tunc to the Petition Date* (the "**Buschmann Declaration**") attached hereto as Exhibit A and the *Declaration and Statement of Annah Kim-Rosen in Support of Debtors' Application for Authority to Employ and Retain PJT Partners LP as Investment Banker for the Debtors Nunc Pro Tunc to the Petition Date* (the "**Kim-Rosen Declaration**") attached hereto as Exhibit B.

## Jurisdiction

2.      This Court has jurisdiction over this Application under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

3.      The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 11, 2016 (the "**Petition Date**").

4.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

3

5. The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* entered by this Court on January 13, 2016 in each of the Debtors' cases.

6. The Court entered the *Order Establishing Certain Notice, Case Management and Administrative Procedures* on January 21, 2016 [ECF No. 155] (the "**Case Management Order**").

7. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Declaration of John T. Drexler, Senior Vice President and Chief Financial Officer of Arch Coal, Inc.*, filed on the Petition Date [ECF No. 3], which is incorporated herein by reference.

### The Advisor's Qualifications

8. The Advisor is well qualified to serve as the Debtors' investment banker. As detailed in the Buschmann Declaration, the Advisor is an independent financial advisory firm, listed on the New York Stock Exchange (ticker symbol: PJT). The Advisor's restructuring and reorganization advisory operation is one of the world's leading advisory services providers to companies and creditors in restructurings and bankruptcies. PJTP is a wholly owned subsidiary of PJT Partners Holdings LP, of which PJT Partners, Inc. acts as sole general partner. PJT Partners Inc. was formed in part through a multi-step merger and spin off transaction whereby Blackstone Advisory Partners L.P.'s ("**Blackstone**")[3] restructuring and advisory groups were spun-off to form PJTP and its affiliated operating entities.

---

[3] One of Blackstone's subsidiaries, GSO Capital Partners, LP ("**GSO**"), is a member of the Official Committee of Unsecured Creditors. GSO is the credit-oriented asset management subsidiary of Blackstone. Blackstone's restructuring and advisory groups were separate and distinct from GSO.

4

9. PJTP's restructuring group has approximately 60 employees globally. The members and senior executives of the Advisor's restructuring and reorganization practice have assisted and advised numerous chapter 11 debtors in the development of plans of reorganization and are experienced in analyzing restructuring and related chapter 11 issues. The members and senior executives of the Advisor's restructuring and reorganization practice have been particularly active in large, complex and high-profile bankruptcies and restructurings, having advised in the following matters, among others, in their chapter 11 reorganizations: AbitibiBowater Inc.; Adelphia Communications Corporation; Ambac Financial Group, Inc.; Cengage Learning, Inc.; Central European Distribution Corp. (CEDC); Delta Air Lines, Inc.; Dynegy Inc.; Eastman Kodak Company; Edison Mission Energy; Enron Corporation; Excel Maritime Carriers, Ltd.; Genco Shipping & Trading Limited; Global Crossing Ltd.; Flag Telecom Holdings Limited; Flying J. Inc.; Houghton Mifflin Harcourt Publishing Company; Lee Enterprises Inc.; LightSquared Inc.; Los Angeles Dodgers LLC; LyondellBasell Industries; Magnetation LLC; Mirant Corp.; NewPage Corporation; NTK Holdings, Inc.; Patriot Coal Corporation; SemGroup; TerreStar Networks Inc.; Tribune Company; W.R. Grace & Co.; and Winn-Dixie Stores, Inc. In addition, the restructuring group has provided general restructuring advice to such major companies as Ford Motor Company, The Goodyear Tire & Rubber Company and Xerox Corporation.

10. Since February 4, 2015, the Advisor was retained by the Debtors on a prepetition basis to advise on the Debtors' capital raising options and restructuring and reorganization efforts. During this time, the Advisor has become intimately familiar with the Debtors' businesses, affairs, assets and contractual arrangements. The Advisor has worked closely with the Debtors to analyze the Debtors' financial positions and to assist the Debtors in

5

evaluating various restructuring alternatives, including raising new capital. Accordingly, the Advisor has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtors' chapter 11 cases.

11. As a result of the prepetition work performed on behalf of the Debtors, the Advisor has acquired significant knowledge of the Debtors' financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents and other related material information. Likewise, in providing prepetition services to the Debtors, the Advisor's professionals have worked closely with the Debtors' management, board of directors and other advisors. If this Application is approved, several of the Advisor's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors. Such personnel, including Timothy Coleman, Mark Buschmann and Scott Mates, will lead the team of the Advisor's professionals and will work closely with the Debtors' management and other professionals throughout the reorganization process. Accordingly, as a result of the Advisor's representation of the Debtors prior to the commencement of these chapter 11 cases and the Advisor's extensive experience in representing chapter 11 debtors, the Advisor is well qualified to provide these services and represent the Debtors during their chapter 11 cases.

### The Advisor's Disinterestedness

12. To the best of the Debtors' knowledge, except as set forth in the Kim-Rosen Declaration: (i) the Advisor has no relevant connection with any of the Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (ii) the Advisor (and the Advisor's professionals) are not creditors, equity security holders or insiders of any of the Debtors; (iii) neither the Advisor nor any of its

6

professionals is or was, within two years of the Petition Date, a director, officer or employee of any of the Debtors; and (iv) neither the Advisor nor any of its professionals hold or represent an interest materially adverse to any of the Debtors, their estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with or interest in any of the Debtors, or for any other reason.  Accordingly, the Debtors submit that the Advisor is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and the Advisor's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

13. The Debtors' knowledge, information and belief regarding the matters set forth herein are based upon, and made in reliance on, the Kim-Rosen Declaration.  The Advisor will continue to monitor for any matters that might affect its disinterested status.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of the Advisor's retention are discovered or arise, the Advisor will use reasonable efforts to promptly file a supplemental declaration.

14. Before the Petition Date, the Debtors paid the Advisor $3,047,347.92[4] in fees and expenses.  The aforementioned amount includes out-of-pocket prepetition expenses incurred by the Advisor and a $30,000 expense estimate.[5]

## Services to Be Rendered

15. Subject to further order of this Court, and in accordance with the terms of the Engagement Letter, the Debtors request the employment and retention of the Advisor to

---

[4] This amount includes fees and expenses incurred pursuant to the terms of that certain engagement letter dated February 4, 2015 (the "**Exchange Engagement Letter**"), under which PJTP provided certain exchange-related investment banking services to the Debtors (the "**Exchange Services**").  The Exchange Services concluded in the fall of 2015 and the terms of the Exchange Engagement Letter no longer apply.

[5] Upon conclusion of the Advisor's employment, any portion of the expense estimate not applied to actual expenses incurred, shall be returned to the Debtors.

7

render the following investment banking services to the Debtors as necessary, appropriate and feasible and as may be requested by the Debtors:

(a) Assist in the evaluation of the Debtors' businesses and prospects;

(b) Assist in the development of the Debtors' long-term business plan and related financial projections;

(c) Assist in the development of financial data and presentations to the Debtors' Boards of Directors, various creditors and other third parties;

(d) Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

(e) Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring (as defined below);

(f) Assist the Debtors in arranging a financing if requested by the Debtors, including, but not limited to, debtor-in-possession financing and exit financing;

(g) Provide strategic advice with regard to restructuring or refinancing the Debtors' obligations;

(h) Evaluate the Debtors' debt capacity and alternative capital structures;

(i) Participate in negotiations among the Debtors and their creditors, suppliers, lessors and other interested parties;

(j) Value securities offered or to be offered by the Debtors in connection with a Restructuring;

(k) Advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of credit facilities;

(l) Assist in arranging financing for the Debtors, as requested;

(m) Provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services; and

(n) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

16. The services that the Advisor will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, the Advisor will carry out unique functions and will use

8

reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

## Professional Compensation

17.　In consideration of the services to be provided by the Advisor, and as more fully described in the Engagement Letter, subject to this Court's approval, the Debtors and the Advisor have agreed that the Advisor shall, in respect of its services, be paid in cash under the following fee structure (the "**Fee Structure**"):[6]

(a)　Monthly Fee.  The Debtors shall pay the Advisor a monthly advisory fee (the "**Monthly Fee**") of $250,000 in cash; the first Monthly Fee was payable on November 27, 2015 and additional installments of such Monthly Fee will be payable in advance by the 27th day of each subsequent month until the Engagement Letter is terminated.

(b)　Capital Raising Fee.  The Debtors shall pay the Advisor an additional fee for any financing arranged by PJTP, at the Debtors' request (the "**Capital Raising Fee**") of 0.75% of the total issuance size for senior debt financing (including debtor-in-possession financing), 3.0% of the total issuance size for junior debt financing and 5.0% of the issuance amount for equity financing, payable upon receipt of a binding commitment letter; *provided* that, if financing arranged by PJTP (and use of proceeds generated from such financing) is the only Restructuring[7] undertaken, PJTP, in its sole discretion, may choose to be paid either the Capital Raising Fee or the Restructuring fee, but not both.

---

[6] This summary of the Engagement Letter contained in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent that there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Unless otherwise defined herein, capitalized terms used in this summary shall have the meanings ascribed to such terms in the Engagement Letter.

[7] Except as otherwise provided in the Engagement Letter, a "**Restructuring**" shall be deemed to have been consummated upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Debtors and their creditors involving the compromise of the face amount of such obligations (as defined in the Engagement Letter) or the conversion of all or part of such obligations into alternative securities, including equity, in the case of an out-of-court restructuring; (b) the execution, confirmation and consummation of a plan of reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring; or (c) in the case of a sale or other disposition of all or substantially all of the assets or equity of the Debtors, upon the closing of such sale.  Notwithstanding the foregoing, (a) a Restructuring specifically shall be deemed to exclude any assumption at face value of obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets or lines of business of the Debtors and (b) in no event shall more than one Restructuring Fee be payable hereunder;

9

(c) <u>Restructuring Fee.</u>  The Debtors shall pay the Advisor an additional fee (the "**Restructuring Fee**") equal to $13,500,000, payable in cash, upon the consummation of the Restructuring.

(d) <u>Expense Reimbursements</u>.

    (i) In addition to the fees described above, the Debtors agree to reimburse the Advisor, promptly upon request, for its actual, reasonable and properly documented out-of-pocket expenses incurred during the Engagement (as defined below), including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of the Advisor's counsel (not to exceed $25,000 without the Debtors' written consent, such consent not to be unreasonably withheld, conditioned or delayed) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses; *provided,* however, that PJTP shall not incur reimbursable out-of-pocket expenses in excess of $50,000 without the prior written approval (including via email) of the Debtors (such consent not to be unreasonably withheld, conditioned or delayed).

    (ii) Further, in connection with the reimbursement and contribution provisions set forth in the Engagement Letter and Attachment A of the Engagement Letter (the "**Indemnification Agreement**"), the Debtors agree to reimburse each Indemnified Party for all actual, reasonable and documented out-of-pocket expenses (including actual, reasonable and documented fees, expenses and disbursements of counsel; *provided*, *however*, that in no event shall the Debtors be obligated to pay the fees and expenses of more than one counsel related to a request) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the engagement under the Engagement Letter or the Indemnification Agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by the Debtors.

10

18. The advisory services and compensation arrangement set forth in the Engagement Letter do not encompass other investment banking services or transactions that may be undertaken by the Advisor at the request of the Debtors, including the arranging of debt or equity capital (except as provided in the Engagement Letter), issuing fairness opinions or any other specific services not set forth in the Engagement Letter. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between the Advisor and the appropriate party, and the Debtors and the Advisor will seek authority from the Court for any such expanded retention.

19. The Debtors understand that the terms and conditions of the Advisor's employment are reasonable and comparable to compensation generally charged by financial advisors and investment bankers of a similar stature for comparable engagements, both in and out of court. Given the numerous issues that the Advisor may be required to address in these chapter 11 cases, the Advisor's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for the Advisor's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors agree that the fee arrangements in the Engagement Letter are reasonable under the standards set forth below.

20. The Debtors understand that the terms of the Advisor's employment and compensation, as described in the Engagement Letter, are consistent with employment and the type of compensation arrangements typically entered into by the Advisor when providing financial advisory services and investment banking services. The Advisor's employment and compensation arrangements are competitive with those entered into by other investment banking

11

firms when rendering comparable services. The Advisor and the Debtors believe that the foregoing compensation requirements are both reasonable and market-based.

21. In accordance with Local Rule 2016-2(B), the Debtors propose that (a) PJTP be allowed to submit regular monthly invoices to the parties included in the Rule 9013-3(D) Master Service List and (b) pursuant to Local Rule 2016-2(B), the Debtors be authorized to pay up to 80% of fees and 100% of expenses on a monthly basis, subject to later court approval.[8]

22. To the best of the Debtors' knowledge, information and belief, and except and to the extent disclosed in the Buschmann Declaration, no promises have been received by the Advisor as to compensation in connection with these chapter 11 cases other than as outlined in the Engagement Letter, and the Advisor has no agreement with any other entity to share any compensation received with any person other than the principals and employees of the Advisor.

### The Indemnification Provisions Are Appropriate

23. As more fully described in the indemnification, reimbursement and contribution provisions set forth in the Indemnification Agreement, the Debtors have agreed, among other things, to indemnify and hold harmless the Advisor and other "**Indemnified Parties**" (as defined in the Indemnification Agreement) from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several (collectively, "**Liabilities**"), related to, arising out of or in connection with the engagement (the "**Engagement**") under the Engagement Letter. The Debtors, however, will not be liable for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence, bad

---

[8] The Debtors intend to request by motion an Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, by which PJTP and certain other professionals would be compensated on an interim basis.

faith, willful misconduct or fraud of an Indemnified Party (such provisions being the "**Indemnification Provisions**"). However, the following conditions will apply with respect to any such indemnification, reimbursement or contribution pursuant to the Indemnification Provisions:

    (a)    All requests of Indemnified Parties for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, reimbursement or contribution conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, reimbursement or contribution is sought; *provided*, *however*, that in no event shall Indemnified Party be indemnified in the case of its own bad faith, fraud, gross negligence or willful misconduct.

    (b)    In the event that Indemnified Party seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Indemnified Party for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Indemnified Party's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

24.     The Debtors submit that such indemnification is standard in the specialized financial advisory industry and that the provision of such indemnification by the Debtors is fair and reasonable considering the Advisor's qualifications and the expectations of other special financial advisors in connection with engagements of this scope and size.

### Approval of Engagement Pursuant to Section 328(a) of the Bankruptcy Code

25.     Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional

13

person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) permits the Court to approve the terms of the Advisor's engagement as set forth in the Engagement Agreement, including the Fee Structure and the Indemnification Agreement.

26. As recognized by numerous courts, Congress intended in section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment."); *see also Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008) (quoting *In re Nat'l Gypsum*, 123 F.3d at 862-63).

27. The Debtors believe that the terms and provisions of the Engagement Letter, including the Fee Structure and the Indemnification Agreement, are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. Such terms and provisions appropriately reflect (i) the nature of the services to be provided by the Advisor and (ii) the Fee Structure and indemnification provisions typically utilized by the Advisor and other leading financial advisory firms, which do not bill their time on an hourly basis and are generally compensated on a transactional basis. In particular, the Debtors believe

14

that the Fee Structure creates a proper balance between fixed and monthly fees based on the successful consummation of certain transactions.

28.   The Debtors submit that the terms and provisions of the Engagement Letter, including the Fee Structure and the Indemnification Agreement, are reasonable terms and conditions of employment in light of (i) industry practice, (ii) market rates charged for comparable services both in and out of the chapter 11 context and (iii) the Advisor's restructuring expertise as well as its capital markets knowledge and financing skills.

### Maintenance of Time Records

29.   The Advisor has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a monthly and fixed-rate basis, which is customary in the investment banking industry.  It is not the general practice of investment banking firms, including the Advisor, to keep detailed time records similar to those customarily kept by attorneys.  Accordingly, if the Court grants the Application, the Advisor will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Fee Guidelines and any applicable orders of this Court.  Because the Advisor is being compensated with a fixed Monthly Fee, Capital Raising Fee and Restructuring Fee, the Debtors request that the Advisor not be required to submit time records in support of its fee applications.

30.   The Advisor will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  The Advisor's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter.  Except as necessary to comply with an applicable order, all such expense billings are in accordance with the Advisor's customary practices.

## Notice

31.     Consistent with the Case Management Order, the Debtors will serve notice of this Application on (a) the Core Parties and (b) any Non-ECF Parties (collectively, the "**Notice Parties**").  All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this Application through the ECF system no later than the day after its filing with the Court.  A copy of this Application and any order approving it will also be made available on the Debtors' Case Information Website (located at *https://cases.primeclerk.com/archcoal*). A copy of the Proposed Order will be made available on the Debtors' Case Information Website. The Proposed Order may be modified or withdrawn at any time without further notice. If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Debtors' Case Information Website, and no further notice will be provided. In light of the relief requested, the Debtors submit that no further notice is necessary.

## No Prior Request

32.     The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that this Court:

(a)     authorize the Debtors to retain and employ PJTP as their investment banker in these chapter 11 cases on the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc* to the Petition Date;

(b)     approve the terms of PJTP's employment, including the proposed Fee Structure and Indemnification Agreement set forth in the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code, effective *nunc pro tunc* to the Petition Date; and

16

(c) grant the Debtors such other and further relief as is just and proper.

[*Signature Page Follows*]

Dated: February9, 2016

_____
Robert G. Jones
Senior Vice President and General Counsel
Arch Coal, Inc.

*[Signature Page to PJTP Retention Application]*

# SCHEDULE 1
## Debtor Entities

1. ACI Terminal, LLC
2. Allegheny Land Company
3. Apogee Holdco, Inc.
4. Arch Coal, Inc.
5. Arch Coal Sales Company, Inc.
6. Arch Coal West, LLC
7. Arch Development, LLC
8. Arch Energy Resources, LLC
9. Arch Reclamation Services, Inc.
10. Arch Western Acquisition Corporation
11. Arch Western Acquisition, LLC
12. Arch Western Bituminous Group, LLC
13. Arch Western Finance LLC
14. Arch Western Resources, LLC
15. Arch of Wyoming, LLC
16. Ark Land Company
17. Ark Land KH, Inc.
18. Ark Land LT, Inc.
19. Ark Land WR, Inc.
20. Ashland Terminal, Inc.
21. Bronco Mining Company, Inc.
22. Catenary Coal Holdings, Inc.
23. Catenary HoldCo, Inc.
24. Coal-Mac, Inc.
25. CoalQuest Development LLC
26. Cumberland River Coal Company
27. Energy Development Co.
28. Hawthorne Coal Company, Inc.
29. Hobet Holdco, Inc.
30. Hunter Ridge, Inc.
31. Hunter Ridge Coal Company
32. Hunter Ridge Holdings, Inc.
33. ICG, Inc.
34. ICG, LLC
35. ICG Beckley, LLC
36. ICG East Kentucky, LLC
37. ICG Eastern, LLC
38. ICG Eastern Land, LLC
39. ICG Illinois, LLC
40. ICG Knott County, LLC
41. ICG Natural Resources, LLC
42. ICG Tygart Valley, LLC
43. International Coal Group, Inc.
44. Jacobs Ranch Coal LLC
45. Jacobs Ranch Holdings I LLC
46. Jacobs Ranch Holdings II LLC
47. Juliana Mining Company, Inc.
48. King Knob Coal Co., Inc.
49. Lone Mountain Processing, Inc.
50. Marine Coal Sales Company
51. Melrose Coal Company, Inc.
52. Mingo Logan Coal Company
53. Mountain Coal Company, L.L.C.
54. Mountain Gem Land, Inc.
55. Mountain Mining, Inc.
56. Mountaineer Land Company
57. Otter Creek Coal, LLC
58. Patriot Mining Company, Inc.
59. P.C. Holding, Inc.
60. Powell Mountain Energy, LLC
61. Prairie Coal Company, LLC
62. Prairie Holdings, Inc.
63. Saddleback Hills Coal Company
64. Shelby Run Mining Company, LLC
65. Simba Group, Inc.
66. Thunder Basin Coal Company, L.L.C.
67. Triton Coal Company, L.L.C.
68. Upshur Property, Inc.
69. Vindex Energy Corporation
70. Western Energy Resources, Inc.
71. White Wolf Energy, Inc.
72. Wolf Run Mining Company