**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**ARCH COAL, INC.,** *et al.,*<br><br>Debtors.[1] | Chapter 11<br>Case No. 16-40120-705<br><br>**(Jointly Administered)**<br><br>**Objection Deadline:**<br>February 16, 2016<br><br>**Hearing Date and Time (if necessary):**<br>February 23, 2016, 10:00 a.m. (Prevailing Central Time)<br><br>**Hearing Location (if necessary):**<br>Courtroom 7 South |

**NOTICE OF THE DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY AND
RETAIN FTI CONSULTING, INC. AS RESTRUCTURING FINANCIAL ADVISOR
TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

PLEASE TAKE NOTICE that this application is scheduled for hearing on February 23, 2016, at 10:00 a.m. (prevailing Central Time), in Bankruptcy Courtroom 7 South, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102.

**WARNING:** ANY RESPONSE OR OBJECTION TO THIS APPLICATION MUST BE FILED WITH THIS COURT BY FEBRUARY 16, 2016. A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED. FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.

---
[1] The Debtors are listed on Schedule 1 attached hereto. The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**DEBTORS' APPLICATION FOR AUTHORITY TO EMPLOY AND
RETAIN FTI CONSULTING, INC. AS RESTRUCTURING FINANCIAL ADVISOR
TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

NOW COME Arch Coal, Inc. ("**Arch**") and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") and move this Court for entry of an order authorizing the Debtors to employ and retain FTI Consulting, Inc. ("**FTI**" or the "**Advisor**") as restructuring financial advisor to the Debtors *nunc pro tunc* to the Petition Date (as defined below) to provide the restructuring financial advisory services that will be required during these chapter 11 cases. In support of this application (the "**Application**"), the Debtors show the Court as follows:

**Relief Requested**

1.  By this Application, and pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-(A) and 2016-1(A) of the Local Rules of Bankruptcy Court for the Eastern District of Missouri (the "**Local Rules**"), the Debtors seek entry of an order (the "**Proposed Order**")[2] in substantially the form attached hereto authorizing (i) the Debtors to employ and retain FTI as restructuring financial advisor to the Debtors *nunc pro tunc* to the Petition Date (the "**Engagement**") under the terms and conditions set forth in that certain engagement letter (the "**Engagement Letter**"), dated September 2, 2015, a copy of which is attached as <u>Exhibit 1</u> to the Boyko Declaration (as defined below) and incorporated by reference herein, (ii) approving the terms of FTI's employment, including the proposed fee structure and indemnification provisions set forth in the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code, effective *nunc pro tunc* to the

---

[2] A copy of the Proposed Order will be made available on the Debtors' Case Information Website at *https://cases.primeclerk.com/archcoal*.

Petition Date, *provided* that the proposed fee structure and indemnification provisions set forth in the Engagement Letter shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by solely the Office of the U.S. Trustee for the Eastern District of Missouri (the "**U.S. Trustee**"), who, for the avoidance of doubt, shall be entitled to review applications for payment of compensation and reimbursement of expenses of the Advisor under section 330 of the Bankruptcy Code, and (iii) granting such other and further relief as the Court deems appropriate. In support of this Application, the Debtors submit the *Declaration of Alan Boyko in Support of the Debtors' Application for Authority to Employ and Retain FTI Consulting, Inc. as Restructuring Financial Advisor to the Debtors Nunc Pro Tunc to the Petition Date* (the "**Boyko Declaration**"), attached hereto as <u>Exhibit A</u>.

## Jurisdiction

2. This Court has jurisdiction over this Application under 28 U.S.C. § 1334. Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

3. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 11, 2016 (the "**Petition Date**").

4. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner.

5. The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* entered by this Court on January 13, 2016 in each of the Debtors' cases.

6. The Court entered the *Order Establishing Certain Notice, Case Management and Administrative Procedures* on January 21, 2016 [ECF No. 155] (the "**Case Management Order**").

7. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Declaration of John T. Drexler, Senior Vice President and Chief Financial Officer of Arch Coal, Inc.*, filed on the Petition Date [ECF No. 3], which is incorporated herein by reference.

### The Advisor's Qualifications

8. FTI is well qualified to serve as the Debtors' restructuring financial advisor. As detailed in the Boyko Declaration, FTI consists of a worldwide network of 4,400 employees in 26 countries on six continents and has a wealth of experience providing financial advisory services in restructurings and reorganizations. FTI enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States and is particularly well qualified to advise the Debtors during these chapter 11 cases.

9. The members and senior executives of FTI's restructuring and reorganization practice have assisted and advised numerous chapter 11 debtors and are experienced in analyzing restructuring and related chapter 11 issues. The members and senior executives of FTI's restructuring and reorganization practice have been particularly active in large, complex and high-profile bankruptcies and restructurings, having served as financial and strategic advisors in numerous cases, including, among others: *In re Am. Apparel, Inc.*, Case No. 15-12055 (BLS) (Bankr. D. Del. Oct. 5, 2015); *In re Quiksilver, Inc.*, Case No. 15-11880 (BLS) (Bankr. D. Del. Sept. 9, 2015); *In re The Great Atl. & Pac. Tea Co.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 19, 2015); *In re Magnetation LLC*, Case No. 15-50307 (GFK) (Bankr. D. Minn.

May 5, 2015); *In re Corinthian Colleges, Inc.*, Case No. 15-10952 (KJC) (Bankr. D. Del. May 4, 2015); *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re Seal123, Inc.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Mar. 18, 2015); *In re Suntech America, Inc.*, Case No. 15-10054 (CSS) (Bankr. D. Del. Mar. 17, 2015); *In re RadioShack Corporation*, Case No. 15-10197 (BLS) (Bankr. D. Del. Mar. 12, 2015); *In re Chassix Holdings, Inc.*, Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Mar. 12, 2015); *In re Mineral Park, Inc.*, Case No. 14-11996 (KJC) (Banks. D. Del. Sept. 23, 2014).

10. Since September 2015, the Debtors have retained FTI on a prepetition basis to advise on the Debtors' restructuring efforts. During this time, FTI has become intimately familiar with the Debtors' financial affairs, business operations, assets, contractual arrangements, capital structure, key stakeholders and other related material information. Likewise, in providing prepetition services to the Debtors, FTI's professionals have worked closely with the Debtors' management, board of directors and other advisors. In particular, FTI has worked closely with the Debtors to analyze the Debtors' financial positions and to assist the Debtors in preparing for a smooth entry into chapter 11. Accordingly, as a result of the prepetition work performed on behalf of the Debtors and the significant knowledge gained thereby, FTI has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtors' chapter 11 cases.

11. If this Application is approved, several of FTI's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to Arch as well as to the other Debtor affiliates. Such personnel, including Alan Boyko and Paul Hansen (collectively the "**Engagement Leaders**"), will lead the team of FTI's professionals and will work closely with the Debtors' management and other professionals throughout the chapter 11 process.

12. With its experienced professionals, and its understanding of the Debtors' financial history and business operations, FTI fulfills a critical need that complements the services to be provided by the Debtors' other professionals. The Debtors' retention of FTI, with its resources and capabilities, together with its prepetition experience advising the Debtors, is crucial to the success of these chapter 11 cases.

**FTI's Disinterestedness**

13. To the best of the Debtors' knowledge, except as set forth in the Boyko Declaration: (i) FTI and its professionals have no relevant connection to any of the Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, (ii) FTI and its professionals are not creditors, equity security holders or insiders of any of the Debtors, (iii) neither FTI nor any of its professionals are or were, within two years of the Petition Date, a director, officer, or employee of any of the Debtors, and (iv) neither FTI nor its professionals hold or represent an interest materially adverse to any of the Debtors, their estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason. Accordingly, the Debtors submit that FTI is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and FTI's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

14. The Debtors' knowledge, information and belief regarding the matters set forth herein are based upon, and made in reliance on, the Boyko Declaration. FTI will continue to monitor for any matters that might affect its disinterested status. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of FTI's

-6-

retention are discovered or arise, FTI will use reasonable efforts to promptly file a supplemental declaration.

15. As of the Petition Date, the Debtors do not owe FTI any fees for services performed or expenses incurred under the Engagement Letter. According to FTI's books and records, in the 90 days before the Petition Date, the Debtors paid FTI $1,241,772.51 in fees and expenses. The aforementioned amount includes reimbursement of out-of-pocket prepetition expenses incurred by FTI. As further described in the Boyko Declaration, in addition to the foregoing amount, as of the Petition Date, FTI held approximately $339,658.60[3] as Cash on Account (of which approximately $89,658.60 was received in the 90 days before the Petition Date) and was not a creditor of the Debtors.

**Services to Be Rendered**

16. Subject to further order of this Court, and in accordance with the terms of the Engagement Letter, the Debtors request the employment and retention of FTI to render the following financial advisory, consulting and restructuring services to the Debtors as necessary, appropriate and feasible and as may be requested by the Debtors (collectively, the "**Services**"):[4]

(a) Meet with key management (as approved by the Debtors) to discuss the Debtors' current operations and liquidity position;

(b) Develop an understanding of the Debtors' current operations, working capital and liquidity;

(c) Review the Debtors':

  i. current financial position and financial forecasts;

  ii. projected cash flows and related processes;

---

[3] As of the date of this Application, FTI's final prepetition expenses are in the process of being reconciled with the Cash on Account amount and therefore the amount disclosed herein is approximate.

[4] This summary of the services to be rendered under the Engagement Letter is qualified in its entirety by reference to the applicable provisions of the Engagement Letter. To the extent that there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Unless otherwise defined herein, capitalized terms used in this summary shall have the meanings ascribed to such terms in the Engagement Letter.

  iii. assumptions related to the future operating parameters reflected in the forecasts;

  iv. bonding and reclamation obligations;

  v. workers' compensation and black lung obligations;

  vi. permitting and related fees;

  vii. lease and royalty agreements and minimum royalty requirements;

  viii. coal reserves; and,

  ix. life of mine plans/models.

(d) Assist the Debtors, together with other professionals, in developing a long-term business plan and related financial projections;

(e) Develop a detailed approach to preparing the Debtors for these chapter 11 cases in the most cost effective and efficient manner possible and assist the Debtors in implementing such plan, including:

  i. Preparation of bankruptcy petitions, related documents, various motions and other support as requested by the Debtors and their counsel;

  ii. Preparation of the statements of financial affairs, schedules, monthly operating reports and other regular reports required in such proceedings; and

  iii. Developing accounting procedures and controls to meet the requirements of such proceedings.

(f) Develop and implement a 13-week cash flow forecast;

(g) Coordinate the Debtors' resources dedicated to the above initiatives;

(h) Assist the Debtors with identifying, assessing and potentially implementing procedures to control and conserve working capital;

(i) Assist in preparation of financial information, as directed, for distribution to various constituencies;

(j) Attend meetings and assist in discussions with potential investors, lenders, ad hoc committee(s), other parties in interest and professionals retained by the same, as requested;

(k) Assist in negotiations among the Debtors and their creditors, suppliers, lessors and other interested parties;

(l) Assist with the development of a plan of reorganization, disclosure statement and all appropriate bankruptcy filings necessary to obtain approval and effectuate the plan of reorganization; and

(m) Perform other customary services typical for an engagement of this type as may be mutually agreed to by the Debtors and FTI from time to time.

The Services may be performed by FTI or by any subsidiary of FTI, as FTI in its sole discretion determines is appropriate.

17. The Services are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the Services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, the Advisor will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

**Professional Compensation**

18. In consideration of the Services, and as more fully described in the Engagement Letter, subject to this Court's approval, the Debtors and FTI have agreed that FTI shall be paid according to the following fee structure (collectively, the "**Fee Structure**"):

(a) Hourly Rates. FTI shall be compensated for the Services based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate. The Debtors have agreed to compensate FTI for professional services rendered at its normal and customary hourly rates, subject to the reductions discussed below. The hourly rates for Services to be rendered by FTI and applicable herein are as follows:

| **Title** | **Hourly Rate** |
| --- | --- |
| Senior Managing Directors | $800 – 975 |
| Directors / Managing Directors | $645 – 795 |
| Consultants / Senior Consultants | $355 – 575 |
| Administrative / Paraprofessionals | $125 – 250 |

The Engagement Leaders and, if necessary, any replacement Engagement Leader(s) will be invoiced at 80% of their standard hourly rates. Other FTI employees will be invoiced at their standard and customary rates, reflected above.

-9-

(b) Reasonable Direct Expenses.

   i. FTI will bill for reasonable direct expenses that are likely to be incurred on the Debtors' behalf during their engagement (the "**Reasonable Expenses**"). The Reasonable Expenses include reasonable, customary and documented out-of-pocket expenses which are billed directly to the Engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the Engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable and direct expenses (including reasonable and documented counsel fees) with respect thereto.

   ii. Further, in connection with the reimbursement and contribution provisions set forth in the Engagement Letter and as set forth in the Standard Terms and Conditions attached to the Engagement Letter (the "**Indemnification Provisions**"), the Debtors agree to reimburse each Indemnified Person (as defined in the Standard Terms and Conditions) from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable and documented attorneys' fees and expenses and cost of investigation) arising out of or in connection with the Engagement, except to the extent that any claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence, bad faith or willful misconduct of the Indemnified Person or Persons.

(c) Cash on Account. As set forth in the Boyko Declaration, as of the filing of these cases, FTI received, and continues to hold, unapplied advance payments from the Debtors in the amount of approximately $339,658.60[5] (the "**Cash on Account**"). The Debtors and FTI have agreed that FTI may, but is not directed to, apply the Cash on Account if and to the extent necessary to pay any allowed fees, costs and expenses relating to services rendered by FTI to the Debtors after the Petition Date in accordance with this Application.

(d) Employment Protections. The Debtors have agreed to promptly notify FTI if the Debtors or any of their subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and that FTI

---

[5] As of the date of this Application, FTI's final prepetition expenses are in the process of being reconciled with the Cash on Account amount and therefore the amount disclosed herein is approximate.

-10-

has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Debtors or any of their subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

19. The Debtors understand that the terms and conditions of FTI's employment are reasonable and comparable to compensation generally charged by restructuring financial advisors of a similar stature for comparable engagements, both in and out of court. Given the numerous issues that FTI may be required to address in these chapter 11 cases, FTI's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for FTI's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors agree that the Fee Structure, which was the product of arm's length negotiations, is reasonable under the standards set forth below.

20. The Debtors understand that the terms of FTI's employment and compensation, as described in the Engagement Letter, are consistent with employment and the type of compensation arrangements typically entered into by FTI when providing restructuring financial advisory services. FTI's employment and compensation arrangements are competitive with those entered into by other restructuring financial advisory firms when rendering comparable services. Accordingly, FTI and the Debtors believe that the foregoing compensation requirements are both reasonable and market-based.

21. In accordance with Local Rule 2016-2(B), the Debtors propose that (a) FTI be allowed to submit regular monthly invoices to the parties included in the Rule 9013-3(D) Master

-11-

Service List and (b) pursuant to Local Rule 2016-2(B), the Debtors be authorized to pay up to 80% of fees and 100% of expenses on a monthly basis, subject to later court approval.[6]

22. To the best of the Debtors' knowledge, information and belief, and except and to the extent disclosed in the Boyko Declaration, no promises have been received by FTI as to compensation in connection with these chapter 11 cases other than as outlined in the Engagement Letter, and FTI has no agreement with any other entity to share any compensation received with any person other than the principals and employees of FTI.

### The Indemnification Provisions Are Appropriate

23. As more fully described in the indemnification, reimbursement and contribution provisions set forth in the Standard Terms and Conditions attached to the Engagement Letter, the Debtors have agreed, among other things, to indemnify and hold harmless FTI and other Indemnified Persons (as defined in the Indemnification Provisions) from and against any losses, claims, liabilities, damages, obligations, costs and expenses (collectively, the "**Liabilities**") related to, arising out of or in connection with the Engagement, except for any Liabilities that are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence, bad faith or willful misconduct of an Indemnified Person or Persons. However, the following conditions will apply with respect to any such indemnification, reimbursement or contribution pursuant to the Indemnification Provisions:

> (a) All requests of Indemnified Parties for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, reimbursement or contribution conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the

---

[6] The Debtors intend to request by motion an Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals, by which FTI and certain other professionals would be compensated on an interim basis.

       litigation or settlement in respect of which indemnity, reimbursement or contribution is sought; *provided, however*, that in no event shall Indemnified Party be indemnified in the case of its own bad faith, fraud, gross negligence or willful misconduct.

    (b) In the event that Indemnified Party seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Indemnified Party for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Indemnified Party's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

24. The Debtors submit that such indemnification is standard in the financial advisory industry and that the provision of such indemnification by the Debtors is fair and reasonable considering FTI's qualifications and the expectations of other financial advisors in connection with engagements of this scope and size.

### Approval of Engagement Pursuant to Section 328(a) of the Bankruptcy Code

25. Section 328 of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) permits the Court to approve the terms of the Advisor's engagement as set forth in the Engagement Letter, including the Fee Structure and the Indemnification Provisions.

26. As recognized by numerous courts, Congress intended in section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be

-13-

"improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment."); *see also In re Merry-Go-Round Enter., Inc.*, 244 B.R. 327, 337 (Bankr. D. Md. 2000) (quoting *In re Nat'l Gypsum*, 123 F.3d at 862–63); *Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008) (same).

27. The Debtors believe that the terms and provisions of the Engagement Letter, including the Fee Structure and the Indemnification Provisions, are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. Such terms and provisions appropriately reflect (i) the nature of the services to be provided by FTI and (ii) the fee structures and indemnification provisions typically utilized by FTI and other leading financial advisory firms.

28. The Debtors submit that the terms and provisions of the Engagement Letter, including the Fee Structure and the Indemnification Provisions, are reasonable terms and conditions of employment in light of (i) industry practice, (ii) market rates charged for comparable services both in and out of the chapter 11 context and (iii) FTI's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities.

**Notice**

29.     Consistent with the Case Management Order, the Debtors will serve notice of this Application on (a) the Core Parties and (b) any Non-ECF Parties (collectively, the "**Notice Parties**"). All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this Application through the ECF system no later than the day after its filing with the Court. A copy of this Application and any order approving it will also be made available on the Debtors' Case Information Website (located at *https://cases.primeclerk.com/archcoal*). A copy of the Proposed Order will be made available on the Debtors' Case Information Website. The Proposed Order may be modified or withdrawn at any time without further notice. If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Debtors' Case Information Website, and no further notice will be provided. In light of the relief requested, the Debtors submit that no further notice is necessary.

**No Prior Request**

30.     The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that this Court:

(a)     authorize the Debtors to retain and employ FTI as their restructuring financial advisor in these chapter 11 cases on the terms and conditions set forth in the Engagement Letter, effective *nunc pro tunc* to the Petition Date;

(b)     approve the terms of FTI's employment, including the proposed fee structure and indemnification provisions set forth in the Engagement Letter, subject to the

        standards set forth in section 328 of the Bankruptcy Code, effective *nunc pro tunc* to the Petition Date; and

(2)     grant the Debtors such other and further relief as is just and proper.

[*Signature Page Follows*]

Dated: February __9__, 2016         _____
                                    Robert G. Jones
                                    Senior Vice President and General Counsel
                                    Arch Coal, Inc.

[*Signature Page to FTI Retention Application*]

# SCHEDULE 1
## Debtor Entities

| | | | | |
|---|---|---|---|---|
| 1. | ACI Terminal, LLC | | 37. | ICG Eastern, LLC |
| 2. | Allegheny Land Company | | 38. | ICG Eastern Land, LLC |
| 3. | Apogee Holdco, Inc. | | 39. | ICG Illinois, LLC |
| 4. | Arch Coal, Inc. | | 40. | ICG Knott County, LLC |
| 5. | Arch Coal Sales Company, Inc. | | 41. | ICG Natural Resources, LLC |
| 6. | Arch Coal West, LLC | | 42. | ICG Tygart Valley, LLC |
| 7. | Arch Development, LLC | | 43. | International Coal Group, Inc. |
| 8. | Arch Energy Resources, LLC | | 44. | Jacobs Ranch Coal LLC |
| 9. | Arch Reclamation Services, Inc. | | 45. | Jacobs Ranch Holdings I LLC |
| 10. | Arch Western Acquisition Corporation | | 46. | Jacobs Ranch Holdings II LLC |
| 11. | Arch Western Acquisition, LLC | | 47. | Juliana Mining Company, Inc. |
| 12. | Arch Western Bituminous Group, LLC | | 48. | King Knob Coal Co., Inc. |
| 13. | Arch Western Finance LLC | | 49. | Lone Mountain Processing, Inc. |
| 14. | Arch Western Resources, LLC | | 50. | Marine Coal Sales Company |
| 15. | Arch of Wyoming, LLC | | 51. | Melrose Coal Company, Inc. |
| 16. | Ark Land Company | | 52. | Mingo Logan Coal Company |
| 17. | Ark Land KH, Inc. | | 53. | Mountain Coal Company, L.L.C. |
| 18. | Ark Land LT, Inc. | | 54. | Mountain Gem Land, Inc. |
| 19. | Ark Land WR, Inc. | | 55. | Mountain Mining, Inc. |
| 20. | Ashland Terminal, Inc. | | 56. | Mountaineer Land Company |
| 21. | Bronco Mining Company, Inc. | | 57. | Otter Creek Coal, LLC |
| 22. | Catenary Coal Holdings, Inc. | | 58. | Patriot Mining Company, Inc. |
| 23. | Catenary HoldCo, Inc. | | 59. | P.C. Holding, Inc. |
| 24. | Coal-Mac, Inc. | | 60. | Powell Mountain Energy, LLC |
| 25. | CoalQuest Development LLC | | 61. | Prairie Coal Company, LLC |
| 26. | Cumberland River Coal Company | | 62. | Prairie Holdings, Inc. |
| 27. | Energy Development Co. | | 63. | Saddleback Hills Coal Company |
| 28. | Hawthorne Coal Company, Inc. | | 64. | Shelby Run Mining Company, LLC |
| 29. | Hobet Holdco, Inc. | | 65. | Simba Group, Inc. |
| 30. | Hunter Ridge, Inc. | | 66. | Thunder Basin Coal Company, L.L.C. |
| 31. | Hunter Ridge Coal Company | | 67. | Triton Coal Company, L.L.C. |
| 32. | Hunter Ridge Holdings, Inc. | | 68. | Upshur Property, Inc. |
| 33. | ICG, Inc. | | 69. | Vindex Energy Corporation |
| 34. | ICG, LLC | | 70. | Western Energy Resources, Inc. |
| 35. | ICG Beckley, LLC | | 71. | White Wolf Energy, Inc. |
| 36. | ICG East Kentucky, LLC | | 72. | Wolf Run Mining Company |