### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 16-40120-705 |
| | |
| ARCH COAL, INC., *et al.,* | (Jointly Administered) |
| | |
| Debtors.[1] | Objection Deadline: |
| | February 16, 2016 |
| | |
| | Hearing Date and Time: |
| | February 23, 2016, 10:00 a.m. |
| | (Prevailing Central Time) |
| | |
| | Hearing Location: |
| | Courtroom 7 South |

**NOTICE OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (i) APPROVING THE SALE AND TRANSFER OF CERTAIN ASSETS AND LIABILITIES FREE AND CLEAR OF ENCUMBRANCES, (ii) AUTHORIZING THE DEBTORS TO ENTER INTO A SECURITIZATION AMENDMENT AND (iii) GRANTING RELATED RELIEF**

PLEASE TAKE NOTICE that this motion is scheduled for hearing on February 23, 2016, at 10:00 a.m. (prevailing Central Time), in Bankruptcy Courtroom 7 South, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102.

**WARNING:  ANY RESPONSE OR OBJECTION TO THIS MOTION MUST BE FILED WITH THIS COURT BY FEBRUARY 16, 2016.  A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED.  FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.**

---

[1] The Debtors are listed on Schedule 1 attached hereto.  The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (i) APPROVING THE SALE AND
TRANSFER OF CERTAIN ASSETS AND LIABILITIES FREE AND CLEAR OF
ENCUMBRANCES, (ii) AUTHORIZING THE DEBTORS TO ENTER INTO A
SECURITIZATION AMENDMENT AND (iii) GRANTING RELATED RELIEF**

NOW COME Arch Coal, Inc. and its subsidiaries that are debtors and debtors in
possession in these proceedings (collectively, the "**Debtors**") and move this Court for entry of an
order approving the sale and transfer of certain assets and liabilities free and clear of
encumbrances and authorizing the Debtors to enter into an amendment to their securitization
facility.  In support of this motion (the "**Motion**"), the Debtors show the Court as follows:

**Relief Requested**

1.      By this Motion, and pursuant to sections 105(a) and 363 of title 11 of the United
States Code (the "**Bankruptcy Code**") and Rules 2002 and 6004 of the Federal Rules of
Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order (the
"**Proposed Order**")[2] (i)(a) authorizing entry into and performance under the Membership
Interest Purchase Agreement by and among Debtor Arch Coal, Inc., Debtor ICG, Inc. (together
with Arch Coal, Inc., the "**Selling Debtors**") and Quest Energy Inc. ("**Quest**" or the
"**Purchaser**" and such Membership Interest Purchase Agreement dated as of September 16,
2015, as amended, supplemented and/or otherwise modified from time to time, the "**Knott
County MIPA**"), attached hereto as <u>Exhibit A</u>, and (b) approving the sale and transfer of the
Selling Debtors' membership interests in Debtor ICG Knott County, LLC (the "**Knott County
Assets**") to Quest in accordance with the Knott County MIPA (the "**Knott County Sale**"); (ii)
authorizing the Debtors to enter into that certain First Amendment to Amended and Restated
Purchase and Sale Agreement (the "**Securitization Amendment**"), substantially in the form

---

[2] A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made
available on the Debtors' Case Information Website at *https://cases.primeclerk.com/archcoal*.

attached hereto as Exhibit B, amending (x) that certain Amended and Restated Purchase and Sale Agreement, dated as of January 13, 2016, between Arch Coal, Inc. and certain other Debtors party thereto as Originators (the "**Purchase and Sale Agreement**") related to that certain Second Amended and Restated Receivables Purchase Agreement, dated as of January 13, 2016, among Arch Receivable Company, LLC, Arch Coal Sales Company, Inc., the Conduit Purchasers, Related Committed Purchasers, LC Participants and Purchaser Agents (each as defined therein) and PNC Bank, National Association (the "**Receivables Purchase Agreement**") and (y) certain other Transaction Documents (as defined in the Receivables Purchase Agreement and together with the Purchase and Sale Agreement, the "**Securitization Facility Documents**");[3] and (iii) with respect to each of the foregoing, granting such other and further relief as is just and proper.

## Jurisdiction

2.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

3.      The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 11, 2016 (the "**Petition Date**").

4.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

---

[3] The form of the Receivables Purchase Agreement was filed as an exhibit to the Debtors' *Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 362(d), 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(e) and 365 and Bankruptcy Rule 4001 (i) Authorizing Certain Debtors to Continue Selling and Contributing Receivables and Related Rights Pursuant to the Securitization Facility, (ii) Modifying the Automatic Stay and (iii) Granting Related Relief*, on the Petition Date [ECF No. 12].

5.      The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* entered by this Court on January 13, 2016 in each of the Debtors' cases.

6.      The Court entered the *Order Establishing Certain Notice, Case Management and Administrative Procedures* on January 21, 2016 [ECF No. 155] (the "**Case Management Order**").

7.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Declaration of John T. Drexler, Senior Vice President and Chief Financial Officer of Arch Coal, Inc.*, filed on the Petition Date [ECF No. 3], which is incorporated herein by reference.

## Basis for Relief

8.      During the months leading up to the Petition Date, the Selling Debtors engaged in discussions and negotiations with the Purchaser, as well as other prospective purchasers, to sell the Knott County Assets.  The Knott County Assets include Debtor ICG, Inc.'s 100% membership interest in Debtor ICG Knott County, LLC (the "**Sold Debtor**"), a Delaware limited liability company that holds certain property and idled operations generally located in Knott, Letcher, Breathitt, Pike, Floyd, Leslie and Perry Counties in Kentucky.

9.      The Debtors also expect in the near term to secure all releases and other modifications required to consummate the Knott County Sale under the Prepetition Credit Agreement, the DIP Credit Agreement and the Prepetition Notes Indenture, in each case as defined in the *Interim Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) To Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Agent and the Prepetition Lenders Pursuant to 11 U.S.C. §§ 361, 362,*

-4-

*363, 364 and 507(b) and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)*, entered on January 15, 2016 [ECF No. 95].  The Debtors have consulted with their lenders under the DIP Credit Agreement and with the official committee for unsecured creditors appointed in these cases.

10.     The Knott County Sale involves substantial liabilities being assumed by the Purchaser at relatively little or no cost and to the net benefit of the Selling Debtors, their estates and their creditors, as described more fully below.  The mining operations at these properties have been idled for several years and are not part of the Debtors' future mining plans.  There are significant remaining reclamation obligations associated with the properties that the Purchaser has agreed to assume.  The Knott County Sale was substantially finalized before the Petition Date, pending certain regulatory approvals.

11.     The Selling Debtors believe that the Knott County Sale would generate substantial value for their estates by relieving them of significant liabilities with respect to idled assets that they do not plan to use in the future, and that entry of the Proposed Order is essential in order to achieve these benefits.  Moreover, the Selling Debtors believe that they must move forward with closing the Knott County Sale in the near term in order to preserve the terms of the Knott County MIPA.  It is extremely unlikely that other purchasers could be found in the near term for the Knott County Assets on similarly favorable terms, given the size of the associated reclamation liabilities and the current market environment.  The Selling Debtors have therefore concluded, in the exercise of their sound business judgment, that the Knott County Sale is fair and reasonable, and that the Knott County Sale is in the best interests of their estates and creditors.

## The Knott County Sale

12.     The Knott County Sale will be governed by the Knott County MIPA, among the Selling Debtors and Quest.  The Knott County MIPA was executed on September 16, 2015 and is expected to close on or about February 29, 2016, subject to the satisfaction of closing conditions.  Quest has, pursuant to the Knott County MIPA, already submitted applications for change-in-control permit transfers to the Kentucky Department for Natural Resources and has continued to pursue the permit transfer process.  Quest already maintains certain bonding and insurance within the Commonwealth of Kentucky, and assures the Debtors that it has arranged the required bonding for the Knott County Assets.  Because of Quest's assumption of reclamation liabilities in the Knott County Transaction, the Debtors anticipate that the sale will save the Debtors approximately $6.8 million (net present value) in cash reclamation expenses through 2026, as well as approximately $2.4 million per year in budgeted annual cash operating costs.  The Debtors estimate that they will realize a net book value gain of approximately $10.8 million by consummating the Knott County Sale.  The Knott County MIPA includes the following salient provisions:[4]

(a)     Structure.  The Seller will transfer the Knott County Assets and associated liabilities (except the Excluded Liabilities) to Quest.

(b)     Purchase Price.  At closing, in consideration of Quest taking the Seller's Membership Interests in ICG Knott County, LLC, the Seller will pay the sum of $2.3 million in cash, plus Estimated Closing Date Liabilities (which consist of Seller's good faith estimate of liabilities deriving from (i) all accounts payable of ICG Knott County, LLC, (ii) all production and production-related taxes of ICG Knott County, LLC accrued for periods prior to the Closing Date, which will remain unpaid as of the Closing Date, and (iii) all employee payroll and related costs owed by ICG Knott County, LLC and which will remain unpaid on the Closing Date).  Estimated Closing Date Liabilities

---

[4] The execution version of the Knott County MIPA is also attached hereto as Exhibit A.  This summary of the Knott County Sale is qualified in its entirety by reference to the Knott County MIPA.  To the extent that there is any discrepancy between the terms contained in this Motion and those set forth in the Knott County MIPA, the terms of the Knott County MIPA shall control.  Unless otherwise defined herein, capitalized terms used in this summary shall have the meanings ascribed to such terms in the Knott County MIPA.

are subject to adjustment after the Closing Date as further described in the Knott County MIPA. The Debtors estimate that, based on ICG Knott County, LLC's balance sheet as of December 31, 2015, the Estimated Closing Date Liabilities would amount to approximately $1.62 million.

        (c)    <u>Purchased Assets</u>. The purchased assets will consist of all of ICG, Inc.'s membership interests in ICG Knott County, LLC.

        (d)    <u>Excluded Liabilities</u>. The Seller will assume and agree to repay and satisfy as and when due (i) all Black Lung Liabilities (including liabilities arising under federal or state "black lung" statutes) arising or resulting from Actions filed by any individuals who are current or former employees of ICG Knott County, LLC (including any and all retired employees who retired from ICG Knott County, LLC or any predecessor thereto prior to the Closing Date) as of the Closing Date or any dependents or other beneficiaries of any such individuals, other than Black Lung Liabilities with respect to any current or former employees who are employed by ICG Knott County, LLC, Quest or any of Quest's affiliates after the Closing Date; (ii) all Workers' Compensation Liabilities (including liabilities arising out of rights under the Long Shore and Harbor Workers' Compensation Act or the Kentucky Workers' Compensation Act) of ICG Knott County, LLC arising or resulting from Actions filed by any individuals who are current or former employees of ICG Knott County, LLC (including any and all retired employees who retired from ICG Knott County, LLC or any predecessor thereto prior to the Closing Date) as of the Closing Date or any dependents or other beneficiaries of any such individuals, other than Workers' Compensation Liabilities with respect to any current or former employees who are employed by ICG Knott County, LLC, Quest or any of Quest's affiliates after the Closing Date; and (iii) all Employment Liabilities (including those relating to the WARN Act or other labor, employment or employee laws) of the Company arising or resulting from Actions filed prior to the Closing Date by any individuals who are current or former employees of ICG Knott County, LLC (including any and all retired employees who retired from ICG Knott County, LLC or any predecessor thereto prior to the Closing Date) as of the Closing Date or any dependents or other beneficiaries of any such individuals.

        (e)    <u>Employees</u>. In conjunction with the Knott County Sale, Quest will offer employment, to commence as of the Closing Date, to each of ICG Knott County, LLC's employees listed on a confidential schedule on terms and conditions negotiated between Quest and each employee.

        (f)    <u>Consent Decree</u>. The Seller and certain of its affiliates (including ICG Knott County, LLC) are parties to an August 8, 2015 consent decree with the United States Environmental Protection Agency and certain state environmental agencies (the "**Arch Consent Decree**"). Quest will be responsible for any liabilities arising out of the Arch Consent Decree only if the Arch Consent Decree becomes final on or prior to the Closing Date and one or more regulated facilities subject to the Permits are in a state of Persistent Noncompliance.

(g)  <u>Governmental Filings and Replacement Bonds</u>.  Quest will pursue, and Quest and the Seller will fully cooperate to pursue, approvals of applicable Governmental Entities, including with respect to Acquired Permits.  Quest will also cause itself and ICG Knott County, LLC to be substituted for the Seller and its affiliates under certain specified guarantees, indemnities, surety bonds, letters of credit, letters of comfort and other obligations, and use its reasonable best efforts to cause such substitution with respect to all other similar obligations of the Seller and its affiliates (other than those relating to the Excluded Liabilities).  In addition, Quest will secure and deliver to applicable Governmental Authorities sufficient Replacement Bonds to cause the applicable Governmental Authorities to release Seller and its affiliates under certain identified Surety Bonds.

(h)  <u>Conditions to Closing</u>.  The obligations of the Seller and Quest to consummate the Knott County Sale will be subject, *inter alia*, to Governmental Authorities having provided the required approvals, confirmed receipt of Buyer's Replacement Bonds and that such Replacement Bonds are sufficient in form and amount for the full release of Seller's Surety Bonds, and released all of Seller's Surety Bonds.

(i)  <u>Access to Off-Site Equipment</u>.  The Seller will reimburse Quest up to $120,000 for the cost of moving certain surplus equipment after the Closing Date.

(j)  <u>Termination</u>.  The Knott County MIPA contains customary termination rights for transactions of this nature.

(k)  <u>Expenses</u>.  Each party will pay its own expenses incidental to the preparation of the Knott County MIPA and the consummation of the Knott County Sale.

<u>The Knott County Sale is Consistent with the Debtors' Business Judgment and Should Be Approved</u>

13.    Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 does not provide explicit guidance as to when a sale or disposition of property of the estate should be authorized, courts generally authorize debtors' decisions to use, sell or lease assets outside the ordinary course of business if such use, sale or lease is based upon a sound business purpose.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *see Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 – 71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *see also Mich. Bureau of Workers' Disability Comp. v. Chateaugay*

*Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed* 838

F.2d 59 (2d Cir. 1988) (holding that a judge determining a section 363(b) application must find

from the evidence presented before him or her a good business reason to grant such application);

*In re Trilogy Dev. Co., LLC*, 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo. 2010); *In re

Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing *Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re

Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for

determining a section 363(b) motion is "a good business reason").

14.    Courts emphasize that the business judgment rule is not an onerous standard and

may be satisfied "'as long as the proposed action *appears* to enhance the debtor's estate.'"

*Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463-64 (B.A.P. 8th

Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107

F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis original, internal alterations and quotations

omitted)); *see also In re AbitibiBowater, Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the

business judgment standard is "not a difficult standard to satisfy").  Under the business judgment

rule, "management of a corporation's affairs is placed in the hands of its board of directors and

officers, and the Court should interfere with their decisions only if it is made clear that those

decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and

directors' fiduciary duty to the corporation, are made on the basis of inadequate information or

study, are made in bad faith, or are in violation of the Bankruptcy Code."  *In re Farmland Indus.,

Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (citing *In re United Artists Theatre Co.*, 315

F.3d 217, 233 (3d Cir. 2003), *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th

Cir. 1985) and *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)); *see*

*also In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 n.16 (8th Cir. 1997) ("[w]here the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval as long as the proposed action appears to enhance the debtor's estate" (citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985))); *In re Farmland Indus. Inc.*, 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) (approving the rejection of employment agreements and noting that "[u]nder the business judgment standard, the question is whether the [proposed action] is in the Debtors' best economic interests, based on the Debtors' best business judgment in those circumstances" (citations omitted)).

15.    Here, the Selling Debtors' decision to proceed with the Knott County Sale in accordance with the terms set out in the Knott County MIPA is based upon their sound business judgment.  The operations with respect to Knott County Assets have been idled since June 2012 because it has not been economical to operate them.  Despite their idling, these assets continue to require approximately $2.4 million in annual cash operating expenditures, and carry reclamation obligations that the Debtors estimate will cost them approximately $6.8 million (net present value) by 2026.  Additionally, after many months of good-faith, arms'-length negotiation with the Purchaser, the Selling Debtors submit that the Knott County MIPA represents the highest or otherwise best offer for the Knott County Assets.

16.    The Debtors believe that the Knott County Sale will result in the maximum benefit to the Debtors' estates and creditors.

17.    Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  By extension, a court should authorize a private sale, such as the Knott County Sale, as long as the decision to consummate such sale is made under sound business judgment.  *See, e.g., In re Condere Corp.*, 228 B.R. 615, 629 (Bankr.

-10-

S.D. Miss. 1998) (approving the private sale of the debtor's tire company because the debtor

showed sound business judgment). Courts frequently have allowed chapter 11 debtors to sell

assets outside the ordinary course of business by private sale when the debtor demonstrates that

the sale is permissible pursuant to section 363(b) of the Bankruptcy Code. *See, e.g.*, *In re*

*Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. Jul. 23, 2010) [ECF No. 3366]; *In re*

*Lehman Brothers Holdings, Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 20, 2008) [ECF No.

258]; *In re Loral Space & Commc'ns Ltd., et al.*, Case No. 03-41710 (RDD) (Bankr. S.D.N.Y.

Sept. 30, 2005) [ECF No. 2393]; *In re International Wire Grp., Inc., et al.*, Case No. 04-11991

(BRL) (Bankr. S.D.N.Y. June 10, 2004) [ECF No. 176]; *Palermo v. Pritam Realty, Inc. (In re*

*Pritam Realty, Inc.)*, 233 B.R. 619 (D. P.R. 1999) (upholding bankruptcy court approval of

private sale); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter

11 debtor to transfer assets by private sale). In this case, the Selling Debtors' experience in

marketing the Knott County Assets demonstrated that a private sale to Quest was the most

efficient process for realizing the value to their estates generated by the Knott County Sale.

After an organized attempt in late 2011 and 2012 to sell the Knott County Assets and other

similarly-situated non-core assets did not yield any actionable bids, the Selling Debtors

continued to have a dialogue with a few bidders related to the sale of various operations, but

were still unable to sell the Knott County Assets. Finally, Quest approached the Selling Debtors

and professed its interest in the Knott County Assets. The Selling Debtors negotiated with Quest

and one other potential buyer, and Quest was the only potential buyer that was able to put

forward an actionable proposal to purchase the assets. Quest maintains active mining operations

in Kentucky, and also has experience providing surety bonds against mining obligations in the

Commonwealth. This lengthy marketing process, Quest's nearly unique interest in the Knott

County Assets, and its demonstrated qualifications to be the purchaser, have been major factors

in the Selling Debtors' business decision to close the Knott County MIPA as a private sale.

<u>The Knott County Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code for
a Sale Free and Clear of Encumbrances</u>

18.    The Debtors request that the Court authorize the sale of the Knott County Assets

free and clear of any and all liens, claims, interests and encumbrances (collectively,

"**Encumbrances**"),[5] with all such Encumbrances to attach only to the proceeds of the Knott

County Sale with the same priority, validity, perfection, enforceability and effect as they now

have in or against the Knott County Assets.  In the event that any Encumbrances are successfully

asserted against any of the Knott County Assets, for the reasons set forth herein, the Debtors

assert that the sale of the Knott County Assets may be approved free and clear of any such

Encumbrances.

19.    Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell

property free and clear of any lien, claim or interest in such property of an entity other than the

estate if, among other things:

(1)  applicable nonbankruptcy law permits sale of such property free and clear of such
interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is sold is greater than the
aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled in a legal or equitable proceeding, to accept a money
satisfaction of such interest.

---

[5] For the avoidance of doubt, the Knott County Assets consist solely of the Selling Debtors' respective
membership interests in the Sold Debtor and not the assets held by the Sold Debtor.  Thus, the Selling Debtors are
seeking authority to sell such membership and equity interests, *not* the underlying assets, free and clear of any and
all Encumbrances.  In addition, the Sold Debtor will be no longer be subject to any obligations under the Prepetition
Credit Agreement, the DIP Credit Agreement and the Prepetition Notes Indenture, as discussed above.

11 U.S.C. § 363(f).

20.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive,

satisfaction of any one of its five requirements will suffice to permit the sale of the Knott County

Assets "free and clear" of such Encumbrances.  *See, e.g.*, *In re James*, 203 B.R. 449, 453 (Bankr.

W.D. Mo. 1997) ("The five conditions enumerated in section 363(f) are disjunctive and, as such,

a sale thereunder can be authorized if the trustee can prove the existence of any one of the five

conditions.").

21.     The Debtors submit that section 363(f) permits the Knott County Sale of the

Knott County Assets free and clear of all Encumbrances.  Each Encumbrance satisfies at least

one, if not more, of the tests of section 363(f) of the Bankruptcy Code, and any such

Encumbrance will be adequately protected by attachment to the net proceeds of the Knott County

Sale, subject to any claims and defenses that the Debtors may possess with respect thereto.

 The Purchaser Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code

22.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of
> this section of a sale or lease of property does not affect the validity of a sale or lease
> under such authorization to an entity that purchased or leased such property in good faith,
> whether or not such entity knew of the pendency of the appeal, unless such authorization
> and such sale or lease were stayed pending appeal.  11 U.S.C. § 363(m).

23.     While the Bankruptcy Code does not define "good faith," courts in the Eighth

Circuit have held that "[l]ack of good faith is shown by misconduct surrounding the sale.

Typically, the requisite misconduct necessary to establish a lack of good faith involves 'fraud,

collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly

unfair advantage of other bidders.'"  *In re Burgess*, 246 B.R. 352, 255–56 (B.A.P. 8th Cir. 2000)

(quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting

-13-

Bankruptcy Rule 805, the precursor of section 363(m)).  *See also In re Agriprocessors, Inc.*, 465 B.R. 822 (Bankr. N.D. Iowa 2012) (citing *In re Burgess*).

24.    Here, the Knott County Sale was a result of a marketing process that began prepetition and good faith and arms'-length negotiations between the Selling Debtors and the Purchaser over the course of more than a year.  The Debtors therefore request that the Court make a finding that, upon the closing of the Knott County Sale, the Purchaser will have purchased the Knott County Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

<u>The Debtors Should Be Authorized to Enter into the Securitization Amendment</u>

25.    In order to consummate the Knott County Sale, the Debtors must amend the Receivables Purchase Agreement to remove the Sold Debtor from its schedules and release the Sold Debtor as an "Originator" under the Securitization Facility Documents, as it will no longer be an affiliate of the Debtors and therefore will no longer sell receivables or related rights pursuant thereto.

26.    The Securitization Amendment provides that the Sold Debtor will be removed from all applicable schedules and released from its obligations and rights under the Securitization Facility Documents.  The Debtors, in their business judgment, have determined that entry into the Securitization Amendment is necessary in order to consummate the Knott County Sale and realize the benefits thereof, as described above.

**<u>Waiver of Stay Under Bankruptcy Rule 6004(h)</u>**

27.    The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R.

Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### Notice

28.      Consistent with the Case Management Order, the Debtors will serve notice of this Motion on (a) the Core Parties, (b) any Non-ECF Parties (as those terms are defined in the Case Management Order), (c) the United States Department of the Interior, (d) the Kentucky Department for Natural Resources, (e) the Kentucky Transportation Cabinet, (f) PNC Bank, National Association, as Administrator and LC Bank under the Receivables Purchase Agreement and (g) the Purchaser (collectively, the "**Notice Parties**").  All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this motion through the ECF system no later than the day after its filing with the Court.  A copy of this Motion and any order approving it will also be made available on the Debtors' Case Information Website (located at *https://cases.primeclerk.com/archcoal*).  A copy of the Proposed Order will be made available on the Debtors' Case Information Website.  The Proposed Order may be modified or withdrawn at any time without further notice.  If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Debtors' Case Information Website, and no further notice will be provided.  In light of the relief requested, the Debtors submit that no further notice is necessary.

**<u>No Prior Request</u>**

29.    The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that this Court:

(a)    authorize the Debtors to enter into and perform under the Knott County MIPA;

(b)    approve the Knott County Sale and the transfer of the Knott County Assets free and clear of Encumbrances to Quest;

(c)    authorize the Debtors to enter into the Securitization Amendment; and

(e)    grant the Debtors such other and further relief as is just and proper.

Dated:    February 9, 2016
          New York, New York

Respectfully submitted,

/s/ Kevin J. Coco
Marshall S. Huebner
Brian M. Resnick
Michelle M. McGreal
Kevin J. Coco

450 Lexington Avenue
New York, New York 10017
(212) 450-4000
Fax:    (212) 607-7983
marshall.huebner@davispolk.com
brian.resnick@davispolk.com
michelle.mcgreal@davispolk.com
kevin.coco@davispolk.com

*Proposed Counsel to the Debtors and Debtors in Possession*

-and-

BRYAN CAVE LLP

Lloyd A. Palans, #22650MO
Brian C. Walsh, #58091MO
Cullen K. Kuhn, #53151MO
Laura Uberti Hughes, #60732MO

One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000
Fax:  (314) 259-2020
lapalans@bryancave.com
brian.walsh@bryancave.com
ckkuhn@bryancave.com
laura.hughes@bryancave.com

*Proposed Local Counsel to the Debtors and Debtors in Possession*

## SCHEDULE 1
## Debtor Entities

| | |
|---|---|
| 1. | ACI Terminal, LLC |
| 2. | Allegheny Land Company |
| 3. | Apogee Holdco, Inc. |
| 4. | Arch Coal, Inc. |
| 5. | Arch Coal Sales Company, Inc. |
| 6. | Arch Coal West, LLC |
| 7. | Arch Development, LLC |
| 8. | Arch Energy Resources, LLC |
| 9. | Arch Reclamation Services, Inc. |
| 10. | Arch Western Acquisition Corporation |
| 11. | Arch Western Acquisition, LLC |
| 12. | Arch Western Bituminous Group, LLC |
| 13. | Arch Western Finance LLC |
| 14. | Arch Western Resources, LLC |
| 15. | Arch of Wyoming, LLC |
| 16. | Ark Land Company |
| 17. | Ark Land KH, Inc. |
| 18. | Ark Land LT, Inc. |
| 19. | Ark Land WR, Inc. |
| 20. | Ashland Terminal, Inc. |
| 21. | Bronco Mining Company, Inc. |
| 22. | Catenary Coal Holdings, Inc. |
| 23. | Catenary HoldCo, Inc. |
| 24. | Coal-Mac, Inc. |
| 25. | CoalQuest Development LLC |
| 26. | Cumberland River Coal Company |
| 27. | Energy Development Co. |
| 28. | Hawthorne Coal Company, Inc. |
| 29. | Hobet Holdco, Inc. |
| 30. | Hunter Ridge, Inc. |
| 31. | Hunter Ridge Coal Company |
| 32. | Hunter Ridge Holdings, Inc. |
| 33. | ICG, Inc. |
| 34. | ICG, LLC |
| 35. | ICG Beckley, LLC |
| 36. | ICG East Kentucky, LLC |
| 37. | ICG Eastern, LLC |
| 38. | ICG Eastern Land, LLC |
| 39. | ICG Illinois, LLC |
| 40. | ICG Knott County, LLC |
| 41. | ICG Natural Resources, LLC |
| 42. | ICG Tygart Valley, LLC |
| 43. | International Coal Group, Inc. |
| 44. | Jacobs Ranch Coal LLC |
| 45. | Jacobs Ranch Holdings I LLC |
| 46. | Jacobs Ranch Holdings II LLC |
| 47. | Juliana Mining Company, Inc. |
| 48. | King Knob Coal Co., Inc. |
| 49. | Lone Mountain Processing, Inc. |
| 50. | Marine Coal Sales Company |
| 51. | Melrose Coal Company, Inc. |
| 52. | Mingo Logan Coal Company |
| 53. | Mountain Coal Company, L.L.C. |
| 54. | Mountain Gem Land, Inc. |
| 55. | Mountain Mining, Inc. |
| 56. | Mountaineer Land Company |
| 57. | Otter Creek Coal, LLC |
| 58. | Patriot Mining Company, Inc. |
| 59. | P.C. Holding, Inc. |
| 60. | Powell Mountain Energy, LLC |
| 61. | Prairie Coal Company, LLC |
| 62. | Prairie Holdings, Inc. |
| 63. | Saddleback Hills Coal Company |
| 64. | Shelby Run Mining Company, LLC |
| 65. | Simba Group, Inc. |
| 66. | Thunder Basin Coal Company, L.L.C. |
| 67. | Triton Coal Company, L.L.C. |
| 68. | Upshur Property, Inc. |
| 69. | Vindex Energy Corporation |
| 70. | Western Energy Resources, Inc. |
| 71. | White Wolf Energy, Inc. |
| 72. | Wolf Run Mining Company |