## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ARCH COAL, INC., *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br>**Case No. 16-40120-705**<br><br>**(Jointly Administered)**<br><br>**Objection Deadline:**<br>February 16, 2016<br><br>**Hearing Date and Time:**<br>February 23, 2016, 10:00 a.m.<br>(Prevailing Central Time)<br><br>**Hearing Location:**<br>Courtroom 7 South |

**NOTICE OF THE DEBTORS' MOTION FOR APPROVAL
OF PROCEDURES FOR (i) THE SALE OF CERTAIN ASSETS FREE AND
CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND
(ii) THE ABANDONMENT OF CERTAIN OF THE DEBTORS' PROPERTY**

PLEASE TAKE NOTICE that this motion is scheduled for hearing on February 23, 2016, at 10:00 a.m. (prevailing Central Time), in Bankruptcy Courtroom 7 South, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102.

**WARNING:  ANY RESPONSE OR OBJECTION TO THIS MOTION MUST BE FILED WITH THIS COURT BY FEBRUARY 16, 2016.  A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED.  FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.**

---

[1] The Debtors are listed on Schedule 1 attached hereto.  The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**DEBTORS' MOTION FOR APPROVAL OF PROCEDURES
FOR (i) THE SALE OF CERTAIN ASSETS FREE
AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND
(ii) THE ABANDONMENT OF CERTAIN OF THE DEBTORS' PROPERTY**

NOW COME Arch Coal, Inc. and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") and move this Court for entry of an order approving procedures for certain asset sales.  In support of this motion (the "**Motion**"), the Debtors show the Court as follows:

**Relief Requested**

1.      By this Motion, and pursuant to sections 105(a), 363, 365 and 554(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6007 of the Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of an order (the "**Proposed Order**")[2] for authorization to establish procedures (the "**Procedures**") (i) to sell or publicly auction certain obsolete, surplus, burdensome or otherwise expendable assets having a Transaction Value (as defined below) of $7.5 million or less where such sale is arguably outside the ordinary course of the Debtors' businesses (and pay any applicable broker commissions and/or auctioneer fees associated therewith) and (ii) to abandon any *de minimis* assets with a book value of $5.0 million or less where a sale cannot be consummated at a price greater than the costs of such sale (taking into account costs of, among other things, interim storage, shipping and marketing) (such assets identified in clauses (i) and (ii) collectively, the "**De Minimis Assets**"),[3] in each case without the need for further Court approval.

---

[2] A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' Case Information Website at *https://cases.primeclerk.com/archcoal.*

[3] For purposes of this Motion, a sale shall include, and the Procedures shall apply to, entry into exchange agreements that the Debtors enter into in the ordinary course of their businesses, which involve swapping non-strategic coal mineral rights or other assets for cash, other assets or coal mineral rights, that are strategic to the Debtors' operations.  The Procedures shall not apply to any transaction covered by any order authorizing the

## Jurisdiction

2.        This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

3.        The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 11, 2016 (the "**Petition Date**").

4.        The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

5.        The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* entered by this Court on January 13, 2016 in each of the Debtors' cases.

6.        The Court entered the *Order Establishing Certain Notice, Case Management and Administrative Procedures* on January 21, 2016 [ECF No. 155] (the "**Case Management Order**").

7.        Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Declaration of John T. Drexler, Senior Vice President and Chief Financial Officer of Arch Coal, Inc.*, filed on the Petition Date [ECF No. 3], which is incorporated herein by reference.

---

Debtors, in the ordinary course of their businesses, to enter into and perform under contracts with customers to sell coal from the Debtors' mining operations or acquired from other sources.

8.       Before the Petition Date, the Debtors routinely and in the ordinary course of business sold or, when necessary, otherwise disposed of non-core assets that were unnecessary or could not be used profitably in their operations, shedding the costs associated with maintaining unneeded assets and bolstering the Debtors' cash position by monetizing De Minimis Assets.

9.       The Debtors have identified and, as these chapter 11 cases progress, may continue to identify, certain De Minimis Assets, including real property, equipment, coal reserves and other miscellaneous assets that are obsolete, superfluous, expendable or otherwise burdensome to their estates.  The Procedures will maximize the value of the De Minimis Assets to the Debtors' estates and reduce the burden of maintaining the De Minimis Assets.  It would not be an efficient use of the Debtors' resources or the Court's time to seek Court approval each and every time the Debtors have an opportunity to sell De Minimis Assets.

10.      To the extent a sale of De Minimis Assets would generate less revenue to the Debtors than the amount of cash expended in the sale process (taking into account costs of, among other things, interim storage, shipping and marketing), the Debtors also seek authority to abandon De Minimis Assets without further Court approval.

11.      The Debtors further believe that, as determined in the Debtors' business judgment, the use of brokers and auctions in certain circumstances may significantly aid in the timely disposition and realization of the maximum possible value for the De Minimis Assets. Accordingly, the Debtors also seek approval to pay applicable market rate broker commissions and/or auction fees for brokers and auctioneers that may be utilized in connection with the disposition of De Minimis Assets.

12.     Finally, the disposition of certain De Minimis Assets may include the related assumption, assumption and assignment or rejection of executory contracts under section 365 of the Bankruptcy Code.

13.     Although the Debtors believe that in many cases dispositions of De Minimis Assets fall within the scope of section 363(c) of the Bankruptcy Code, many purchasers will be uncomfortable consummating sales without confirmation that such sales are authorized. Purchasers may also want confirmation that sales will be free and clear of liens under section 363(f) of the Bankruptcy Code or that executory contracts have been assumed and assigned under section 365 of the Bankruptcy Code.  The Debtors may also need to reject executory contracts in connection with the sale, auction or abandonment of De Minimis Assets.

14.     Accordingly, subject to the Procedures, the Debtors request authorization to sell, auction or abandon De Minimis Assets (all of which would likely be in the ordinary course of business in any event) without the need to obtain further Court approval.

## The Sale and Auction Procedures

15.     The Debtors request that the following Procedures be implemented in connection with the sale or auction of De Minimis Assets.  The Debtors propose the Procedures as an alternative to those set forth in Bankruptcy Rule 6004 and submit that the requirements of such rule be waived with respect to any sale of De Minimis Assets undertaken by the Debtors pursuant to the Procedures.

16.     For purposes of the Procedures, (a) the net benefit estimated to be realized by the Debtors' estates in a private sale of De Minimis Assets or (b) the book value of a De Minimis

Case 16-40120   Doc 294   Filed 02/09/16   Entered 02/09/16 22:04:04   Main Document
Pg 6 of 22


Asset to be auctioned shall constitute the "**Transaction Value**."[4]  The net benefit is the amount

of cash consideration or fair market value of non-cash consideration estimated to be received by

the Debtors plus the value of any liabilities to be assumed by the purchaser (to the extent

quantifiable or reasonably estimable, as determined by the Debtors in their discretion), less

expenses to be incurred in connection with the sale, or any offsets or other deductions (to the

extent quantifiable or reasonably estimable, as determined by the Debtors in their discretion).  To

the extent that any Cure Claims (as defined below) are payable in connection with a transaction

under the Procedures, such Cure Claims shall (a) to the extent paid by the purchaser, not count

against the Transaction Value and (b) to the extent paid by the Debtors, be deducted from the

total consideration received by the Debtors to be applied against the Transaction Value.  The

Transaction Value shall be determined without consideration as to whether the property proposed

to be sold is free and clear of all liens, claims, interests and encumbrances.

**I.  Transaction Value Less than or Equal to $2,000,000**

    a.    If the Transaction Value for a De Minimis Asset is less than or equal to $2,000,000, no notice or hearing shall be required.

**II.  Transaction Value Greater than $2,000,000 and Less than or Equal to $7,500,000**

    b.    If the Debtors are transferring De Minimis Assets via a sale, the Debtors shall file a notice with the Court, substantially in the form attached to the Motion as Exhibit A (the "**Sale Notice**"), specifying (i) the De Minimis Assets to be sold and their location, (ii) the identity of the purchaser and whether the purchaser is an "affiliate", as that term is defined under section 101(2) of the Bankruptcy Code, of any of the Debtors, (iii) any commissions to be paid to third parties (such as brokers), (iv) the proposed purchase price and (v) any executory contracts and unexpired leases, if any, that the applicable Debtor or Debtors propose to be assumed, assumed and assigned or rejected as part of the sale and, if any lease is to be assumed or assumed and assigned, the amounts required pursuant to section 365(b) of the Bankruptcy Code to cure any defaults (the "**Cure Claim**") and a

---

[4] Solely for the purposes of the Procedures and the calculation of the Transaction Value, entry into a series of related sales within any given thirty-day period between any of the Debtors, on the one hand, and any given counterparty or its affiliates, on the other hand, shall be deemed to be entry into a single sale.

-6-

statement regarding the adequate assurance of future performance by the purchaser or transferee.

c.    If the Debtors are transferring De Minimis Assets via an auction, the Debtors shall file a notice with the Court, substantially in the form attached to the Motion as Exhibit B (the "**Auction Notice**"), specifying (i) the De Minimis Assets to be auctioned and their location, (ii) the time, date and place of the auction, (iii) any commissions to be paid to third parties (such as auctioneers), (iv) the minimum acceptable bid, if any, (v) any terms and conditions of sale to be imposed at the auction and (vi) any executory contracts and unexpired leases, if any, that the applicable Debtor or Debtors propose to be assumed, assumed and assigned or rejected as part of the auction and, if any lease is to be assumed or assumed and assigned, the Cure Claim and a statement regarding the adequate assurance of future performance by the purchaser or transferee.

d.    The Debtors shall serve the Sale Notice or Auction Notice, as applicable, only on (i) the Core Parties (as defined in the Case Management Order), (ii) any person or entity with a particularized interest in the De Minimis Assets to be sold or auctioned, including any known creditor asserting a lien, claim, interest or encumbrance (any of the foregoing, a "**Lien**") on such De Minimis Assets, (iii) all counterparties to executory contracts or unexpired leases proposed to be assumed, assumed and assigned or rejected as part of the proposed sale or auction and (iv) in connection with any sale or auction of real property (A) any applicable federal or state (1) permitting or licensing authority, (2) environmental regulatory agency and/or (3) reclamation bonding entity (any such entity, a "**Governmental Authority**") and (B) any non-Debtor party that has secured, through the issuance of a bond, guaranty or other form of credit support, any obligation of the Debtors with respect to such property (any such party, a "**Surety**", and together with all parties identified in (i) through (iv) above, the "**Service Parties**").

e.    The deadline for filing an objection (an "**Objection**") to the proposed sale or auction of De Minimis Assets shall be 4:00 p.m. (prevailing Central time) on the date that is 7 days after the date the Sale Notice or Auction Notice is filed and served (the "**Transaction Objection Deadline**").  An Objection will be considered timely only if it is filed with the Court and actually received by the Service Parties, the Debtors and the Debtors' counsel on or before the Transaction Objection Deadline.  The Debtors may extend the Transaction Objection Deadline as to any party without further order of the Court.

f.    Objections shall include (i) an appropriate caption, including the title and date of the Sale Notice or Auction Notice to which it is directed, (ii) the name of the objector, (iii) a concise statement setting forth the reasons why the Court should not permit the asset sale or auction and/or payment of broker commissions or auctioneer fees, as applicable, and (iv) the name, address, telephone number and email address, as applicable, of a person authorized to settle or otherwise resolve any objection on the objector's behalf.

g.   Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served at least one business day before the date of the applicable hearing.

h.   If no Objections are timely received and filed by the Transaction Objection Deadline, the Debtors may immediately sell the De Minimis Assets listed in the Sale Notice or auction the assets listed in the Auction Notice, as applicable, and take any actions and execute any agreements or other documentation that are necessary or desirable to close the transaction and obtain the sale proceeds.  If an Objection is timely received and filed and cannot be settled by the Debtors and the objecting parties, the De Minimis Asset that is the subject of the Objection will not be sold except upon order of the Court; *provided*, *however*, that any De Minimis Asset set forth in the Sale Notice or Auction Notice that is not the subject of an Objection may be immediately sold in accordance with the foregoing sentence.

## III.   Transaction Value Greater than $7,500,000

i.   If the Transaction Value for the sale of a De Minimis Asset that the Debtors believe is arguably outside of the ordinary course of the Debtors' businesses is greater than $7,500,000, the Debtors shall file a motion with the Court requesting approval of the sale.

## IV.   Commissions to Third Parties

j.   The Debtors shall be permitted to compensate any broker or auctioneer engaged by the Debtors in connection with any sale, auction, attempted sale or attempted auction of De Minimis Assets, as applicable; *provided*, *however*, that if an Objection to the payment of any broker's or auctioneer's fees is timely received and filed before the Transaction Objection Deadline, then the portion of such broker's or auctioneer's fees to which the Objection is directed shall not be paid until such Objection is consensually resolved or until the Court approves such payment.  This provision shall constitute a waiver of the requirements under Bankruptcy Rule 6005 with respect to any brokers or auctioneers.

### The Abandonment Procedures

17.   The Debtors expect to take all reasonable steps to sell the De Minimis Assets. However, certain obsolete materials and equipment, non-repairable equipment and other assets may not be saleable or the cost of marketing or storing such assets in preparation for sale would likely to exceed the proceeds therefrom.  Accordingly, the Debtors submit that, to the extent the Debtors determine a sale of De Minimis Assets cannot be consummated at a price greater than

the costs of sale, such De Minimis Assets may be abandoned in accordance with the following procedures.

I.   **De Minimis Assets to Be Abandoned Less than or Equal to $2,000,000**

    a.    If the book value[5] of the De Minimis Asset to be abandoned is less than or equal to $2,000,000, the Debtors shall serve notice on the person or entity to whom the De Minimis Asset is to be abandoned and any person or entity known to the Debtors as having an interest in the De Minimis Asset to be abandoned, including any known creditor asserting a Lien on the De Minimis Asset to be abandoned. Such notice shall be served 7 days before such De Minimis Assets are abandoned.

II.   **De Minimis Assets to Be Abandoned Greater than $2,000,000 or Less than or Equal to $5,000,000**

    b.    The Debtors shall file a notice with the Court, substantially in the form attached to the Motion as Exhibit C (the "**Abandonment Notice**"), specifying (i) the property to be abandoned, (ii) the reason for the abandonment, (iii) the parties known to the Debtors as having an interest in the property to be abandoned, (iv) the entity to which the personal property is to be abandoned and (v) in connection with the abandonment of any interest in real property, a statement that neither any environmental condition related to such property nor the abandonment thereof presents any threat of an imminent and identifiable harm to public health and safety. The Debtors shall serve the Abandonment Notice on the Service Parties (as defined above).

    c.    The deadline for the filing of an Objection to the proposed abandonment of De Minimis Assets shall be 4:00 p.m. (prevailing Central time) on the day that is 7 days from the date the Abandonment Notice is filed and served (the "**Abandonment Objection Deadline**"). The Debtors may extend the Abandonment Objection Deadline as to any party without further order of the Court.

    d.    An Objection will be considered timely only if it is filed with the Court and served so that it is actually received on or before the Abandonment Objection Deadline by the Service Parties, the Debtors and the Debtors' counsel.

    e.    Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served no later than one business day before the date of the applicable hearing.

    f.    Objections shall include (i) an appropriate caption, including the title and date of the Abandonment Notice to which it is directed, (ii) the name of the objector, (iii)

---

[5] Solely for the purposes of the Procedures, entry into a series of related abandonments within any given thirty-day period to any given counterparty or its affiliates shall be deemed a single abandonment.

a concise statement setting forth the reasons why the Court should not permit the abandonment and (iv) the name, address, telephone number and email address, as applicable, of a person authorized to settle or otherwise resolve any objection on the objector's behalf.

g.    If no Objections are timely filed and served by the Abandonment Objection Deadline, the Debtors may immediately abandon the De Minimis Asset listed in the Abandonment Notice and take any actions that are necessary or desirable to abandon the subject property.  If an Objection is timely received and filed and cannot be resolved between the Debtors and the objecting party, the De Minimis Asset that is the subject of the Objection will not be abandoned except upon order of the Court; *provided*, *however*, that any De Minimis Asset set forth on the applicable Abandonment Notice and not the subject of an Objection may immediately be abandoned in accordance with the foregoing sentence.

## III.    De Minimis Assets to Be Abandoned Greater than $5,000,000

h.    If the book value of the De Minimis Asset to be abandoned is greater than $5,000,000, the Debtors shall file a motion with the Court requesting approval of the abandonment.

### Basis for Relief

#### Approval of the Sale Procedures Is in the Best
#### Interests of the Debtors and Their Estates and Creditors

18.    The Court has the authority to grant the relief requested herein.  Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application); *In re Trilogy Dev. Co., LLC*, Case No. 09-42219, 2010 Bankr. LEXIS 5636, at *3-4 (Bankr. W.D. Mo. 2010); *In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (*citing Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100

B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "good business reason").

19.     In practice, bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including decisions affecting the debtor's capital structure.  *Grp. of Institutional Investors v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943); *In re Farmland Indus., Inc.*, 294 B.R. 855, 882 (Bankr. W.D. Mo. 2003) ("Business judgments should be left to the board room and not to this Court.") (*quoting In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985)); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

20.     Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "'as long as the proposed action *appears* to enhance the debtor's estate.'" *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003) (*quoting Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997) (emphasis in original, internal alterations and quotations omitted)); *see also In re AbitibiBowater*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) (the business judgment standard is "not a difficult standard to satisfy").  Under the business judgment rule, "management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or

study, are made in bad faith, or are in violation of the Bankruptcy Code." *In re Farmland Indus., Inc.*, 294 B.R. at 881 (*citing In re United Artists Theatre Co.*, 315 F.3d 217, 233 (3d Cir. 2003), *Richmond Leasing Co.*, 762 F.2d at 1303 and *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)); *see also In re Food Barn Stores, Inc.*, 107 F.3d at 567 n. 16 ("[w]here the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval as long as the proposed action appears to enhance the debtor's estate'" (*citing Richmond Leasing Co.*, 762 F.2d at 1309)); *In re Farmland Indus. Inc.*, 294 B.R. 903 at 913 (approving the rejection of employment agreements and noting that "[u]nder the business judgment standard, the question is whether the [proposed action] is in the Debtors' best economic interests, based on the Debtors' best business judgment in those circumstances." (citations omitted)).

21.     The Procedures will expedite the flow of cash into the estates, eliminating the need to prepare and prosecute motions and obtain express court approval of every sale.  In addition, the Procedures will protect the Debtors against the declining value of the De Minimis Assets, save the Debtors potentially significant interim storage costs, eliminate certain administrative costs, reduce professional fees and expedite the sale of the De Minimis Assets for the benefit of the Debtors' estates and their creditors.  The Procedures constitute the most efficient and cost-effective way to capitalize on the value of the De Minimis Assets while protecting the best interests of the Debtors, their estates and their creditors.

22.     While the Debtors request authorization to sell or auction assets with a Transaction Value less than or equal to $7.5 million without separate Court approval, the Debtors believe that many individual transactions will be for substantially less value.  The proposed

Transaction Value limitations are modest and appropriate in view of the circumstances and size of the Debtors' estates.

23.     Furthermore, compensating brokers or auctioneers engaged by the Debtors in connection with the sale of De Minimis Assets is in the best interest of the Debtors' estates and their creditors.

<u>The De Minimis Assets Should Be Sold Free
and Clear of Liens, Claims and Encumbrances</u>

24.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable non-bankruptcy law permits sale of the property free and clear of such interest, (ii) an entity holding the lien, claim or encumbrance consents to the proposed sale, (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property, (iv) the interest is in bona fide dispute or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f).  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (court may approve sale "free and clear" provided at least one of the subsections is met); *see also Abir v. Stern*, No. 09 CV 2892, 2010 WL 1170060, at *2 (E.D.N.Y. Mar. 22, 2010) (*quoting In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *34 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met.")).

25.     The Debtors submit that the Procedures satisfy section 363(f) of the Bankruptcy Code.  Any holder of a Lien on any De Minimis Assets to be sold with a Transaction Value greater than $2 million will receive the Sale Notice or Auction Notice, as applicable, and will have an opportunity to object to any sale or auction of an asset in which it claims an interest.  If a

holder of a Lien receives a Sale Notice or Auction Notice and does not object within the prescribed time period, the Lien holder will be deemed to have consented to the proposed sale and the property may then be sold free and clear of the holder's interests pursuant to section 363(f) with any such Liens to be, at the Debtors' sole discretion, either (i) satisfied from the proceeds of the sale or (ii) transferred and attached to the net sale proceeds in the same order of priority that such liens had on the De Minimis Assets sold.

26.    In approving the sales of De Minimis Assets free and clear of Liens, the Debtors request that the Court find that those who purchase De Minimis Assets in accordance with the Procedures are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. This relief is appropriate in light of the opportunity for review and objection provided herein.

27.    Bankruptcy Rule 2002(a)(2) provides that, for cause shown, the court may "direct another method of giving notice" of a proposed sale of property of the estate.  The Debtors submit that good cause has been shown for approval and implementation of the Procedures as an alternative to the notice procedures of Bankruptcy Rule 2002.

<u>Approval of the Abandonment Procedures Is in the
Best Interests of the Debtors and Their Estates and Creditors</u>

28.    Section 554(a) of the Bankruptcy Code provides that a debtor in possession "[a]fter notice and a hearing . . . may abandon any property of the estate that . . . is of inconsequential value and benefit to the estate."  The right to abandon property is, except for certain exceptions inapplicable in this case, unfettered.  *In re Midlantic National Bank*, 474 U.S. 494, 502 (1986).

29.    A De Minimis Asset will not be abandoned by the Debtors unless, in the Debtors' business judgment, the sale of the asset will not generate value to the Debtors' estates.  While the Debtors shall use reasonable efforts to consummate a sale of each of the De Minimis Assets,

there may be little, if any, demand for certain of the Debtors' assets in today's marketplace.  For example, certain of the Debtors' assets are unique to the Debtors' businesses and cannot be used by other entities.  As such, the Transaction Values would be so discounted that, in many cases, it will be more costly for the Debtors to sell the assets than abandon them.  The Debtors submit that, where the cost savings associated with such abandonment exceed the available sale proceeds (taking into account costs of, among other things, interim storage, shipping and marketing), the assets are of inconsequential value and benefit to the estates and, as such, are appropriate for abandonment pursuant to section 554(a) of the Bankruptcy Code.

30.    The Procedures represent the exercise of sound business judgment, are fair and appropriate and balance the need to expeditiously relieve the Debtors of burdensome costs while providing advance notice of proposed property dispositions to interested parties.  The Debtors will not abandon De Minimis Assets where the abandonment would pose an environmental hazard or where a serious risk to the public is likely to result.

31.    Bankruptcy Rule 6007 gives the Court discretion to limit notice and the time for filing objections to any abandonment of property.  The Debtors submit that requiring that notice of abandonment of De Minimis Assets be given to all creditors and indenture trustees would be unnecessarily expensive and time-consuming, and would not provide any useful purpose.  Furthermore, the Debtors submit that any reduction of time to file an objection to abandonment will not prejudice the rights of any party in interest.  Accordingly, the Debtors request that the Court limit notice under Bankruptcy Rule 6007 to the parties in interest set forth herein and limit the time for filing objections as set forth herein.

Approval of the Assumption, Assumption and Assignment or
Rejection, as Applicable, of Executory Contracts and Unexpired Leases

32.     The standard for a debtor to assume, assume and assign or reject an executory

contract or unexpired lease pursuant to section 365 of the Bankruptcy Code is whether the

debtor's decision is made within its sound business judgment.  *NLRB v. Bildisco & Bildisco*, 465

U.S. 513, 523 (1984); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*,

107 F.3d 558, 567 n.16 (8th Cir. 1997); *In re Steaks to Go, Inc.*, 226 B.R. 35, 37 (Bankr. E.D.

Mo. 1998).

33.     In the Eighth Circuit, the business judgment test for the assumption or rejection of

an executory contract or unexpired lease consists of two parts.  *Crystalin, L.L.C. v. Selma Prop.,*

*Inc. (In re Crystalin, L.L.C.)*, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003).  First, the debtor must

carry its burden to prove that assumption benefits the estate.  *Id.*  Once that initial test is met,

"the bankruptcy court should not interfere with the trustee or debtor in possession's business

judgment except upon a finding of bad faith or gross abuse of their business discretion."  *Id.*

(internal citations and quotations omitted).  The debtor need not show, however, that continued

performance under a given contract would result in a loss of value for the estate.  *In re Audra-*

*John Corp.*, 140 B.R. 752, 755-56 (Bankr. D. Minn. 1992).

34.     Courts generally will not second-guess a debtor's business judgment concerning

the assumption, assumption and assignment or rejection of an executory contract or unexpired

lease.  *See In re Audra-John Corp.*, 140 B.R. at 756 ("[T]he [business judgment] test embodies

considerable deference to the proponent of the rejection, so long as it can articulate sound

business reasons for repudiating the contract.") (internal citations omitted); accord *In re Riodizio,*

*Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the business

judgment of the debtor's management."); *Phar-Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R. 948,

951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor . . . . Courts should generally defer to a debtor's decision whether to reject an executory contract.").

35.     The "business judgment" test is not a strict standard: it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See, e.g.*, *Four B. Corporation v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 567 n.16 (8th Cir. 1997) ("Where the trustee's request is not manifestly unreasonable or made in bad faith, the court should normally grant approval '[a]s long as [the proposed action] appears to enhance [the] debtor's estate.'") (alterations in original) (citation omitted); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("In reviewing a debtor's decision to assume or reject an executory contract, the court must examine the contract and circumstances and apply its best 'business judgment' to determine if the assumption or rejection would be beneficial or burdensome to the estate.").  Further, nothing prevents the parties to a contract from agreeing to postpetition modifications to the contract prior to its assumption.  *See City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) ("Nothing in the Code suggests that the debtor may not modify its contracts when all parties to the contract consent.").

36.     The Debtors anticipate that certain dispositions of De Minimis Assets will require the Debtors to dispose of related executory contracts or unexpired leases.  As part of the negotiations with purchasers of De Minimis Assets, the Debtor may need to determine whether the purchaser will take assignment of such related contracts or leases that are assignable under applicable non-bankruptcy law or whether the Debtor instead should reject any such contracts or

-17-

leases.  Likewise, the Debtors anticipate that it may be prudent to reject certain executory

contracts or unexpired leases in connection with the sale or abandonment of certain De Minimis

Assets.

37.     The Debtors believe that any such determination will fall within their business

judgment and will be made in the best interest of the Debtors' estates and creditors.  Moreover,

under the Procedures, notice (including, for any assumption or assumption and assignment,

notice of any Cure Claims) will be provided to the counterparties to such contracts and leases,

with an opportunity for such parties to object.  Accordingly, the requirements of section 365 of

the Bankruptcy Code will be satisfied under the Procedures.

38.     Finally, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he

Court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105.  The Debtors submit that implementation of the

Procedures is appropriate in these chapter 11 cases and within the Court's equitable powers

under section 105 of the Bankruptcy Code.  Similar procedures have been approved in other

complex chapter 11 cases.  *See, e.g.*, *In re Alpha Natural Res., Inc.*, Case No. 15-33896 (KRH)

(Bankr. E.D. Va. Sept. 17, 2015); *In re Patriot Coal Corp.*, Case No. 15-32450 (Bankr. E.D. Va.

June 25, 2015); *In re Edison Mission Energy*, Case No. 12-49219 (Bankr. N.D. Ill. Jan. 17,

2013); *In re Patriot Coal Corp.*, Case No. 12-12900 (Bankr. S.D.N.Y. Aug. 16, 2012); *In re

Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012); *In re The

Great Atl. & Pac. Tea Co.*, Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Mar. 10, 2011); *In re

Delta Air Lines, Inc.*, Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Oct. 7, 2005).

## Waiver of Stay Under Bankruptcy Rule 6004(h)

39.     The Debtors also request that, to the extent applicable to the relief requested in

this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that

"[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the Debtors submit that the order approving the Procedures, and any sale consummated pursuant to the Procedures, be effective immediately as the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. It is in the best interests of the Debtors' estates to facilitate the sale transaction closing, thereby expediting the flow of related sale proceeds into these estates. Moreover, allowing the Debtors to close a sale transaction quickly will ease the often difficult task of securing a buyer. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Notice

40.    Consistent with the Case Management Order, the Debtors will serve notice of this Motion on (a) the Core Parties and (b) any Non-ECF Parties (collectively, the "**Notice Parties**"). All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this motion through the ECF system no later than the day after its filing with the Court. A copy of this Motion and any order approving it will also be made available on the Debtors' Case Information Website (located at *https://cases.primeclerk.com/archcoal*). A copy of the Proposed Order will be made available on the Debtors' Case Information Website. The Proposed Order may be modified or withdrawn at any time without further notice. If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Debtors' Case Information Website, and no further notice will be provided. In light of the relief requested, the Debtors submit that no further notice is necessary.

-19-

**<u>No Prior Request</u>**

41.     The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that this Court:

(a)     approve the Procedures to sell, auction or abandon De Minimis Assets; and

(b)     grant the Debtors such other and further relief as is just and proper.

Dated:    February 9, 2016
          New York, New York

Respectfully submitted,

DAVIS POLK & WARDWELL LLP


/s/ Kevin J. Coco
Marshall S. Huebner
Brian M. Resnick
Michelle M. McGreal
Kevin J. Coco

450 Lexington Avenue
New York, New York 10017
(212) 450-4000
Fax:    (212) 607-7983
marshall.huebner@davispolk.com
brian.resnick@davispolk.com
michelle.mcgreal@davispolk.com
kevin.coco@davispolk.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

-and-

BRYAN CAVE LLP

Lloyd A. Palans, #22650MO
Brian C. Walsh, #58091MO
Cullen K. Kuhn, #53151MO
Laura Uberti Hughes, #60732MO

One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000
Fax:  (314) 259-2020
lapalans@bryancave.com
brian.walsh@bryancave.com
ckkuhn@bryancave.com
laura.hughes@bryancave.com

*Proposed Local Counsel to the Debtors and
Debtors in Possession*

## SCHEDULE 1
## Debtor Entities

| | | | |
|---|---|---|---|
| 1. | ACI Terminal, LLC | 37. | ICG Eastern, LLC |
| 2. | Allegheny Land Company | 38. | ICG Eastern Land, LLC |
| 3. | Apogee Holdco, Inc. | 39. | ICG Illinois, LLC |
| 4. | Arch Coal, Inc. | 40. | ICG Knott County, LLC |
| 5. | Arch Coal Sales Company, Inc. | 41. | ICG Natural Resources, LLC |
| 6. | Arch Coal West, LLC | 42. | ICG Tygart Valley, LLC |
| 7. | Arch Development, LLC | 43. | International Coal Group, Inc. |
| 8. | Arch Energy Resources, LLC | 44. | Jacobs Ranch Coal LLC |
| 9. | Arch Reclamation Services, Inc. | 45. | Jacobs Ranch Holdings I LLC |
| 10. | Arch Western Acquisition Corporation | 46. | Jacobs Ranch Holdings II LLC |
| 11. | Arch Western Acquisition, LLC | 47. | Juliana Mining Company, Inc. |
| 12. | Arch Western Bituminous Group, LLC | 48. | King Knob Coal Co., Inc. |
| 13. | Arch Western Finance LLC | 49. | Lone Mountain Processing, Inc. |
| 14. | Arch Western Resources, LLC | 50. | Marine Coal Sales Company |
| 15. | Arch of Wyoming, LLC | 51. | Melrose Coal Company, Inc. |
| 16. | Ark Land Company | 52. | Mingo Logan Coal Company |
| 17. | Ark Land KH, Inc. | 53. | Mountain Coal Company, L.L.C. |
| 18. | Ark Land LT, Inc. | 54. | Mountain Gem Land, Inc. |
| 19. | Ark Land WR, Inc. | 55. | Mountain Mining, Inc. |
| 20. | Ashland Terminal, Inc. | 56. | Mountaineer Land Company |
| 21. | Bronco Mining Company, Inc. | 57. | Otter Creek Coal, LLC |
| 22. | Catenary Coal Holdings, Inc. | 58. | Patriot Mining Company, Inc. |
| 23. | Catenary HoldCo, Inc. | 59. | P.C. Holding, Inc. |
| 24. | Coal-Mac, Inc. | 60. | Powell Mountain Energy, LLC |
| 25. | CoalQuest Development LLC | 61. | Prairie Coal Company, LLC |
| 26. | Cumberland River Coal Company | 62. | Prairie Holdings, Inc. |
| 27. | Energy Development Co. | 63. | Saddleback Hills Coal Company |
| 28. | Hawthorne Coal Company, Inc. | 64. | Shelby Run Mining Company, LLC |
| 29. | Hobet Holdco, Inc. | 65. | Simba Group, Inc. |
| 30. | Hunter Ridge, Inc. | 66. | Thunder Basin Coal Company, L.L.C. |
| 31. | Hunter Ridge Coal Company | 67. | Triton Coal Company, L.L.C. |
| 32. | Hunter Ridge Holdings, Inc. | 68. | Upshur Property, Inc. |
| 33. | ICG, Inc. | 69. | Vindex Energy Corporation |
| 34. | ICG, LLC | 70. | Western Energy Resources, Inc. |
| 35. | ICG Beckley, LLC | 71. | White Wolf Energy, Inc. |
| 36. | ICG East Kentucky, LLC | 72. | Wolf Run Mining Company |