UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| ARCH COAL, INC., et al., | Case No. 16-40120-705 |
| (Ark Land Company, Case No. 16-40154) | (Jointly Administered) |
| Debtors. | |

**BRYAN M. TARTER'S JOINDER IN THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DIP FINANCING (DOCKET N0. 319)
AND
BRYAN M. TARTER'S LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF FINAL ORDERS (I) AUTHORIZING THE DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507(b) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. SECTION 363 AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS PURSUANT TO 11 U.S.C. SECTIONS 361, 362, 363(c)(2), 364 AND 507(b)**

Bryan M. Tarter, by Counsel, files this Joinder in the Official Committee of Unsecured Creditors' Objection to DIP Financing (Docket No. 319) and this Limited Objection to Debtors' Motion for Entry of Final Order (I) Authorizing the Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. Sections 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. Section 363 and (II) Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11 U.S.C. Sections 361, 362, 363(c)(2), 364 and 507(b) ("Limited Objection").

1. This Court has jurisdiction over this Motion under 28 U.S.C. §1334. Venue of this proceeding is proper pursuant to 28 U.S.C. §1409. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

2.      Debtor Ark Land filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 11, 2016 ("Petition Date").

3.      Debtor Ark Land's bankruptcy case is being jointly administered with the bankruptcy cases of Arch Coal, Inc. and its subsidiaries in Case No. 16-40120-705 pursuant to this Court's Order entered on January 13, 2016 (ECF #67).

4.      Debtor Ark Land has continued in possession of its property and continued to operate and manage its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in this case.

5.      Bryan Tarter and Ark Land entered into a **Sale and Purchase Agreement** ("**Agreement**"), a copy of which is attached hereto and incorporated herein as **Exhibit "1."**

6.      Bryan Tarter agreed to, and did sell to, Ark Land the Real Property, Leases and Permits, and Personal Property (collectively, the "Property") described in the Agreement.

7.      Ark Land agreed to pay Bryan Tarter $2,000,000.00 pursuant to the terms contained in the Agreement and in the **Promissory Note** attached thereto as **Exhibit "E"**.

8.      In addition, the Agreement required Ark Land to lease the Property to Bryan Tarter for normal ranching purposes, including the grazing, wintering and calving of Bryan Tarter's livestock, and growing and cultivating hay, upon the terms and conditions contained in the Agreement and the **Grazing Lease** attached thereto as **Exhibit "C"**.

9.      The Agreement also granted Bryan Tarter the "First Right to Lease Additional Property" in Ark Land's unleased interests in the "KP Stevens Property" for agricultural purposes under certain state and/or federal grazing leases and permits.   As of this date, this has not occurred.

10. Further, the Agreement provides that in the event KP Stevens relinquishes its right in some or all of the state and/or federal grazing leases and permits, Ark Land will "use its reasonable efforts to assist Seller in obtaining an interest in the same, to the extent permitted by law…" As of this date, this has not occurred.

11. The Agreement also granted Bryan Tarter the "first right to lease" the "After Acquired Property" as defined in the Agreement. As of this date, this has not occurred.

12. The Agreement also required Ark Land to grant Bryan Tarter the option to purchase the Property upon the terms and conditions in the Agreement and the **Purchase Option** attached thereto as **Exhibit "D".**

13. In consideration for all of the above, the Agreement requires Bryan Tarter to support the Otter Creek Mining Project, including but not limited to, using his reasonable efforts to support the issuance of a mining permit or other permits in connection with or related to the Otter Creek Mine and any mining operations and development on or in connection with the Otter Creek Mine ("Support of Mining Project"). As of this date, all of the permits referenced above have not been issued.

14. Bryan Tarter and Ark Land are required by the Agreement to negotiate in good faith for the execution and delivery of a Ground and Surface Water Monitoring Agreement for the monitoring of ground and/or surface water and related access on real property owned by Bryan Tarter located in Powder River County, Montana, legally described as Section 6 of Township 4 South, Range 46 East of the Principal Montana Meridian ("Ground and Surface Water Monitoring Agreement"). As of this date, Bryan Tarter and Ark Land have not negotiated, executed or delivered a Ground and Surface Water Monitoring Agreement.

15. The Agreement and related documents do not require Bryan Tarter to:

a. provide additional access in the future to support activity at the Otter Creek Mine, including but not limited to, access via one of the only improved roads in the immediate vicinity.

b. continue to monitor the improved road and surrounding area to identify and report hunters, poachers and trespassers to Ark Land or the appropriate authorities because Ark Land has no employees or representatives on site in Montana on the Property.

c. continue to share in the erosion control costs and efforts which are beyond the scope of the Grazing Lease.

d. continue to do the maximum rather than the minimum required by the Grazing Lease.

e. continue to be a "good neighbor" and communicate to the community that Ark Land is a "good neighbor" in a remote area of the country.

16. Pursuant to the Agreement, Ark Land agrees that Bryan Tarter reserves all claims for damages proximately caused by the Otter Creek Mine.

17. The **Memorandum Notice of Grazing Lease**, labeled **Exhibit "A"** to the Grazing Lease, was recorded in Book 88 at Page 97 of the Records of Powder River County, Montana on or about July 1, 2011.

18. The **Memorandum Notice of Purchase Option**, labeled **Exhibit "A"** to the Purchase Option was also recorded in Book 88 at Page 103 of the Records of Powder River County, Montana on or about July 1, 2011.

19. The Agreement, including but not limited to the Promissory Note, Grazing Lease, Purchase Option, Memorandum Notice of Grazing Lease, and Memorandum Notice of Purchase Option inure to the benefit of and are binding upon the heirs, successors and assigns of the parties pursuant to the laws of the State of Montana.

20 As of the Petition Date, Ark Land had failed to the pay the $166,666.67 annual payment due to Bryan Tarter on or before January 15, 2016.

21. Five (5) payments remain due and owing to Bryan Tarter:

    a. $166,666.67 on or before January 15, 2016;

    b. $166,666.67 on or before January 15, 2017;

    c. $166,666.67 on or before January 15, 2018;

    d. $166,666.67 on or before January 15, 2019; and

    e. $166,666.67 on or before January 15, 2020.

22. The Property described hereinabove and the support of Bryan Tarter is critical to the Otter Creek Mining Project, including but not limited to Bryan Tarter using his reasonable efforts to support the issuance of a mining permit or other permits in connection with or related to the Otter Creek Mine and any mining operations and development on or in connection with the Otter Creek Mine in Montana.

23. The negotiation, execution, and delivery of a Ground and Surface Water Monitoring Agreement, and the installation and maintenance of the equipment for the monitoring of ground and/or surface water and related access on real property owned by Bryan Tarter is also critical and necessary to the Otter Creek Mining Project in order for it to be in compliance with various state and federal environmental regulations.

24. Ark Land executed and delivered to PNC Bank, National Association, a Mortgage, Security Agreement, Assignment of Rents and Leases, Financing Statement and Fixture Filing (Montana) dated November 6, 2012, on the Property which was recorded on November 29, 2012 in Book 90, Pages 937 - 978 of the Deed Records of Powder River County, Montana, to secure the payment of $3,000,000,000.00, a copy of which is attached hereto and incorporated herein as **Exhibit "2" ("PNC Mortgage").**

25. Ark Land executed and delivered to UMB Bank National Association a Mortgage, Security Agreement, Assignment of Rents and Leases, Financing Statement and Fixture Filing (Montana) dated as of December 17, 2013, on the Property which was recorded on June 13, 2014 in Book 94, Pages 359- 397 of the Deed Records of Powder River County, Montana, to secure the payment of $700,000,000.00, a copy of which is attached hereto and incorporated herein as **Exhibit "3" ("UMB Mortgage").**

26. Montana law provides that any instrument or judgment affecting title to or possession of real property may be recorded in the county records in which the real property is located. Mont. Code Ann. Sections 70-21-201; 70-21-208.

27. Recording such instruments in the county records provides constructive notice to other parties such as subsequent purchasers or future mortgagees. Mont Code Ann. Section 70-21-302.

28. Montana also enacted a race-notice type of recording statute, specifically:

> Every conveyance of real property, other than a lease for a term not exceeding 1 year, is void against any subsequent purchaser or encumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded. Mont. Code Ann. Section 70-21-304.

6

29. Furthermore:

> Every conveyance and/or encumbrance of real property acknowledged or proved and certified and recorded as prescribed by law and which is executed by one who thereafter acquires an interest in the real property by a conveyance which said conveyance is constructive notice as aforesaid is, from the time such latter conveyance is filed with the county clerk for record, constructive notice of the contents of such earlier conveyance and/or encumbrance to subsequent takers, purchasers, mortgagees, or other encumbrancers or transferees. Mont. Code Ann. Section 70-21-303.

30. Additionally, "conveyance" is defined as

> Every instrument in writing by which any estate in real property is created, alienated, mortgaged, or encumbered or by which the title to real property may be affected, except wills." Mont. Code Ann. Section 70-21-301.

31. Case law indicates that purchase options are considered conveyances that confer upon the optionee the exclusive right to purchase real property, and take away from the optionor the right to sell the real property to anyone other than the optionee or for different terms than those contained within the option. Guerin V Sunburst Oil & Gas Co., 68 Mont. 365, 218 P. 949, 950 (1923).

32. Also, the general rule in the majority of jurisdictions is that the option holder whose option is first recorded has priority as against subsequent purchasers of the property. 50 A.L.R. 1314 (Originally published in 1927); Guerin V Sunburst Oil & Gas Co., 68 Mont. 365, 218 Pac. 949 (1923).

33. Case law in other jurisdictions supports that subsequent mortgages are junior and subject to prior option agreements. In a similar Nebraska case, a lessee was given an option to purchase the real property that he was renting and occupying at the time of the agreement. After agreeing to grant the option, the lessor executed a mortgage on the subject property. Smith v Gibson, 25 Neb. 511, 41 N.W. 360, 360 (1889). The Supreme Court of Nebraska affirmed the

7

District Court's holding that the lessor had exercised his option within the time agreed upon, and that his possession of the property was notice to subsequent purchasers of his rights to the property. Further, the lessor could not create a valid lien as against the lessee by executing the mortgage on the property because the lessee had rights to the property by operation of the option. *Id.*, 363. Since the mortgagee had executed the mortgage with the lessor in good faith, the Court held that the purchase price that the lessee paid to the lessor should be paid to the mortgagee instead, in satisfaction of the mortgage debt between the mortgagee and the lessor as mortgagor. *Id.*

35. The applicable law in this case is Montana law and its race-notice recording statutes.

36. Montana law provides that whoever records first, without notice of previous interests has first priority.

37. Bryan Tarter's **Memorandum Notice of Grazing Lease** was recorded first and his **Memorandum Notice of Purchase Option** was recorded second.

38. PNC Bank's Mortgage was recorded third and UMB Bank's Mortgage was recorded fourth.

39. PNC Bank and UMB Bank had notice of Bryan Tarter's Memorandum Notice of Grazing Lease and Memorandum Notice of Purchase Option and thus the Agreement.

40. As a result, Bryan Tarter's Grazing Lease, Purchase Option and Agreement have priority over all subsequent purchasers and mortgages.

41. The Debtors' motion requests relief that appears to alter, modify and/or subordinate the priority of Bryan Tarter's Grazing Lease, Purchase Option and Agreement, including but not limited to paragraph 6(g) which states:

> (g) the grant of superpriorty claims to the DIP Lenders payable from, and having recourse to, all prepetition and postpetition property of the Debtors' estates and all proceeds thereof (including, subject only to and effective upon entry of the Final

8

Order, and Avoidance Proceeds (as defined below), subject to the Fees Carve-Out (as defined below) and the Bond Carve-Out (as defined below.)

42. Bryan Tarter objects to any alteration, modification and/or subordination of the priority of his Grazing Lease, Purchase Option and Agreement.

43. Bryan Tarter requests that Debtor Ark agree, and the Court order Debtor Ark to pay Bryan Tarter pursuant to the terms of the Agreement for the reasons recited above and below.

44. Bryan Tarter requests that Debtor Ark agree, and the Court order that Bryan Tarter's Grazing Lease was recorded prior to the PNC Mortgage and UMB Mortgage, and that the Court approve the assumption of the Grazing Lease and order Debtor Ark to pay the real estate taxes pursuant to the Grazing Lease for the reasons recited above.

45. Bryan Tarter requests that Debtor Ark agree and the Court order that Bryan Tarter's Purchase Option was recorded prior to the PNC Mortgage and UMB Mortgage and order that the PNC Mortgage, UMB Mortgage and any other mortgages are junior mortgages and as such, order that in the event Bryan Tarter exercises the Purchase Option and the PNC Mortgage, UMB Mortgage, or any other mortgages approved by the Bankruptcy Court have not been satisfied and released, that Bryan Tarter will deliver the Purchase Option payment to Debtor Ark Land, and Debtor Ark Land will deliver in priority order the Purchase Option payment to the holders of the PNC Mortgage, UMB Mortgage and any and all other mortgages approved by the Bankruptcy Court to the extent of the Purchase Option funds received, and the holders of the PNC Mortgage, UMB Mortgage and any and all other mortgages will release their mortgages against the Property even if the Purchase Option funds are insufficient to pay their total indebtedness.

46. Bryan Tarter requests that the Court sustain the Official Committee of Unsecured Creditors' Objection to DIP Financing.

**WHEREFORE, Bryan M. Tarter**, by Counsel, hereby respectfully requests that this Court enter an Order sustaining his Limited Objection and ordering:

A. Debtor Ark will pay Bryan Tarter pursuant to the terms of the Agreement for the reasons recited above and below.

B. Bryan Tarter's Grazing Lease was recorded prior to the PNC Mortgage and UMB Mortgage, and will be assumed in this case, and that Debtor Ark will pay the real estate taxes pursuant to the terms of the Grazing Lease for the reasons recited above.

C. Bryan Tarter's Purchase Option was recorded prior to the PNC Mortgage and UMB Mortgage and that the PNC Mortgage, UMB Mortgage, and any other mortgages are junior mortgages and as such, in the event Bryan Tarter exercises the Purchase Option and the PNC Bank, UMB Bank Mortgage or any other mortgages have not been satisfied and released, the following will simultaneously occur: (i) Bryan Tarter will deliver the Purchase Option payment to Debtor Ark Land, (ii) Debtor Ark Land will deliver in priority order the Purchase Option payment to the holders of the PNC Mortgage, UMB Mortgage and any and all other mortgages approved by the Bankruptcy Court, to the extent of the Purchase Option funds received; and (iii) the holders of the PNC Mortgage, UMB Mortgage and any and all other mortgages approved by the Bankruptcy Court will release their mortgages against the Property even if the Purchase Option funds are insufficient to pay their total indebtedness;

D. Sustain the Official Committee of Unsecured Creditors' Objection to DIP Financing; and

E. Such other and further relief as this Court deems just and proper.

STONE, LEYTON & GERSHMAN
A Professional Corporation

By: /s/ E. Rebecca Case
E. Rebecca Case – EDMO #38010MO, MO #38010
Howard S. Smotkin - EDMO #36227MO, MO #36227
Janice R. Valdez - EDMO #42154MO, MO #42154
7733 Forsyth Boulevard, Suite 500
St. Louis, Missouri 63105
(314) 721-7011
(314) 721-8660 Facsimile
erc@stoneleyton.com (Court e-mail)
rcase@stoneleyton.com (Office e-mail)
hss@stoneleyton.com (Court e-mail)
hsmotkin@stoneleyton.com (Office e-mail)
jrv@stoneleyton.com (Court e-mail)
jvaldez@stoneleyton.com (Office e-mail)

*Local Counsel for Creditor Bryan M. Tarter*

-and -

THRONE LAW OFFICE, P.C.
Jacob T. Haseman, WY State Bar #6-4238
P.O. Drawer 6590
424 N. Main Street, Suite 201
Sheridan, Wyoming 82801
(307) 672-5858
(307) 674-6104 Facsimile
jhaseman@thronelaw.com

*Counsel for Creditor Bryan M. Tarter*

11