## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | **Chapter 11**<br>**Case No. 16-40120-705** |
|  | **(Jointly Administered)** |
| **ARCH COAL, INC., et al.,** | **[Related to Docket No. 27, 95]** |
| **Debtors.**[1] |  |

### FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION AGENT AND THE PREPETITION <u>LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507(b)</u>

Upon the motion (the "**Motion**") of Arch Coal, Inc. (the "**Borrower**") and its subsidiaries that are debtors and debtors in possession in these cases (collectively with the Borrower, the "**Debtors**" and such cases, the "**Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the local rules for the Eastern District of Missouri (the "**Local Bankruptcy Rules**"), seeking, among other things:

A.       authorization for the Borrower to obtain postpetition financing (the "**DIP Financing**"), and all of the other Debtors (other than the Bonding Subsidiaries and the Inactive Subsidiaries, each as defined below) (the "**Guarantors**") to guaranty the Borrower's obligations

---

[1]       The debtors are listed on Schedule 1 attached to the Motion. The employer tax identification and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

in connection with the DIP Financing, consisting of a delayed-draw term loan (the "**DIP Loans**")

in the aggregate principal amount of $275,000,000 from a syndicate of financial institutions

(solely in such capacities, the "**DIP Lenders**"), all on the terms and conditions set forth in the

Interim Order, this Final Order and the DIP Documents (each as defined below);

      B.     authorization for the Debtors to execute and enter into that certain Superpriority

Secured Debtor-in-Possession Credit Agreement among the Borrower, the Guarantors, the DIP

Lenders and Wilmington Trust, National Association ("**Wilmington Trust**"), acting as

administrative agent and collateral agent (solely in such capacities, the "**DIP Agent**")

substantially in the form attached to the Motion as <u>Exhibit A</u> (as amended, supplemented or

otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP**

**Credit Agreement**"; together with the schedules and exhibits attached thereto and all

agreements, documents, instruments and/or amendments executed and delivered in connection

therewith, including, without limitation, the Collateral Documents (as defined in the DIP Credit

Agreement), the "**DIP Documents**") and to perform such other and further acts as may be

required in connection with the DIP Documents;

      C.     the grant of adequate protection to the Prepetition Agent (as defined below) and

the lenders (solely in such capacities, the "**Prepetition Lenders**") under or in connection with

that certain:  (i) Amended and Restated Credit Agreement, dated as of June 14, 2011 (as

heretofore amended, restated, supplemented or otherwise modified, the "**Prepetition Credit**

**Agreement**"), among the Borrower, the Prepetition Lenders from time to time party thereto,

Wilmington Trust, acting as successor term loan administrative agent (solely in such capacity,

the "**Prepetition Administrative Agent**") and Wilmington Trust, acting as successor collateral

agent (solely in such capacity and, together with PNC Bank National Association ("**PNC**"), in its

capacity as bailee or sub-agent to the successor collateral agent, the "**Prepetition Collateral Agent**" and, together with the Prepetition Administrative Agent and the Prepetition Control Agent (as defined in the ICA (as defined below)), the "**Prepetition Agent(s)**"), the Prepetition Agent(s) and the Prepetition Lenders are collectively referred to herein as the "**Prepetition Lender Parties**"); (ii) Amended and Restated Security Agreement, dated as of June 14, 2011, between the Borrower and the Prepetition Collateral Agent (as heretofore amended, restated supplemented or otherwise modified, the "**Borrower Security Agreement**"); (iii) Amended and Restated Continuing Guaranty and Suretyship Agreement dated as of June 14, 2011 (as heretofore amended, restated, supplemented or otherwise modified, the "**Prepetition Guaranty**") among the Debtors party thereto (whether as an original signatory thereto, by joinder or otherwise) (the "**Guarantors**") and the Prepetition Administrative Agent; and (iv) Amended and Restated Security Agreement, dated as of June 14, 2011, between the Guarantors and the Prepetition Collateral Agent (as heretofore amended, restated, supplemented or otherwise modified, the "**Guarantor Security Agreement**" and, together with the Borrower Security Agreement, the "**Security Agreements**" and, collectively with the Prepetition Credit Agreement, the Prepetition Guaranty, the Intercreditor Agreements (as defined below), the ISA (as defined below) and the mortgages and all other documentation executed in connection with all of the foregoing, the "**Existing Loan Agreements**"), whose liens and security interests are being primed by the DIP Liens (as defined below) granted in respect of the DIP Financing;

D.     the grant of adequate protection to the Prepetition Notes Trustee (as defined below) and the noteholders (solely in such capacities, the "**Prepetition Noteholders**") under or in connection with that certain indenture, dated as of December 17, 2013, between UMB Bank National Association, as trustee and collateral agent (solely in such capacities, the "**Prepetition**

Notes Trustee" and, together with the Prepetition Noteholders, the "**Prepetition Noteholder Parties**"), the Borrower and the guarantors listed therein for the issuance of 8.000% senior secured second lien notes due 2019 (the "**Prepetition Notes Indenture**" and, together with the security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Notes Trustee, for its benefit and for the benefit of the Prepetition Noteholders, the "**Existing Notes Agreements**" and, together with the Existing Loan Agreements, the "**Existing Agreements**"), whose liens and security interests are junior to the Prepetition Lender Liens (as defined below) and shall be junior to the DIP Liens and the Prepetition Lender Adequate Protection Liens (as defined below);

E.     authorization for the Debtors to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Lender Parties or the Prepetition Noteholder Parties (collectively, the "**Prepetition Secured Parties**") have an interest, and the granting of adequate protection to the Prepetition Lender Parties and the Prepetition Noteholder Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

F.     approval of certain stipulations by the Debtors with respect to the Existing Loan Agreements and the liens and security interests arising therefrom;

G.     the grant of superpriority claims to the DIP Lenders payable from, and having recourse to, all prepetition and postpetition property of the Debtors' estates and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject to the Fees Carve-Out (as defined below) and the Bonding Carve-Out (as defined below);

H.       subject only to and effective upon entry of this Final Order, the limitation of the Debtors' right to surcharge the Prepetition Collateral and the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

I.       modification of the automatic stay to the extent set forth herein and in the DIP Documents;

J.       to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of an order granting the Motion on an interim basis (as entered on the docket at ECF. No. 95, the "**Interim Order**"):  (i) authorizing the Borrower and the Guarantors to enter into the DIP Documents; (ii) authorizing the Debtors' use of Cash Collateral and all other Prepetition Collateral; and (iii) granting the adequate protection described herein; and

K.       that this Court schedule a final hearing (the "**Final Hearing**") to be held on February 23, 2016, at 10:00 A.M., at the Thomas F. Eagleton U.S. Courthouse, 111 S. Tenth St. Floor 7, St. Louis, Missouri 63102, to consider entry of a final order (the "**Final Order**") approving the relief herein on a final basis and authorizing the Borrower to borrow from the DIP Lenders under the DIP Documents up to the full amount of the DIP Financing and the Guarantors to guaranty all obligations owing to the DIP Lenders under the DIP Documents; and due and appropriate notice of the Motion having been served by the Debtors on the DIP Agent and its counsel, counsel to the DIP Lenders, the Prepetition Agent and its counsel, the Prepetition Second Lien Notes Trustee, the official committee of unsecured creditors in these Cases (the "**Creditors' Committee**"), the Debtors' 30 largest unsecured creditors, the Office of the United States Trustee for the Eastern District of Missouri (the "**U.S. Trustee**"), the Internal Revenue

Service, the Securities and Exchange Commission, the United States Department of the Interior, the United States Department of Labor and the United States Attorney's Office for the Eastern District of Missouri; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and this Court having entered the Interim Order on January 16, 2016, granting the relief sought in the Motion on an interim basis; and the Final Hearing on the Motion having been held by this Court on February 23, 2016; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in these cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, the *Declaration of Mark Buschmann in Support of the Motion*, the *Declaration of John T. Drexler, Senior Vice President and Chief Financial Officer of Arch Coal, Inc.*, at the Interim Hearing and at the Final Hearing; and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.*  The relief requested in the Motion is granted on a final basis in accordance with the terms of this Final Order.  All objections to the Motion with respect to the entry of this Final Order and motions to reconsider the Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.      *Jurisdiction, Authority to Hear and Determine, and Venue.*  This Court has jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334.  It has authority to hear and determine the matters raised pursuant to 28 U.S.C. § 157.  Venue lies pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Notice*.  The Debtors have represented that proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

4.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 19 and 20 below), the Debtors admit, stipulate and agree that:

(a)      (i) as of the filing of the Cases (the "**Petition Date**"), the Borrower and the Guarantors were justly and lawfully indebted and liable to the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $1,886,125,000 in respect of loans made by the Prepetition Lenders pursuant to, and in accordance with the terms of, the Existing Loan Agreements, plus, in each case, accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Existing Loan Agreements), charges, costs, indemnities and other obligations incurred in connection therewith as provided in the Existing Loan Agreements (collectively, the "**Prepetition Debt**"), which Prepetition Debt has been guaranteed on a joint and several basis by all of the other Debtors (excluding the Bonding Subsidiaries and the Inactive Subsidiaries, each as defined in the DIP Credit Agreement); (ii) the Prepetition Debt constitutes the legal, valid and binding obligations of the Borrower and the Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Debt or any payments made to the Prepetition Lender Parties or applied to or paid on account of the obligations owing under the Existing Loan Agreements prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction,

defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b)  the liens and security interests granted to the Prepetition Agent or to any Prepetition Lender (the "**Prepetition Lender Liens**") pursuant to and in connection with the Existing Loan Agreements (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Agent, for its benefit and for the benefit of the Prepetition Lenders), are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property described in the Existing Loan Agreements (the "**Prepetition Collateral**"); (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) subject and subordinate only to (A) the DIP Liens, (B) the Fees Carve-Out and the Bonding Carve-Out, to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Existing Loan Agreements to the extent that such permitted liens are senior to the liens of the Prepetition Agent on the Prepetition Collateral;

(c)  the liens and security interests granted to the Prepetition Noteholders pursuant to and in connection with the Existing Notes Agreements are or shall be subject and subordinate to: (i) the DIP Liens, the Prepetition Lender Liens and the Prepetition Lender Adequate Protection Liens, (ii) the Fees Carve-Out and the Bonding Carve-Out, to which the DIP Liens and the Prepetition Lender Adequate Protection Liens are subject; and (iii) valid, perfected and unavoidable liens permitted under the DIP Documents or the Existing Loan Agreements;

(d)       effective as of the date of entry of the Interim Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Lender Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to the Existing Loan Agreements, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order, whether such Released Claims are matured or unmatured or known or unknown; and, for the avoidance of doubt, the Released Claims shall not include claims, counterclaims or causes of action, if any, that have arisen prior to the Petition Date against the Released Parties in favor of, or that can be asserted by, any creditor (that is not a Debtor) in its individual capacity (and not on behalf of the Debtors or their estates);

(e)       the Intercreditor Agreement, dated as of December 17, 2013, among the Prepetition Collateral Agent, the Prepetition Notes Trustee and the Borrower (the "**ICA**"), is binding and enforceable against the Borrower and the Guarantors in accordance with its terms,

and the Borrower and the Guarantors are not entitled to take any action that would be contrary to the provisions of the ICA;

(f)        the Amended and Restated Collateral Sharing Agreement, dated as of May 16, 2012, among the Prepetition Administrative Agent, the Prepetition Collateral Agent, the swap parties referred to therein, the Borrower and the Guarantors (the "**Collateral Sharing Agreement**"; and, together with the ICA, the "**Intercreditor Agreements**"), is binding and enforceable against the Borrower and the Guarantors in accordance with its terms, and the Borrower and the Guarantors are not entitled to take any action that would be contrary to the provisions of the Collateral Sharing Agreement;

(g)        the Intercompany Subordination Agreement, dated as of June 14, 2011, among the Borrower, the Guarantors and the Prepetition Administrative Agent (the "**ISA**") is binding and enforceable against the Borrower and the Guarantors in accordance with its terms; the Borrower and the Guarantors are not entitled to take any action that would be contrary to the terms of the ISA; and the Borrower and the Guarantors admit, stipulate and agree that all Intercompany Indebtedness (as defined in the ISA) is subordinate and subject in right of payment to the prior Payment in Full (as defined in the ISA) of all Prepetition Debt pursuant to the provisions of the ISA; and

(h)        all cash, securities or other property of the Debtors (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Debtors in any account or accounts with any depository institution (collectively, the "**Depository Institutions**") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Existing Loan Agreements and applicable law, for the benefit of the Prepetition

Secured Parties, except for (i) certain cash as of the Petition Date in an amount that does not

exceed $25 million and deposited in the Debtors' account at Huntington Bank (account ending in

-7233); (ii) certain cash as of the Petition Date in an aggregate amount that does not exceed $1

million and deposited in the Debtors' various local bank accounts; (iii) cash as of the Petition

Date that is owned by any foreign subsidiary of the Borrower that is not a Debtor in these Cases,

which cash has been deposited in an account with a depository institution organized under the

laws of a jurisdiction other than the United States and which amount of cash, in the aggregate,

does not exceed $13 million; and (iv) cash held by Borrower in trust representing proceeds of

accounts receivable sold into the Permitted Receivables Financing (as defined in the DIP Credit

Agreement).  All proceeds of the Prepetition Collateral (including cash on deposit at the

Depository Institutions as of the Petition Date, securities or other property, in each case that

constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within

the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

     5.    *Findings Regarding the DIP Financing*.

     (a)    Sufficient cause has been shown for the entry of this Final Order.

     (b)    The Debtors have a need to obtain the DIP Financing and continue to use

the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the

orderly continuation of the operation of their businesses, to maintain business relationships with

vendors, suppliers and customers, to make payroll, to make capital expenditures, to fulfill

bonding or other regulatory requirements, to pay the Prepetition Lender Adequate Protection

Obligations (as defined below) and to satisfy other working capital and operational needs.  The

access of the Debtors to sufficient working capital and liquidity through the use of Cash

Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP

Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the DIP Agent and the DIP Lenders, subject to the Fees Carve-Out and the Bonding Carve-Out, the DIP Liens and the Superpriority Claims (as defined below) and the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this Final Order and in the DIP Documents.

(d)     The terms of the DIP Financing and the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to the Interim Order and this Final Order and the DIP Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Prepetition Secured Parties have consented or are deemed under the ICA to have consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Documents in accordance with and subject to the terms and conditions in the Interim Order, this Final Order and the DIP Documents.

(f)     The DIP Financing and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Debtors, the

DIP Agent, the DIP Lenders and Prepetition Lenders holding in the aggregate more than fifty percent of the aggregate principal amount of the Loans (as defined in the Prepetition Credit Agreement), and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all DIP Loans made to and guarantees issued by the Debtors pursuant to the DIP Documents); and (ii) any "**Obligations**" (as defined in the DIP Credit Agreement), in each case owing to the DIP Agent or any DIP Lender (all of the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)     The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with the Interim Order, this Final Order and the DIP Documents are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

6.     *Authorization of the DIP Financing and the DIP Documents*.

(a)     The Debtors are hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The Borrower is authorized to borrow money pursuant to the DIP Credit Agreement, and the Guarantors are authorized to guaranty the Borrower's obligations with respect to such borrowings, up to an aggregate principal or face amount of

$275,000,000, in accordance with the terms of this Final Order and the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Debtors, to provide bonding capacity to the Debtors, to pay interest, fees and expenses in accordance with the Interim Order, this Final Order and the DIP Documents and to make all adequate protection payments authorized hereunder.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree (it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the commitments or the rate of interest payable thereunder) (it being understood that any discretionary action by the DIP Agent hereunder may be conditioned upon receipt of appropriate consent or approval of the requisite DIP Lenders pursuant to the DIP Documents); *provided*, that copies of any amendments, waivers, consents or other modifications

to or under the DIP Documents shall be provided by the Debtors to counsel to the Prepetition

Agent and counsel to the Creditors' Committee;

(iii)    the non-refundable payment to the DIP Agent or the DIP Lenders,

as the case may be, of the fees and any amounts due (or that may become due) in respect of the

indemnification obligations referred to in the DIP Credit Agreement (and in any separate letter

agreements between them in connection with the DIP Financing) and the costs and expenses as

may be due from time to time, including, without limitation, fees and expenses of the

professionals retained by any of them, in each case, as provided for in the DIP Documents,

without the need to file retention motions or fee applications or to provide notice to any party;

and

(iv)    the performance of all other acts required under or in connection

with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents

shall constitute valid, binding and unavoidable obligations of the Debtors, enforceable against

each Debtor party thereto in accordance with the terms of the DIP Documents, the Interim Order

and this Final Order.  No obligation, payment, transfer or grant of security under the DIP

Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable or

recoverable under the Bankruptcy Code or under any applicable law (including, without

limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code), or subject to any defense,

reduction, setoff, recoupment, claim or counterclaim.

7.    *Superpriority Claims*.

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed superpriority administrative expense claims against each of

the Debtors (without the need to file any proof of claim) with priority over any and all claims against each of the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions (as defined below) but including Avoidance Proceeds), subject only to the Fees Carve-Out and the Bonding Carve-Out and *pari passu* with any superpriority claim owed by any Debtor in connection with a Permitted Receivables Financing (the "**Permitted Financing Superpriority Claims**").  The Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b)    For purposes hereof, the "**Fees Carve-Out**" is an amount equal to the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, whether arising prior to or after the delivery of a Fees Carve-Out Trigger Notice; (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000; (iii) and to the extent allowed by the Court at any time, whether by interim order, procedural order or otherwise,

and whether before or after delivery of a Fees Carve-Out Trigger Notice, (A) all unpaid fees, costs, disbursements and expenses of professionals retained by the Debtors or the Creditors' Committee (but excluding fees and expenses of any professionals employed individually by members of the Creditors' Committee and any restructuring fee, sale fee or other success fee of any investment banker or financial advisor of the Debtors or the Creditors' Committee) pursuant to sections 327, 328 and 1103 of the Bankruptcy Code, respectively (collectively, the "**Professional Fees**") incurred at any time on or prior to the first Business Day (as defined in the DIP Credit Agreement) following a properly delivered Fees Carve-Out Trigger Notice, <u>plus</u> (B) Professional Fees incurred after the first Business Day following a properly delivered Fees Carve-Out Trigger Notice in an amount not to exceed $10,000,000 (the "**Fees Carve-Out Cap**"), in each case subject to the limits imposed by this Final Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition Secured Party.

(c)    "**Fees Carve-Out Trigger Notice**" shall mean a written notice delivered by the DIP Agent on behalf of the DIP Lenders and, if the DIP Loan have been indefeasibly paid in full in cash and the Commitments terminated, the Prepetition Agent, on behalf of the Prepetition Lenders, to counsel to the Debtors, the U.S. Trustee and counsel to the Creditors' Committee following the occurrence and continuation of an Event of Default (as defined in the DIP Credit Agreement), or, with respect to the Prepetition Agent, the termination of the Debtors' use of Cash Collateral, describing the Event of Default that is alleged to have occurred and be continuing, or, with respect to the Prepetition Agent, describing the reason for terminating the Debtors' use of Cash Collateral and expressly stating that the Fees Carve-Out Cap has been invoked.

(d)        Immediately upon delivery of a Fees Carve-Out Trigger Notice, and prior to the payment to any Prepetition Secured Party on account of any adequate protection or otherwise, the Debtors shall be required to deposit, in a segregated account not subject to the control of the DIP Agent or the Prepetition Agent, as applicable (the "**Fees Carve-Out Account**"), an amount equal to the Fees Carve-Out Cap.  The funds on deposit in the Fees Carve-Out Account shall be available only to satisfy obligations benefitting from the Fees Carve-Out, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders (i) shall not sweep or foreclose on cash of the Debtors necessary to fund the Fees Carve-Out Account and (ii) shall have a security interest in the order of priority set forth herein in any residual interest in the Fees Carve-Out Account available following satisfaction in cash in full of all obligations benefitting from the Fees Carve-Out.

(e)        For purposes hereof, the "**Bonding Carve-Out**" is a carve-out from the Collateral entitling certain governmental authorities that are or would be beneficiaries of surety bonds, letters of credit or other financial assurances (each, a "**Bonding Beneficiary**") that make any demand, request or requirement for any surety bond, letter of credit or other financial assurance pursuant to applicable law, in each case, to the extent such requested surety bond, letter of credit or other financial assurance is to satisfy or replace an amount for which a Debtor is self-bonded (a "**Bonding Request**") to receive a claim (a "**Bonding Superpriority Claim**") having priority over any or all administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code (including, without limitation, the Fees Carve-Out) to satisfy such Bonding Request.  The aggregate face amount of all Bonding Superpriority Claims shall not exceed $75 million or such greater amount as agreed in writing by the Required Lenders (as defined in the DIP Credit Agreement).  Nothing in the Interim Order, this Final Order or the DIP Documents

prejudices the rights of any party to object to the approval of any agreement pursuant to which the Debtors propose to grant a Bonding Superpriority Claim to a governmental authority on any applicable grounds.

(f)    Notwithstanding anything to the contrary herein or in the DIP Documents, each of the Fees Carve-Out and the Bonding Carve-Out shall be senior to all liens and claims securing the DIP Documents, any Adequate Protection Liens, the Adequate Protection Claims (as defined below) and any and all other liens or claims securing the DIP Obligations.

8.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent of, or over, any Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"), subject only to the payment of the Fees Carve-Out and the Bonding Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to the Interim Order, this Final Order and the DIP Documents, the "**DIP Liens**"):

(a)    First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively, "**Unencumbered Property**"), including, without limitation, any and all unencumbered cash of

the Debtors (whether maintained with the DIP Agent or otherwise) and any investment of such

cash, inventory, accounts receivable (solely to the extent not sold into the Permitted Receivables

Financing), other rights to payment whether arising before or after the Petition Date, contracts,

properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments,

securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents,

copyrights, trademarks, trade names, rights under license agreements and other intellectual

property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and

profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all

the foregoing, in each case other than: (i) the Excluded Property (as defined in the DIP Credit

Agreement), but including any proceeds of Excluded Property; (ii) the Debtors' claims and

causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code,

or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"),

but including any proceeds or property recovered, unencumbered or otherwise from successful

Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**"); (iii)

Receivables and Related Rights (each as defined in the documents governing the Permitted

Receivables Financing) and (iv) the Debtors' interests in that certain Colocation License

Agreement by and between Digital Printers Square, LLC and Arch Coal, Inc., dated June 12,

2014; *provided*, *however*, that Unencumbered Property shall include any proceeds of the

potential disposition thereof.

        (b)      <u>Liens Priming Prepetition Secured Parties' Liens</u>.  Pursuant to section

364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first

priority senior priming security interest in and lien upon all Prepetition Collateral (including,

without limitation, Cash Collateral).  Subject to subparagraph (c) below, the DIP Liens on the

Prepetition Collateral shall be senior in all respects to the interests in such property of the

Prepetition Secured Parties arising from current and future liens of the Prepetition Secured

Parties (including, without limitation, the Adequate Protection Liens);

(c)      Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in

and lien upon all pre- and postpetition property of the Borrower and the Guarantors (including,

without limitation, cash collateral, inventory, accounts receivable (solely to the extent not sold

into the Permitted Receivables Financing), other rights to payment whether arising before or

after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents,

instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names,

other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing),

that is subject to valid, perfected and unavoidable liens permitted under the Existing Loan

Agreements to the extent such permitted liens are senior or pari passu with the Prepetition

Lender Liens and were in existence immediately prior to the Petition Date, or to any valid and

unavoidable liens in existence immediately prior to the Petition Date that are perfected

subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each

case other than the security interests and liens securing the Prepetition Debt, which security

interests and liens in favor of the DIP Agent are immediately junior only to such valid, perfected

and unavoidable permitted liens; and

(d)      Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate

Protection Liens shall not be (i) subject or subordinate to or made pari passu with (A) any lien or

security interest that is avoided and preserved for the benefit of the Debtors and their estates

under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP

Documents, any liens or security interests arising after the Petition Date, including, without

limitation, any liens or security interests granted in favor of any federal, state, municipal or other

governmental unit (including any regulatory body), commission, board or court for any liability

of the Debtors or (C) any intercompany or affiliate liens or security interests of the Debtors; or

(ii) subordinated to or made pari passu with any other lien or security interest under section 363

or 364 of the Bankruptcy Code or otherwise, except as permitted pursuant to the DIP Credit

Agreement.

        9.      Protection of DIP Lenders' Rights.

        (a)      So long as there are any borrowings or other amounts outstanding (other

than contingent indemnification obligations as to which no claim has been asserted) or the DIP

Lenders have any Commitments (as defined in the DIP Credit Agreement) under the DIP Credit

Agreement, the Prepetition Secured Parties shall:  (i) have no right to and shall take no action to

foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Existing

Agreements, the Interim Order or this Final Order, or otherwise seek to exercise or enforce any

rights or remedies against any Collateral, including in connection with the Adequate Protection

Liens, except to the extent authorized by an order of this Court;  (ii) be deemed to have

consented to any transfer, disposition or sale of, or release of liens on, Collateral, to the extent

such transfer, disposition, sale or release is authorized under the DIP Documents;  (iii) not file

any further financing statements, trademark filings, copyright filings, mortgages, notices of lien

or similar instruments, or otherwise take any action to perfect their security interests in the

Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing

statements or other documents to perfect the liens granted pursuant to the Interim Order, this

Final Order, or as may be required by applicable state law to continue the perfection of valid and

unavoidable liens or security interests as of the Petition Date; *provided*, that the Prepetition

Collateral Agent shall be permitted to file the applicable assignment documents in respect of the

existing Prepetition Loan Document financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments in connection with the succession by

Wilmington Trust of PNC as Prepetition Collateral Agent and the automatic stay provisions of

section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit

the foregoing, and PNC's resignation as Prepetition Collateral Agent and Prepetition Control

Agent under the Existing Loan Agreements shall in no way cause, create, or result in a lapse in

perfection of the Prepetition Lender Liens; and (iv) deliver or cause to be delivered, at the

Debtors' cost and expense, any termination statements, releases and/or assignments in favor of

the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence

the release, termination and/or assignment of liens on any portion of the Collateral subject to any

sale or disposition.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are

vacated and modified to the extent necessary to permit the DIP Agent, acting at the direction of

the requisite DIP Lenders, and the DIP Lenders to enforce all of their rights under the DIP

Documents (including any cash dominion as provided for in the DIP Documents) and to

exercise, upon the occurrence of an Event of Default and the giving of five Business Days' prior

written notice (which shall run concurrently with any notice required to be provided under the

DIP Documents) via email to the Debtors and counsel to the Debtors (and, upon receipt, the

Debtors shall promptly provide a copy of such notice to counsel to the Creditors' Committee,

counsel to the Prepetition Agent, counsel to the Prepetition Notes Trustee and the U.S. Trustee),

all rights and remedies against the Collateral provided for in the DIP Documents.  In any hearing

regarding any exercise of rights or remedies under the DIP Documents, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Prepetition Secured Parties hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Final Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(c)     No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Final Order or the DIP Documents shall be limited, modified or impaired in any way by:  (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

(d)     Neither the DIP Agent nor the DIP Lenders (each in their capacities as such) shall be subject to any obligations under the Intercreditor Agreements, and neither the DIP Credit Agreement nor the DIP Obligations shall be subject to the terms of the Intercreditor Agreements.

10.     *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Fees Carve-Out and the Bonding Carve-Out, no costs or expenses of administration of the Cases

or any future proceeding that may result therefrom, including liquidation in bankruptcy or other

proceedings under the Bankruptcy Code, shall be charged against or recovered from the

Collateral or the Prepetition Collateral (including Cash Collateral) pursuant to section 506(c) of

the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP

Agent or the Prepetition Agent, as the case may be and in each case acting at the written

direction of the requisite percentage of DIP Lenders or Prepetition Lenders, as applicable, and no

such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent,

the DIP Lenders or the Prepetition Secured Parties, and nothing contained in this Final Order

shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured

Parties to any charge, lien, assessment or claim against the Collateral or the Prepetition Collateral

under section 506(c) of the Bankruptcy Code or otherwise.

11.     *Payments Free and Clear.*  Any and all payments or proceeds remitted (a) to the

DIP Agent on behalf of itself and the DIP Lenders or (b) without prejudice to the right of any

other party (but subject to the limitations thereon described in paragraphs 19 and 20 below), to

the Prepetition Agent on behalf of itself and the Prepetition Lenders, in each case, pursuant to the

provisions of the Interim Order, this Final Order or any subsequent order of this Court shall be

received free and clear of any claim, charge, assessment or other liability, including, without

limitation, any such claim or charge arising out of or based on, directly or indirectly, sections

506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the

Bankruptcy Code.

12.     *Use of Cash Collateral*.  The Debtors are hereby authorized, subject to the terms

and conditions of the Interim Order and this Final Order, to use all Cash Collateral and the

Prepetition Secured Parties are directed promptly to turn over to the Debtors all Cash Collateral

received or held by them; *provided* that (a) the Prepetition Secured Parties are granted the

adequate protection as hereinafter set forth and (b) except on the terms and conditions of the

Interim Order and this Final Order, the Debtors shall be enjoined and prohibited from at any

times using the Cash Collateral absent further order of the Court.

13.    *Adequate Protection of Prepetition Lenders*.  The Prepetition Agent and the

Prepetition Lenders are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the

Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including

the Cash Collateral, in an amount equal to the aggregate diminution in the value of the

Prepetition Agent's and the Prepetition Lenders' interest in the Prepetition Collateral (including

Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the

Bankruptcy Code, including, without limitation, any such diminution resulting from the

depreciation, sale, lease or use by the Debtors (or other decline in value) of the Prepetition

Collateral, the priming of the Prepetition Agent's security interests and liens in the Prepetition

Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Final

Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code

(the "**Prepetition Lender Adequate Protection Claim**").  In consideration of the Prepetition

Lender Adequate Protection Claim, the Prepetition Agent and the Prepetition Lenders are hereby

granted the following (collectively, the "**Prepetition Lender Adequate Protection**

**Obligations**"):

(a)    <u>Adequate Protection Liens</u>.  The Prepetition Agent (for itself and for the

benefit of the Prepetition Lenders) is hereby granted (effective and perfected upon the date of the

Interim Order and without the necessity of the execution of any mortgages, security agreements,

pledge agreements, financing statements or other agreements), to secure the amount of the

Prepetition Lender Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the Collateral including, without limitation, the Avoidance Proceeds, subject and subordinate only to  (i) the DIP Liens and any liens to which the DIP Liens are junior, (ii) the Fees Carve-Out and  (iii) the Bonding Carve-Out, and excluding the Receivables and Related Rights (the "**Prepetition Lender Adequate Protection Liens**");

(b)      Section 507(b) Claim.  The Prepetition Agent and the Prepetition Lenders are hereby granted, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition Lender Adequate Protection Claim with, except as set forth in the Interim Order or in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition Lender 507(b) Claim**"); which Prepetition Lender 507(b) Claim shall have recourse to and be payable from all of the Collateral including, without limitation, the Avoidance Proceeds.  The Prepetition Lender 507(b) Claim shall be subject and subordinate only to (i) the Fees Carve-Out, (ii) the Bonding Carve-Out; (iii) the Superiority Claims granted in respect of the DIP Obligations; and (iv) the Permitted Financing Superpriority Claims.  Except to the extent expressly set forth in the Interim Order, this Final Order or the DIP Credit Agreement, the Prepetition Agent and the Prepetition Lenders shall not receive or retain any payments, property or other amounts in respect of the Prepetition Lender 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claim having a priority superior to or pari passu with the Superpriority Claims have indefeasibly been paid in cash in full and the Commitments have been terminated;

(c)      <u>Cash Payments, Fees and Expenses of Prepetition Agent</u>.  The Prepetition

Agent shall receive from the Debtors for the benefit of itself and the Prepetition Lenders, as

applicable:  (i)  to the extent not paid pursuant to the terms of the Interim Order, within one

Business Day following entry of this Final Order, immediate cash payment of all accrued and

unpaid interest (at the non-default contract rate) on the Prepetition Debt that is due and owing

under the Prepetition Credit Agreement as of the Petition Date and all other accrued and unpaid

fees and disbursements owing to the Prepetition Agent and the Prepetition Lenders and, in each

case, chargeable and reimbursable under the Existing Loan Agreements as of the Petition Date;

(ii) current cash payments of all reasonable fees and expenses payable to the Prepetition

Administrative Agent and the Prepetition Collateral Agent under the Existing Loan Agreements,

including, but not limited to, the reasonable and documented fees and disbursements of one lead

counsel and one local counsel to the Prepetition Agent(s), which payments shall be made in the

manner provided for in paragraph 13(e) below; and (iii) cash payments in an amount equal to the

amount of interest on the Prepetition Debt at the non-default contract rate applicable on the

Petition Date (including LIBOR pricing options, which shall remain available until such time as

the LIBOR Rate Loans (as defined in the Prepetition Credit Agreement) expire, at which such

time such loans will accrue interest at the Base Rate provided for under the Prepetition Credit

Agreement) under the Prepetition Credit Agreement in accordance with the terms thereof on the

dates provided for such interest payments under the Prepetition Credit Agreement; *provided*, that

the Prepetition Agent and the Prepetition Lenders shall reserve the right to assert claims for the

payment of additional interest calculated at any other applicable rate of interest (including,

without limitation, default rates), or on any other basis, provided for in the Prepetition Credit

Agreement and to the extent permitted by the Bankruptcy Code, and the Debtors shall reserve all

rights to object thereto; and *provided further* that the payments made under this subparagraph

13(c)(iii) shall be without prejudice to the right of any party as to whether such payments

constitute postpetition interest allowable under section 506(b) of the Bankruptcy Code or are in

respect of principal.

        (d)     <u>Fees and Expenses of Ad Hoc Committee of Prepetition Lenders</u>.  The ad

hoc committee of Prepetition Lenders constituting the Required Lenders (as defined in the

Prepetition Credit Agreement) shall receive current cash payments of the actual, reasonable and

documented fees and disbursements (whether incurred prepetition or postpetition) of Kaye

Scholer LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP, one local counsel, one

financial advisor and one operations or similar consultant (should the ad hoc committee of

Prepetition Lenders and the DIP Lenders decide to engage one), each of which payments shall be

made in the manner provided for in paragraph 13(e) below;

        (e)     <u>Payment of Fees and Expenses</u>.  The payment of the fees, expenses and

disbursements set forth in paragraphs 13(c) and 13(d) of this Final Order shall be made within

ten days (which time period may be extended by the applicable professional) after the receipt by

counsel the Debtors, counsel to the Creditors' Committee and the U.S. Trustee (the "**Review**

**Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal

fee applications, including such amounts arising before or after the Petition Date.  The invoices

for such Invoiced Fees shall include the number of hours billed and a reasonably detailed

description of services provided and the expenses incurred by the applicable professional;

*provided*, *however*, that any such invoice:  (i) may be redacted to protect privileged, confidential

or proprietary information; and (ii) shall not be required to contain individual time detail.  The

Debtors, the Creditors' Committee and the U.S. Trustee may object to any portion of the

Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court

a motion or other pleading, on at least ten days' prior written notice to the Prepetition Agent and

the Prepetition Lenders of any hearing on such motion or other pleading, setting forth the

specific objections to the Disputed Invoiced Fees; *provided*, *however*, that Invoiced Fees

(including the amount of any Disputed Invoiced Fees) shall be paid within the time frame set

forth above and shall not be delayed based on any objections thereto; *provided*, *further*, *however*,

that the applicable parties shall endeavor to consensually resolve any such dispute in good faith

prior to the filing of any such motion or pleading.

        (f)        <u>Adequate Protection Milestones and Financial Covenants</u>.  The Prepetition

Agent, on behalf of itself and the Prepetition Lenders, is hereby entitled to performance of those

certain case milestones set forth in section 8.01(p) of the DIP Credit Agreement and those certain

financial covenants set forth in sections 8.02(h) and 8.02(s) of the DIP Credit Agreement (in

each case, as may be waived, amended, modified or extended from time to time by the Required

Lenders (as defined in the DIP Credit Agreement)), and the updated business plan required to be

delivered pursuant to section 8.01(p)(iii) of the DIP Credit Agreement shall be reasonably

acceptable to the Required Lenders (as defined in the Prepetition Credit Agreement); *provided*

that such business plan shall be deemed acceptable unless the Required Lenders notify the

Debtors in writing (with a copy to counsel to the Creditors' Committee) that such business plan

is not acceptable within ten Business Days of receipt of the business plan; *provided further* that

nothing in this Final Order shall prejudice the applicable Prepetition Lenders' rights pursuant to

the Restructuring Support Agreement (as defined in the DIP Credit Agreement) to terminate the

Restructuring Support Agreement in accordance with the provisions thereof (the "**Adequate**

**Protection Milestones and Covenants**");

(g)     Reporting.  The Debtors shall promptly provide the Prepetition Agent with all required written financial reporting and other periodic reporting that is provided to the DIP Agent or the DIP Lenders; and

(h)     The Adequate Protection Milestones and Covenants and reporting obligations in subparagraphs (f) and (g) above shall survive any termination of the DIP Credit Agreement or the Commitments thereunder.  Following any such termination of the DIP Credit Agreement or the Commitments thereunder, the Adequate Protection Milestones and Covenants may be enforced, waived, amended, modified or extended from time to time by the Required Lenders (as defined in the Prepetition Credit Agreement).

14.     *Adequate Protection of Prepetition Noteholders*.  Without any acknowledgment or finding that Prepetition Notes Trustee or the Prepetition Noteholders have an interest in the Prepetition Collateral as of the Petition Date, the Prepetition Notes Trustee and the Prepetition Noteholders are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Notes Trustee's and the Prepetition Noteholders' interests in the Prepetition Collateral from and after the Petition Date, if any, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Notes Trustee's and the Prepetition Noteholders' security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents, the Interim Order and this Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Noteholder Adequate Protection Claim**" and, together with the Prepetition Lender Adequate Protection Claim, the "**Adequate Protection Claims**").  As

adequate protection of the Noteholder Adequate Protection Claim, the Prepetition Notes Trustee and the Prepetition Noteholders are hereby granted the following (collectively, the "**Noteholder Adequate Protection Obligations**" and, together with the Prepetition Lender Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

       (a)      <u>Noteholder Adequate Protection Liens</u>.  The Prepetition Notes Trustee (for itself and for the benefit of the Prepetition Noteholders) is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of such diminution, a replacement security interest in and lien upon all of the Collateral, subject and subordinate to:  (i) the DIP Liens and any liens to which the DIP Liens are junior;  (ii) the Prepetition Lender Adequate Protection Liens; (iii) the Fees Carve-Out; (iv) the Bonding Carve-Out; and (v) the Prepetition Lender Liens, and excluding the Receivables and Related Rights (the "**Noteholder Adequate Protection Liens**" and, together with the Prepetition Lender Adequate Protection Liens, the "**Adequate Protection Liens**"); and

       (b)      <u>Noteholder Section 507(b) Claim</u>.  The Prepetition Notes Trustee and the Prepetition Noteholders are hereby granted, subject and subordinate to the Fees Carve-Out, the Bonding-Carve Out, the Superpriority Claims, the Permitted Financing Superpriority Claims and the Prepetition Lender 507(b) Claims, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (the "**Noteholder 507(b) Claim**" and, together with the Prepetition Lender 507(b) Claim, the "**507(b) Claims**"); *provided* that:  (i) notwithstanding section 1129(a)(9)(A) of the Bankruptcy Code, a plan of reorganization in any of the Cases may provide for the satisfaction of any Noteholder 507(b) Claim in any form having a value on the effective date of such plan of reorganization equal to the allowed amount of such Noteholder 507(b) Claim; and

(ii) unless otherwise expressly agreed to in writing by the DIP Agent and the Prepetition Agent, the Prepetition Notes Trustee and the Prepetition Noteholders shall not receive or retain any payments, property or other amounts in respect of the Noteholder 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and all claims having a priority superior to the Noteholder 507(b) Claim have indefeasibly been paid in full in cash and the Commitments have been terminated.

15.     *Adequate Protection is Reasonable and Sufficient.*  Under the circumstances, and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant to the Interim Order and this Final Order is without prejudice to the right of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection and all other parties' rights to contest such request (subject to the Intercreditor Agreements as applicable); *provided* that any such additional or modified adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and the DIP Lenders granted under the Interim Order, this Final Order and the DIP Documents and, with respect to any additional or modified adequate protection to the Prepetition Noteholder Parties, such adequate protection shall at all times be subordinate and junior to the Prepetition Lender Adequate Protection Obligations, the Prepetition Lender Liens and the Permitted Financing Superpriority Claims.

16.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)        Subject to the provisions of paragraph 9(a) above, the DIP Agent, the DIP

Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or

record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full

power of substitution, to the maximum extent permitted by law) financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or

take possession of or control over cash or securities, or take any other action in order to validate

the DIP Liens and Adequate Protection Liens granted to them hereunder.  Whether or not the

DIP Agent, on behalf of the DIP Lenders, the Prepetition Agent, on behalf of the Prepetition

Lenders, or the Prepetition Notes Trustee, on behalf of the Prepetition Noteholders, shall, in their

sole discretion, choose to file such financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments, or take possession of or control over any cash

or securities, or otherwise confirm perfection of the liens and security interests granted to them

hereunder, such liens and security interests shall be deemed valid, perfected, allowed,

enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and

on the date of entry of the Interim Order.  Upon the request of the DIP Agent, each of the

Prepetition Secured Parties and the Debtors, without any further consent of any party, is

authorized and directed to take, execute, deliver and file such instruments (in each case, without

representation or warranty of any kind) to enable the DIP Agent to further validate, perfect,

preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded

and filed as of the Petition Date.

(b)        A certified copy of this Final Order may, in the discretion of the DIP

Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing offices are

hereby authorized and directed to accept such certified copy of this Final Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)    Notwithstanding anything to the contrary in the Motion, the DIP Documents, the Interim Order, or this Final Order, in no event shall the Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract or agreement or other property right to which any Debtor is a party, or any of such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (x) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of any Debtor therein or (y) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts or agreements or other property rights are collectively referred to as the "**Specified Contracts**"); *provided* that the DIP Liens, Adequate Protection Liens, Superpriority Claims and 507(b) Claims shall in all events attach to and have recourse from all proceeds, products, offspring or profits from any and all Specified Contracts (including from the sale, transfer, disposition or monetization thereof).

17.    *Real Property Leases.*  As a requirement and condition to the DIP Lenders' willingness to lend and in furtherance of the Superpriority Claims and pursuant to the DIP Documents, under which the DIP Obligations are payable from and have recourse to all of the Debtors' prepetition and postpetition property including, among other things, all of the Debtors'

Real Property Leases (as defined in the DIP Credit Agreement), the DIP Lenders shall have the

following protections with respect to the Debtors' Real Property Leases, regardless of whether

any particular Real Property Lease or group of Real Property Leases constitutes Collateral,

which protections shall be enforced by the DIP Agent as authorized, approved and granted

pursuant to the provisions of the Interim Order, this Final Order and in accordance with the terms

of the DIP Credit Agreement:

(a)      <u>Remedies Upon an Event of Default</u>.  If an Event of Default shall have

occurred and be continuing, the DIP Agent (acting at the direction of the requisite DIP Lenders)

shall, with respect to any Real Property Lease or group of Real Property Leases to which any of

the Debtors are party, and without limitation of any rights and remedies of the DIP Agent under

the DIP Credit Agreement or otherwise, be permitted, and is hereby authorized, approved and

granted the right:

(i)      to exercise the Debtors' rights pursuant to section 365(f) of the

Bankruptcy Code with respect to any such Real Property Lease(s) and, subject to this Court's

approval after notice and hearing, assign any such Real Property Lease(s) in accordance with

section 365 of the Bankruptcy Code notwithstanding any language to the contrary in any of the

applicable lease documents or executory contracts;

(ii)      to require any Debtor to complete promptly, pursuant to section

363 of the Bankruptcy Code, subject to the rights of the DIP Lenders to credit bid, an Asset

Disposition (as defined in the DIP Credit Agreement) of any such Real Property Lease(s) in one

or more parcels at public or private sales, at any of the DIP Agent's offices or elsewhere, for

cash, at such time or times and at such price or prices and upon such other terms as the DIP

Agent (acting at the direction of the requisite DIP Lenders) may deem commercially reasonable;

(iii)        access to the leasehold interests of the Debtors in any such Real Property Lease(s) for the purpose of marketing such property or properties for sale;

(iv)        (A) find an acceptable (in the DIP Agent's good faith and reasonable discretion) replacement lessee, which may include the DIP Agent or any of its affiliates or designee (except that in no event shall any Real Property Lease be assigned to the DIP Agent without the express written consent of the DIP Agent in its sole discretion), to whom such Real Property Lease(s) may be assigned, (B) hold, and manage all aspects of, an auction or other bidding process to find such acceptable replacement lessee, (C) in connection with any such auction, agree, on behalf of the Loan Parties (as defined in the DIP Credit Agreement), to reimburse reasonable fees and expenses of any stalking horse bidder, if necessary, and (D) notify the Debtors of the selection of any replacement lessee pursuant to this paragraph, upon receipt of which the Debtors shall promptly (1) file a motion seeking, on an expedited basis, approval of the Debtors' assumption and assignment of such Real Property Lease(s) to such proposed assignee and (2) cure any defaults, if any, that have occurred and are continuing under such Real Property Lease(s) to the extent required by the Court (subject to the DIP Lenders' right to cure defaults as set forth in paragraph 17(e) of this Final Order); or

(v)        direct the Debtors to (A) assign any such Real Property Lease(s) to the DIP Agent or its designee (except that in no event shall any Real Property Lease be assigned to the DIP Agent without the express written consent of the DIP Agent in its sole discretion) and DIP Lenders as Collateral securing the DIP Obligations, subject to clause (B) , if applicable, (B) seek this Court's approval of the assumption of any such Real Property Lease(s) to the extent required under the Bankruptcy Code to assign such lease or leases as Collateral and (C) promptly cure any default that has occurred and is continuing under such Real Property Lease(s) to the

extent required by the Court; *provided* that any assignment of any such Real Property Lease(s) as Collateral securing the DIP Obligations shall not impair the Debtors' ability to subsequently assume (if not already assumed) and assign such Real Property Lease(s) pursuant to section 365 of the Bankruptcy Code or to enjoy the protections of section 365(f) of the Bankruptcy Code with respect to any such assignment; *provided further* that the foregoing clauses (i) through (v) shall not apply to Real Property Leases that are rejected by final order of this Court as of or prior to the effective date of an Acceptable Reorganization Plan (as defined in the DIP Credit Agreement).

(b)    <u>Right to Credit Bid</u>.  Prior to any sale or assignment of any Real Property Lease or group of Real Property Leases, the Debtors shall first provide at least fifteen Business Days' prior written notice to the DIP Agent (unless such notice provision is waived by the DIP Agent) of the Bankruptcy Court hearing on such sale or assignment.  During such notice period, the DIP Agent, on behalf of and acting at the direction of the requisite DIP Lenders, shall be permitted to credit bid forgiveness of some or all of the outstanding DIP Obligations (in an amount equal to at least the consideration offered by any other party in respect of such assignment) outstanding under the DIP Credit Agreement as consideration in exchange for any such Real Property Lease(s); *provided* that, to the extent the Borrower is entitled to retain a portion of the total consideration paid in respect of such assignment in accordance with the DIP Documents, the applicable portion of the consideration shall be paid in cash.  In addition, in connection with the exercise of any of the DIP Agent's rights pursuant to the DIP Documents, the Interim Order or this Final Order to direct or compel a sale or assignment of any Real Property Lease(s), the DIP Agent, on behalf of and acting at the direction of the requisite DIP Lenders, shall be permitted to credit bid forgiveness of some or all of the outstanding DIP

Obligations (in an amount equal to at least the consideration offered by any other party in respect

of such sale or assignment) as consideration in exchange for such Real Property Lease(s).

Pursuant to section 364(e) of the Bankruptcy Code, absent a stay pending appeal, the DIP

Lenders' right to credit bid shall not be affected by the reversal or modification on appeal of the

Debtors' authorization pursuant to the Interim Order or this Final Order to obtain credit and incur

debt as and in accordance with the terms set forth therein or herein.

(c)    Special Rights with Respect to Proposed Rejections of Real Property

Leases.  Unless all DIP Obligations (other than contingent indemnification obligations as to

which no claim has been asserted) shall have indefeasibly been satisfied in full in cash and the

Commitments have been terminated, the Debtors shall not seek, and it shall constitute an Event

of Default and terminate the right of the Debtors to use Cash Collateral if any of the Debtors

seeks, pursuant to section 365 of the Bankruptcy Code, to reject or otherwise terminate

(including, without limitation, as a result of the expiration of the assumption period provided for

in section 365(d)(4) of the Bankruptcy Code to the extent applicable, the last day of such period

(including as may have been extended in accordance with section 365(d)(4)) being the

"**Automatic Rejection Date**") (x) a Material Lease (as defined in the DIP Credit Agreement) or

(y) during the continuance of an Event of Default under the DIP Credit Agreement, a Real

Property Lease, in each case, without first providing thirty days' prior written notice to the DIP

Agent (unless such notice requirement is waived by the DIP Agent (acting at the direction of the

requisite DIP Lenders) during which time the DIP Agent shall be permitted to find an acceptable

(in the DIP Agent's good faith and reasonable discretion) replacement lessee (which may include

the DIP Agent or its affiliates) to whom such Real Property Lease may be assigned.  If a

prospective assignee is not found within such 30-day notice period, the Debtors may proceed to

reject such Real Property Lease.  If such a prospective assignee is timely found prior to the

occurrence of the Automatic Rejection Date, the Debtors shall:  (i) not seek to reject such Real

Property Lease;  (ii) promptly withdraw any previously filed rejection motion;  (iii) promptly file

a motion seeking expedited relief and a hearing on the earliest date available for purposes of

assuming such Real Property Lease and assigning it to such prospective assignee; and (iv) cure

any defaults that have occurred and are continuing under such Real Property Lease to the extent

required by the Court unless the Debtors and the DIP Agent agree that any such cure obligation

is overly burdensome on the cash position of the Debtors with such agreement not to be

unreasonably withheld; *provided* that this paragraph 17(c) shall not apply to Real Property

Leases that are rejected by final order of this Court on the effective date of an Acceptable

Reorganization Plan.  On or prior to the 30th day prior to the Automatic Rejection Date, the

Debtors shall deliver written notice to the DIP Agent of each outstanding Real Property Lease

that they intend to reject (including, without limitation, through automatic rejection on the

Automatic Rejection Date, to the extent applicable) from and after the date of such notice (or, if

applicable, notice that the Debtors will seek to extend any then-applicable Automatic Rejection

Date); *provided* that if the Debtors fail to deliver any such notice to the DIP Agent prior to such

date with respect to any such Real Property Lease (or a notice indicating that no such Real

Property Leases shall be rejected), the Debtors shall be deemed, for all purposes hereunder, to

have delivered notice to the DIP Agent as of such date that they intend to reject all outstanding

Real Property Leases; *provided, however,* that upon the indefeasible payment in full in cash of

all DIP Obligations (other than contingent indemnification obligations as to which no claim has

been asserted) and the termination of the Commitments, the Prepetition Agent shall then be

deemed to have the protections afforded the DIP Agent and the DIP Lenders under this

subparagraph 17(c) with respect to the Real Property Leases, which protections shall then be enforced by the Prepetition Agent, acting at the direction of the Required Lenders under the Prepetition Credit Agreement, as authorized, approved and granted pursuant to the provisions of the Interim Order and this Final Order and, at such time, all references to the DIP Agent and the DIP Lenders solely in this subparagraph 17(c) shall be deemed substituted in their entirety by reference to the Prepetition Agent or the Prepetition Lenders, as applicable; *provided* that the Prepetition Agent shall not have any of the foregoing protections with respect to any Real Property Lease that does not constitute Prepetition Collateral, as determined by a court of competent jurisdiction.

(d)     <u>Assumption Orders</u>.  Any order of this Court approving the assumption of any Real Property Lease shall specifically provide that the applicable Debtor shall be authorized to assign such Real Property Lease pursuant to, and to enjoy the protections of, section 365(f) of the Bankruptcy Code subsequent to the date of such assumption.

(e)     <u>DIP Lenders' Right to Cure Defaults</u>.  If any of the Debtors is required to cure any monetary defaults under any Real Property Lease pursuant to any order of this Court or otherwise in connection with any assumption or assumption and assignment of any such Real Property Lease pursuant to section 365(f) of the Bankruptcy Code, and such monetary default is not, within five Business Days of the receipt by such Debtor of notice from the DIP Agent pursuant to the applicable provision(s) of the DIP Credit Agreement or any other notice from the DIP Agent requesting the cure of such monetary default, cured in accordance with the provisions of such applicable court order as arranged by the DIP Agent, the DIP Agent, acting at the direction of the requisite DIP Lenders, and on behalf of the DIP Lenders, may cure any such monetary defaults on behalf of the applicable Debtor(s); *provided, however,* that upon the

indefeasible payment in full in cash of all DIP Obligations (other than contingent

indemnification obligations as to which no claim has been asserted) and the termination of the

Commitments, the Prepetition Agent shall then be deemed to have the protections afforded the

DIP Agent and the DIP Lenders under this subparagraph 17(e) with respect to the Real Property

Leases, which protections shall then be enforced by the Prepetition Agent, acting at the direction

of the Required Lenders under the Prepetition Credit Agreement, as authorized, approved and

granted pursuant to the provisions of the Interim Order and this Final Order and, at such time, all

references to the DIP Agent and the DIP Lenders solely in this subparagraph 17(e) shall be

deemed substituted in their entirety by reference to the Prepetition Agent or the Prepetition

Lenders, as applicable; *provided* that the Prepetition Agent shall not have any of the foregoing

protections with respect to any Real Property Lease that does not constitute Prepetition

Collateral, as determined by a court of competent jurisdiction.

18.     *Preservation of Rights Granted Under This Final Order.*

(a)     Other than the Fees Carve-Out and the Bonding Carve-Out, no claim or

lien having a priority superior to or pari passu with those granted by the Interim Order or this

Final Order to the DIP Agent and the DIP Lenders, the Prepetition Agent and the Prepetition

Lenders (except the DIP Liens, the Superpriority Claims and the Permitted Financing

Superpriority Claims) or the Prepetition Notes Trustee and the Prepetition Noteholders (except

the DIP Liens, the Superpriority Claims, the Permitted Financing Superpriority Claims, the

Prepetition Lender Adequate Protection Liens and the Prepetition Lender 507(b) Claim),

respectively, shall be granted or allowed while any of the DIP Obligations or the Adequate

Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens

shall not be:  (i) subject or junior to any lien or security interest that is avoided and preserved for

the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise. No lien or security interest shall be granted to any other party in any of the Specified Contracts without first granting such lien or security interest to the DIP Agent or the Prepetition Agent (solely with respect to the Prepetition Lender Adequate Protection Obligations), as applicable.

(b)     The Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtors to use Cash Collateral if any of the Debtors, without the prior written consent of the Required Lenders (as defined in the DIP Credit Agreement) and the Required Lenders (as defined in the Prepetition Credit Agreement) (with respect to the use of Cash Collateral), seeks, proposes or supports or if there is entered or confirmed (in each case, as applicable) or there occurs:  (i) any material modifications, amendments or extensions of the Interim Order or this Final Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party; (ii) an order converting or dismissing any of the Cases; (iii) an order appointing a chapter 11 trustee in the Cases; (iv) an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code; (v) approval of a plan of reorganization other than an Acceptable Reorganization Plan; or (vi) the sale of all or substantially all of the assets of the Debtors.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that:  (i) the Superpriority Claims, the 507(b) Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations (other than contingent

indemnification obligations as to which no claim has been asserted) and Prepetition Lender

Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such

Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall,

notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights

granted by this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security

interests referred to in this paragraph and otherwise in this Final Order.

            (c)      If any or all of the provisions of this Final Order are hereafter reversed,

modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect:  (i) the

validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations

incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as

applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the

validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.

Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral,

any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens

incurred by the Debtors to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as

the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition

Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be

governed in all respects by the original provisions of this Final Order, and the DIP Agent, the

DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and

the DIP Documents.

(d)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Prepetition Lender 507(b) Claims, the Prepetition Lender Adequate Protection Obligations, the Prepetition Lender Adequate Protection Liens, the Noteholder Adequate Protection Obligations and the Noteholder Adequate Protection Liens and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Prepetition Notes Trustee and the Prepetition Noteholders granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by:  (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission;  (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Claims.  The terms and provisions of the Interim Order, this Final Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Prepetition Notes Trustee and the Prepetition Noteholders granted by the provisions of the Interim Order and this Final Order (including, without limitation, with respect to the rights of the DIP Agent or the Prepetition Agent, as applicable, as to the Debtors' Real Property Leases as set forth in paragraph 17 of the Interim Order and this Final Order) and the DIP Documents

shall continue in full force and effect until the DIP Obligations (other than contingent

indemnification obligations as to which no claim has been asserted) and the Prepetition Lender

Adequate Protection Obligations are indefeasibly paid in full in cash, and the Commitments have

been terminated.

19.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions,

agreements and releases contained in this Final Order, including, without limitation, in

paragraph 4 of this Final Order, shall be binding upon the Debtors and any successor thereto

(including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or

elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors'

stipulations, admissions, agreements and releases contained in this Final Order, including,

without limitation, in paragraph 4 of this Final Order, shall be binding upon all other parties in

interest, including, without limitation, the Creditors' Committee and any other person or entity

acting on behalf of the Debtors' estates in all circumstances and for all purposes unless: (a) the

Creditors' Committee or another party in interest (subject in all respects to any agreement or

applicable law that may limit or affect such entity's right or ability to do so) has timely filed a

motion (with a draft complaint attached) (a "**Standing Motion**") seeking standing to prosecute

an adversary proceeding or contested matter (subject to the limitations contained herein,

including, *inter alia*, in paragraph 20) by no later than a date that is the later of (i) April 30, 2016,

(ii) any such later date as has been agreed to, in writing, by the Prepetition Agent, acting at the

direction of the Required Lenders (as defined in the Prepetition Credit Agreement), and (iii) any

such later date as has been ordered by the Court upon a motion filed and served within any

applicable period of time set forth in this paragraph (the "**Challenge Period**"), (A) objecting to

or challenging the amount, validity, perfection, enforceability, priority or extent of the

Prepetition Debt or the Prepetition Lender Liens on the Prepetition Collateral or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Claims and Defenses**") against the Prepetition Agent or any of the Prepetition Lenders or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Existing Loan Agreements, the Prepetition Debt, the Prepetition Lender Liens and the Prepetition Collateral; and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; *provided* that any challenge or claim shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no Standing Motion is timely filed or adversary proceeding or contested matter is timely commenced as of such dates or the Court does not rule in favor of the plaintiff in any such proceeding:  (a) the Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, those contained in paragraph 4 of this Final Order shall be binding on all parties in interest, including the Creditors' Committee; (b) the obligations of the Debtors under the Existing Loan Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Lender Liens shall be deemed to have been, as

of the Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not

subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition

Debt and the Prepetition Lender Liens shall not be subject to any other or further claim or

challenge by the Creditors' Committee or any other party in interest seeking to exercise the

rights of the Debtors' estates, including, without limitation, any successor thereto (including,

without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected

for any of the Debtors), and any defenses, claims, causes of action, counterclaims and offsets,

whether arising under the Bankruptcy Code or otherwise, by the Creditors' Committee or any

other party in interest seeking to exercise the rights of the Debtors' estates, including, without

limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter

11 trustee or examiner appointed or elected for any of the Debtors) against any of the Prepetition

Lender Parties and their Representatives arising out of or relating to the Existing Loan

Agreements shall be deemed forever waived, released and barred.  If any such Standing Motion

or such adversary proceeding or contested matter is timely filed or commenced, as applicable, as

of such dates, the stipulations, admissions, agreements and releases contained in this Final Order,

including, without limitation, those contained in paragraph 4 of this Final Order, shall

nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph)

on the Creditors' Committee and on any other person or entity, except to the extent that such

stipulations, admissions, agreements and releases were expressly challenged in such Standing

Motion or adversary proceeding or contested matter.  Nothing in this Final Order vests or confers

on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee,

standing or authority to pursue any claim or cause of action belonging to the Debtors or their

estates, including, without limitation, Claims and Defenses with respect to the Existing Loan

Agreements, the Prepetition Debt or the Prepetition Lender Liens.

20.    *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding

anything herein or in any other order by this Court to the contrary, no DIP Loans, Cash

Collateral, Collateral, Prepetition Collateral, proceeds of any of the foregoing, the Fees Carve-

Out or the Bonding Carve-Out may be used: (a) for professional fees and expenses incurred for

(i) any litigation or threatened litigation (whether by contested matter, adversary proceeding or

otherwise, including any investigation in connection with litigation or threatened litigation)

against any of the DIP Agent, the DIP Lenders, the Prepetition Agent or any other Prepetition

Lender Party or for the purpose of objecting to or challenging the amount, validity, perfection,

enforceability, extent or priority of any claim, lien or security interest held or asserted by the DIP

Agent, the DIP Lenders, the Prepetition Agent or any other Prepetition Lender Party or (ii)

asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP

Obligations, the Prepetition Debt (including, without limitation, for lender liability or pursuant to

section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-

bankruptcy law or otherwise), the DIP Liens or the Prepetition Lender Liens or against any of the

DIP Agent, the DIP Lenders, the Prepetition Agent or any other Prepetition Lender Party or their

respective Representatives; (b) to prevent, hinder or otherwise delay any of the DIP Agent's or

the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the

Collateral in accordance with the DIP Documents, the Existing Loan Agreements, the Interim

Order or this Final Order other than to seek a determination that an Event of Default has not

occurred or is not continuing; (c) to seek to modify any of the rights granted to the DIP Agent,

the DIP Lenders, the Prepetition Agent or any other Prepetition Lender Party under the Interim

Order or this Final Order or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents; *provided* that, notwithstanding anything to the contrary herein, no more than an aggregate of $250,000 of the DIP Loans under the DIP Credit Agreement, Collateral, Prepetition Collateral (including Cash Collateral) or the Fees Carve-Out may be used by the Creditors' Committee during the Challenge Period to investigate the claims and liens of the Prepetition Lender Parties.

21.    *Exculpation*.  Nothing in the Interim Order, this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors; *provided* that the foregoing shall not apply to any act or omission by the DIP Agent or any DIP Lender that constitutes gross

negligence or willful misconduct by the DIP Agent or such DIP Lender as applicable, as determined by final order of a court of competent jurisdiction.

22.    *No Waiver Under the Intercreditor Agreements*. Nothing herein shall be considered a waiver of any rights of any party under the Intercreditor Agreements.

23.    *Order Governs*.  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

24.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of the Interim Order and this Final Order, including all findings therein and herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders and the Prepetition Lender Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors).

25.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the DIP Documents, the DIP Agent, the DIP Lenders and the Prepetition Lender Parties shall not (i)

be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the

Debtors, their respective creditors, shareholders or estates; or (iii) be deemed to be acting as a

"Responsible Person" or "Owner" or "Operator" with respect to the operation or management of

the Debtors (as such terms or similar terms are used in the United States Comprehensive

Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as

amended, or any similar federal or state statute).

      26.    *Master Proof of Claim*.  In order to facilitate the processing of claims, to ease the

burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the

Prepetition Agent is authorized to file in the Debtors' lead chapter 11 case *In re Arch Coal, Inc.,*

*et al.,* (Case No. 16-40120) a single, master proof of claim on behalf of the Prepetition Lender

Parties on account of any and all of their respective claims arising under the Existing Loan

Agreements and hereunder (the "**Master Proof of Claim**") against each of the Debtors.  Upon

the filing of the Master Proof of Claim against each of the Debtors, the Prepetition Agent and

each Prepetition Lender Party, and each of their respective successors and assigns, shall be

deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect

of its claims against each of the Debtors of any type or nature whatsoever with respect to the

Existing Loan Agreements, and the claim of each Prepetition Lender Party (and each of its

respective successors and assigns), named in the Master Proof of Claim shall be treated as if such

entity had filed a separate proof of claim in each of these Cases.  The Prepetition Agent shall not

be required in the Master Proof of Claim to identify whether any Prepetition Lender Party

acquired its claim from another party and the identity of any such party or to amend the Master

Proof of Claim to reflect a change in the holders of the claims set forth therein or a reallocation

among such holders of the claims asserted therein resulting from the transfer of all or any portion

of such claims.  The provisions of this paragraph 26 and the Master Proof of Claim are intended

solely for the purpose of administrative convenience and shall not affect the right of each

Prepetition Lender Party (or their successors in interest) to vote separately on any plan proposed

in these Cases.  The Prepetition Agent shall not be required to file with the Master Proof of

Claim any instruments, agreements or other documents evidencing the obligations owing by each

of the Debtors to the Prepetition Lender Parties, which instruments, agreements or other

documents will be provided upon written request to counsel to the Prepetition Agent.

27.    *Insurance*.  To the extent the Prepetition Agent is listed as loss payee under the

Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee

under such insurance policies and shall act in that capacity and distribute any proceeds recovered

or received in respect of any such insurance policies, first, to the payment in full of the DIP

Obligations (other than contingent indemnification obligations as to which no claim has been

asserted), and second, to the payment of the Prepetition Debt.

28.    *No Impact on Certain Contracts or Transactions*.  No rights of any entity in

connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 or 561

of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of

this Final Order.

29.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions

of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date

immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),

6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of

the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and

enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

30.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

31.    *Payments Held in Trust*.  Except as expressly permitted in this Final Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order.  Payments made under Real Property Leases when due and not in violation of the DIP Documents will not be subject to the foregoing sentence.

32.    *Credit Bidding*.

(a)    The DIP Agent shall, acting at the direction of the requisite DIP Lenders, have the right to credit bid up to the full amount of the DIP Obligations in any sale of the Collateral as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(b)    Following or in connection with the indefeasible payment in full in cash of all DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and the termination of the Commitments, the Prepetition Agent, acting at the direction of the Required Lenders (as defined in the Prepetition Credit Agreement), shall have the right to credit bid up to the full amount of the Prepetition Debt then outstanding in any sale of the assets and property of the Debtors (to the extent such assets and property are Prepetition Collateral) as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

33.    *Amendments to the DIP Documents*.  This Final Order expressly amends the DIP Credit Agreement, and the DIP Credit Agreement is deemed amended, as follows:

(a)    The following defined term is hereby amended and replaced in its entirety as follows:

"**Availability End Date**" shall mean the earlier of (a) the six month anniversary of the Effective Date and (b) the Termination Date.

(b)    Section 5.06(a) is hereby amended by deleting the words "four month anniversary" and replacing them with "six month anniversary".

(c)    Section 8.01(p)(iii) is hereby amended by deleting the words "is reasonably acceptable to the Required Lenders" and replacing them with "contemplates the payment in full in cash of all the Obligations under the Loan Documents (other than contingent indemnification obligations not yet due and payable) on the consummation date of the Reorganization Plan".

(d)     Section 8.02(s) is hereby amended by replacing the reference to "$575,000,000" with "$500,000,000".

(e)     Section 9.01(q) is hereby amended by deleting clause (x) in its entirety.


34.     *Miscellaneous*.

(a)     Nothing in the Interim Order, this Final Order or the DIP Documents shall (i) limit, expand or otherwise modify the Debtors' obligations pursuant to 28 U.S.C. § 959(b); (ii) as to the United States, any State or municipality and any of the foregoing's respective agencies, departments or agents, discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have ; (iii) impair or adversely affect any claim of any governmental unit or any agency, department or agent thereof with respect to any letter of credit, financial assurance, or insurance proceeds for liabilities under any applicable non-bankruptcy law; or (iv) preclude any right of the United States or any State to object to any Debtor's compliance with financial assurance requirements of the Surface Mining Control and Reclamation Act.

(b)     *Notice to the Creditors' Committee*.  The Debtors shall provide to the Creditors' Committee copies of the financial statements, reports and other written information that the Debtors are expressly required to provide to the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement as and when the Debtors provide such information to the DIP Agent and/or the DIP Lenders.  Upon the receipt of any notice provided by the DIP Agent or the DIP Lenders to the Debtors under this Final Order or the DIP Documents, the Debtors shall promptly provide a copy of such notice to the Creditors' Committee.

(c)     *Sureties*.  Nothing in the Interim Order, this Final Order or the DIP Documents shall constitute a waiver of, expressly or implicitly, the rights of any surety under (i) any indemnity agreement with the Debtors; (ii) applicable law; or (iii) any letter of credit.

35.     The Debtors shall promptly serve copies of this Final Order on the Notice Parties, the Creditors' Committee and any party that has filed a request for notices with this Court.  No later than 24 hours after such service, the Debtors shall file a certificate of service with the Court.

CHARLES E. RENDLEN, III
U. S. Bankruptcy Judge

DATED:  February 25, 2016
St. Louis, Missouri
jld

**Order Prepared By:**
Marshall S. Huebner
Brian M. Resnick
Michelle M. McGreal
Kevin J. Coco
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017