**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **In re:** | Chapter 11<br>Case No. 16-40120-705 |
| **ARCH COAL, INC.,** *et al.,* | (Jointly Administered) |
| Debtors.[1] | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODS AND DISCLAIMER REGARDING DEBTORS' SCHEDULES AND SOFAS**

**General**

Arch Coal, Inc. ("**Arch**") and 71 of its direct and indirect subsidiaries and affiliates (collectively, with Arch, the "**Debtors**"), with the assistance of their advisors, are filing their respective Schedules of Assets and Liabilities (the "**Schedules**") and Statements of Financial Affairs (the "**SOFAs**") in the United States Bankruptcy Court for the Eastern District of Missouri (the "**Bankruptcy Court**"). The Debtors prepared the Schedules and SOFAs pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Schedules and SOFAs are unaudited. Although management has made reasonable efforts to ensure that the Schedules and SOFAs are accurate and complete based on information that was available to them at the time of the preparation, subsequent information or discovery may result in material changes to these Schedules and SOFAs, and inadvertent errors or omissions may exist in the Schedules and SOFAs. Moreover, because the Schedules and SOFAs contain unaudited information that is subject to further review and potential adjustment, there can be no assurance that these Schedules and SOFAs are wholly accurate and complete. Nothing contained in the Schedules and SOFAs shall constitute a waiver of any rights of the Debtors, specifically including the Debtors' right to amend these Schedules and SOFAs and any rights with respect to any issues relating to substantive consolidation, equitable subordination, defenses and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws. These Global Notes and Statement of Limitations, Methods and Disclaimer Regarding the Debtors' Schedules and SOFAs (the "**Global Notes**") are incorporated by reference in, and comprise an integral part of, each of the Schedules and SOFAs, and should be referred to and reviewed in connection with any review of the Schedules and SOFAs.

---

[1] The Debtors are listed on Schedule 1 attached hereto. The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**Description of the Cases and "As of" Information Date**

On January 11, 2016 (the "**Petition Date**"), the Debtors each filed a voluntary petition in the Bankruptcy Court for reorganization under chapter 11 of the Bankruptcy Code. The cases have been consolidated solely for the purpose of joint administration under case number 16-40120-705.

Each Debtor's fiscal year ends on December 31. All asset information contained in the Schedules and SOFAs, except where otherwise noted, is as of December 31, 2015. The liability information contained in the Schedules and SOFAs, except where otherwise noted, is as of the Petition Date of each respective Debtor, as appropriate.

Two of the Debtors, ICG Eastern Land, LLC and Powell Mountain Energy LLC, are inactive and have no recorded assets or liabilities but guarantee certain debt at Arch. Furthermore, the following Debtors have only intercompany receivables or payables and no other assets or liabilities: Allegheny Land Company; Arch Development, LLC; Arch Reclamation Services, Inc.; Arch Western Bituminous Group, LLC; Arch Western Finance, LLC; Ark Land WR, Inc.; Bronco Mining Company, Inc.; Catenary Coal Holdings, Inc.; Energy Development Co.; Hawthorne Coal Company, Inc.; Hunter Ridge Coal Company; ICG, Inc.; Marine Coal Sales Company; Melrose Coal Company, Inc.; Mountain Gem Land, Inc.; Mountain Mining, Inc.; Mountaineer Land Company; P.C. Holding, Inc.; and Simba Group, Inc.

**Basis of Presentation**

For financial reporting purposes, Arch prepares consolidated financial statements. These consolidated financial statements are filed with the Securities and Exchange Commission (the "**SEC**") and are audited annually. Unlike the consolidated financial statements, these Schedules and SOFAs, except as indicated herein, reflect the assets and liabilities of each Debtor, including intercompany accounts which would be eliminated in Arch's consolidated financial statements. Accordingly, combining the assets and claims set forth in the Schedules and SOFAs of the Debtors would result in amounts that would be substantially different from financial information for Arch and its respective consolidated subsidiaries that would be prepared under Generally Accepted Accounting Principles ("**GAAP**"). Therefore, these Schedules and SOFAs do not purport to represent financial statements prepared in accordance with GAAP, nor are they intended to reconcile to the financial statements filed by Arch with the SEC.

**Confidentiality**

There are instances within the Schedules and SOFAs where names, addresses or amounts have been left blank. Due to the nature of an agreement between the Debtors and a third party, concerns of confidentiality or concerns for the privacy of an individual, the Debtors may have deemed it appropriate and necessary to avoid listing such names, addresses and amounts.

**Amendment**

Although reasonable efforts were made to file complete and accurate Schedules and SOFAs, inadvertent errors and omissions may exist. The Debtors reserve the right to amend and/or

2

supplement their Schedules and SOFAs from time to time as they deem necessary or appropriate but are under no obligation to do so.

**Recharacterization**

The Debtors have made reasonable efforts to characterize, classify, categorize or designate correctly the claims, assets, executory contracts, unexpired leases and other items reported in the Schedules and SOFAs. However, due to the complexity and size of the Debtors' businesses, the Debtors may have improperly characterized, classified, categorized or designated certain items. In addition, certain items reported in the Schedules and SOFAs may be included in more than one category. The designation of a category is not meant to be wholly inclusive or descriptive of the rights or obligations represented by such item. The Debtors reserve their rights to recharacterize, reclassify, recategorize or redesignate items reported in the Schedules and SOFAs at a later time either in amendments to the Schedules and SOFAs or in another appropriate filing as necessary or appropriate.

**Estimates and Assumptions**

The preparation of the Schedules and SOFAs required the Debtors to make certain estimates and assumptions that affected the reported amounts of assets and liabilities, the disclosures of contingent assets and liabilities and the reported amounts of revenues and expenses. Actual results could differ materially from these estimates.

**Totals**

All totals that are included in the Schedules and SOFAs represent totals of all the known amounts included on the Schedules and SOFAs.

**Unknown or Undetermined Amounts**

The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

**Exclusions**

The Debtors have excluded certain categories of assets and liabilities from the Schedules and SOFAs such as: general accrued liabilities including, but not limited to, accrued salaries and employee benefits; tax accruals; asset retirement obligations and assets with a net book value of zero. Other non-material assets and liabilities may have also been excluded.

**Foreign Currency**

Unless otherwise indicated, all amounts are reflected in U.S. dollars. Assets and liabilities denominated in foreign currencies were translated into U.S. dollars at reasonable market exchange rates. Subsequent adjustments to foreign currency valuation will not be made.

**Current Market Value of Assets**

It would be prohibitively expensive, unduly burdensome and an inefficient use of estate resources for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, the Schedules and SOFAs reflect net book values for assets as of the Petition Date. Amounts ultimately realized may vary from net book value (or whatever value was ascribed), and such variance may be material. The values of certain assets are listed as undetermined amounts as of the Petition Date because the book values may materially differ from fair market values. As applicable, fixed assets and leasehold improvement assets that have been fully depreciated or fully amortized, or were expensed for GAAP accounting purposes, have no net book value and are therefore not included in the Schedules and SOFAs. The Debtors reserve all rights to amend, supplement or adjust the asset values set forth in the Schedules and SOFAs.

**Consolidated Accounts Payable and Disbursements System**

The Debtors use a centralized cash management system to streamline collection, transfer, and disbursement of funds generated by the Debtors' business operations. Receivables are collected by non-Debtor subsidiaries of Arch and sent to Arch. Payables are paid by Arch on behalf of the Debtors and non-Debtor affiliates in the ordinary course of business. The Debtors record in their books and records any receipts and/or disbursements made on behalf of Debtors and non-Debtor affiliates as intercompany balances.

**Intercompany Accounts**

The Debtors routinely engage in intercompany transactions with non-Debtor subsidiaries and affiliates. Although the Debtors record intercompany activity in their respective intercompany accounts, the Debtors do not track, and cannot determine, the amounts of intercompany receivables and payables to or from counterparties. Thus, intercompany account balances are not shown in Schedule A/B or Schedule E/F. A listing of intercompany balances as of December 31, 2014 and as of December 31, 2015, however, has been included for all Debtors in SOFAs Part 2. The listing of these amounts is not and shall not be construed as an admission of the characterization of such balance, as debt, equity or otherwise, and is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or claim status of any intercompany liability account. The Debtors reserve all rights to recharacterize, reprioritize, reclassify, recategorize or redesignate intercompany accounts reported in the Schedules and SOFAs.

**Accounts Receivable**

For confidentiality reasons, the Debtors have not listed individual customer accounts receivable information. Accounts receivable information for each Debtor has been listed as of December 31, 2015.

**Inventories; Property and Equipment**

Inventories consist of materials and supplies and coal inventory. These inventories are valued at book value. Coal inventory costs include labor, supplies, equipment, operating overhead and transportation costs incurred prior to the transfer of title to customers. Property, plant, equipment and mine development are recorded at cost or at fair value at the date of acquisition in the case of acquired businesses, and are presented net of accumulated depreciation and amortization. Property, plant, equipment are aggregated in the Debtors' books and records and cannot be segregated easily into the categories required by the Schedules and SOFAs. All inventories, as well as all property and equipment, are presented without consideration of any statutory or consensual liens.

**Coal Reserves**

The Debtors control an estimated 2.5 billion tons of proven and probable coal reserves located in the Power River, Illinois, Western Bituminous and Appalachian coal basins. The Debtors own approximately 23.1% of such coal reserves (by ton) and lease the remaining 76.9% of such coal reserves (by ton). The aggregate book value of owned and leased coal reserves is $2.4 billion as of December 31, 2015. The Debtors have not analyzed the current market value of their owned or leased coal reserves. Except where otherwise noted, the Debtors have reported the book value of all owned pieces of real property, including coal reserves, in Schedule A/B. Although not required, because leased coal reserves represent such a significant asset of the Debtors, the Debtors have also included the book value of leased coal reserves in Schedule A/B. Any unexpired coal reserve leases of the Debtors as of the Petition Date are included in Schedule G and to the extent that there was an amount outstanding under a coal reserve lease, such as royalties payable, as of the Petition Date, the amount owed to the lessor of the coal reserves has been listed on Schedule E/F.

**Other Leases**

The Debtors lease equipment and facilities under various operating lease agreements. These equipment and facilities leases are reported on Schedule G of each applicable Debtor, and to the extent that there was an amount outstanding under any of these leases as of the Petition Date, the amount owed to the applicable lessor has been listed on Schedule E/F of each applicable Debtor.

**Contingent Assets**

The Debtors believe that they may possess certain claims and causes of action against various parties. Additionally, the Debtors may possess contingent claims in the form of various actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws that are not listed as assets in their Schedules and SOFAs. The Debtors reserve all of their rights with respect to any claims and causes of action, whether arising under the Bankruptcy Code or otherwise, that they may have or will have, and nothing contained in these Global Notes or the Schedules and SOFAs shall be deemed a waiver of any such claims, avoidance actions or causes of action or in any way prejudice or impair the

assertion of such claims. The Debtors may also possess contingent and unliquidated claims against affiliated entities (both Debtors and non-Debtors) for various financial accommodations and similar benefits they have extended from time to time, including contingent and unliquidated claims for contribution, reimbursement and/or indemnification arising from, among other things: (a) letters of credit, (b) surety bonds, (c) guarantees, (d) indemnities and (e) other arrangements. The Debtors reserve their rights to supplement the Schedules and SOFAs for these items at a later date. Additionally, prior to the relevant Petition Date, each Debtor, as a plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.

**Guarantees and Other Secondary Liability Claims**

The Debtors have made reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "**Guarantees**") in each of the executory contracts, unexpired leases, secured financings, debt instruments and other such agreements to which any Debtor is a party. Where Guarantees have been identified, they have been included in the relevant Schedule for the Debtor or Debtors affected by such Guarantees. The Debtors have placed the Guarantees on Schedule H for both the primary obligor and the guarantor of the relevant obligation. It is possible that certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements may have been inadvertently omitted. The Debtors reserve their rights to amend the Schedules to the extent additional Guarantees are identified or such Guarantees are discovered to have expired or be unenforceable. In addition, the Debtors reserve the right to amend the Schedules and SOFAs and to recharacterize or reclassify any such contract or claim, whether by amending the Schedules and SOFAs or in another appropriate filing. Additionally, failure to list any Guarantees in the Schedules and SOFAs, including in any future amendments to the Schedules and SOFAs, shall not affect the enforceability of any Guarantees not listed.

**Classifications**

Listing a claim as "secured," "unsecured priority" or "unsecured nonpriority," or listing a contract as "executory" or "unexpired," does not constitute an admission by a Debtor of the legal rights of the claimant or a waiver of any of Debtors' right to recharacterize or reclassify such claim or contract. The Debtors reserve the right to amend the Schedules and SOFAs and to recharacterize or reclassify any such contract or claim whether by amending the Schedules and SOFAs or in another appropriate filing.

**Contingent, Unliquidated and/or Disputed Claims**

Schedule D and Schedule E/F permit each of the Debtors to designate a claim as "contingent," "unliquidated" and/or "disputed." Any failure to designate a claim on the Debtors' Schedules as "disputed," "contingent" and/or "unliquidated" does not constitute an admission by the Debtors that such amount is not "contingent," "unliquidated" and/or "disputed" or that such claim is not subject to objection. The Debtors reserve the right to dispute, or assert offsets or defenses to, any claim reflected on these Schedules as to amount, liability or classification or to otherwise subsequently designate any claim as "contingent," "unliquidated" and/or "disputed," whether by

amending the Schedules and SOFAs or in another appropriate filing. Listing a claim does not constitute an admission by the Debtors of the claimant's legal rights or a waiver of the Debtors' right to recharacterize or reclassify the claim or contract. Additionally, the Debtors reserve their rights to object to any listed claims on the grounds that, among other things, they have already been satisfied.

**Effect of Payments Made Pursuant to "First Day" Orders on Scheduled Claim Amount**

The Bankruptcy Court has authorized the Debtors to pay various outstanding prepetition claims including certain payments to employees, critical vendors, lien holders and taxing authorities. Where the Schedules and SOFAs list creditors and set forth the Debtors' scheduled amount of such claims, such scheduled amounts reflect amounts owed as of the Petition Date, adjusted for any postpetition payments made as of March 8, 2016 on account of such claims pursuant to the authority granted to the Debtors by the Bankruptcy Court. To the extent any further adjustments are necessary for any additional postpetition payments made after March 8, 2016 on account of such claims pursuant to the authority granted to the Debtors by the Bankruptcy Court, such adjustments have not been included in the Schedules and SOFAs, unless otherwise noted on the applicable Schedule or SOFA. Estimates of claims set forth in the Schedules and SOFAs may not reflect assertions by the Debtors' creditors of a right to have such claims paid or reclassified under the Bankruptcy Code or orders of the Bankruptcy Court.

**Reservation of Rights**

The corporate structure of the Debtors is extraordinarily complex. The Debtors have used reasonable efforts to ensure accuracy in attributing the information listed in the Schedules and SOFAs to the correct Debtor; however, subsequent information or discovery may result in material changes to the Schedules and SOFAs and inadvertent errors, omissions or inaccuracies may exist. The Debtors reserve all rights to amend or supplement their Schedules and SOFAs. Listing a claim or a contract with a particular Debtor does not constitute an admission by such Debtor of the legal rights of the claimant, or a waiver of the Debtors' right to disclaim such claim or contract as attributable to such Debtor. The Debtors reserve the right to amend the Schedules and SOFAs, and to relist any contract or claim with another Debtor and/or to remove such contract or claim from the Schedules and SOFAs whether by amending the Schedules and SOFAs or in another appropriate filing.

**Schedule A/B – Real and Personal Property**

Cash accounts are presented at book value, unless otherwise noted. Assets recorded as negative net payables or other prepayments are representative of credits owed from customers or third parties.

Except where otherwise noted, the Debtors have included the book value of owned real property assets, including owned coal reserves, held by each Debtor on Schedule A/B. Because leased coal reserves represent such a significant asset of the Debtors, the Debtors have also included the book value of leased coal reserves in Schedule A/B. The Bankruptcy Court granted security

interests in and liens upon, among other things, the Debtors' real property for the benefit of the lenders providing the DIP Facility (as defined below).

Certain Debtors have accumulated significant net operating losses ("**NOLs**") for United States federal and state income tax purposes. As of the Debtors' December 31, 2015 financial statements, however, these NOLs have been fully reserved, resulting in a net book value of zero due to the unlikelihood of utilizing the NOLs within a reasonable period of time.

As part of their financial statement due diligence process, the Debtors, from time to time, analyze the book values of their assets to determine, with respect to any of their assets, whether all or part of the asset value should be impaired. Cash flow modeling is utilized to determine whether an impairment is evident. If an impairment is indicated, estimated fair values are calculated through discounted cash flow analyses. The Debtors have recently experienced significant write-offs of book values of certain assets, sometimes reducing book values of such assets to zero, due to the declining coal market in which the Debtors operate. Where book values of assets have been reduced to zero, such assets have not been included in these Schedules and SOFAs.

The Debtors reserve all of their rights, claims and causes of action with respect to claims associated with any contracts and agreements listed on Schedule A/B or Schedule G, including their right to dispute or challenge the characterization or the structure of any transaction, document or instrument (including any intercompany agreement) related to a creditor's claim.

The Debtors are continuing their review of all relevant documents and reserve the right to amend all Schedules at a later time as necessary, or otherwise recharacterize their interests in such real or personal property at a later date. Further, due to the volume of the Debtors' real and personal property holdings, the Debtors may have listed certain assets as real property when such holdings are in fact in the nature of personal property holdings, or the Debtors may have listed certain assets as personal property assets when such holdings are in fact real property holdings. The Debtors reserve all of their rights to recategorize and/or recharacterize such asset holdings at a later time to the extent the Debtors determine that such holdings were improperly listed.

**Schedule D, Part 1 – Creditors Who Have Secured Claims**

Except as otherwise agreed pursuant to a stipulation, agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their right to dispute or challenge the validity, perfection or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve their right to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including any intercompany agreement) related to such creditor's claim. In certain circumstances, a Debtor may be a co-obligor or guarantor with respect to the scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The

descriptions provided on Schedule D are intended only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in Schedule D and/or the Global Notes shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, real property lessors, utility companies and other parties that may hold security deposits have not been listed on Schedule D. The Debtors reserve all of their rights, claims and causes of action with respect to claims associated with any contracts and agreements listed on Schedule D or Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument (including any intercompany agreement) related to a creditor's claim. Nothing herein shall be construed as an admission by the Debtors of the legal rights of the claimant or a waiver of the Debtors' right to recharacterize or reclassify such claim or contract.

As of the Petition Date, Arch was the borrower, and certain of the other Debtors were the guarantors, under a credit facility (the "**Prepetition Credit Facility**"), under which approximately $1.9 billion in term loans were outstanding. Additionally, as of the Petition Date, Arch had outstanding (a) approximately $350 million in aggregate principal amount of 8.00% senior secured lien notes due 2019 (the "**Prepetition Second Lien Notes**") and (b) approximately $2.9 billion in aggregate principal amount of senior unsecured notes issued in four separate tranches (the "**Prepetition Senior Unsecured Notes**"). Certain of the Debtors also sold or contributed receivables pursuant to a $200 million prepetition receivables facility (the "**Securitization Facility**") by which the Debtors obtained letters of credit to support their operations and under which approximately $178 million in letters of credit were outstanding as of the Petition Date.

Arch has since obtained postpetition financing (the "**DIP Facility**") consisting of a delayed draw term loan facility in the aggregate principal amount of approximately $275 million. Substantially all of the other Debtors guarantee Arch's obligations under the DIP Facility. The DIP Facility also has facilitated efforts to amend and restate the Securitization Facility to allow the Debtors to continue utilizing the Securitization Facility and maintaining letters of credit postpetition.

**Schedule E/F, Part 1 – Creditors With Priority Unsecured Claims**

Claims owed or potentially owed to various taxing authorities are listed on the Debtors' Schedule E/F. Certain of the tax claims may be subject to on-going audits, and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the tax claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as undetermined in amount, pending final resolution of on-going audits or outstanding issues. In addition, there may be other numerous contingent, unliquidated claims from state taxing authorities, not all of which are listed. The Debtors reserve the right to liquidate and pay prepetition and postpetition tax claims as outlined in the Debtors' Motion for Entry of an Order Authorizing (i) Debtors to Pay Certain Prepetition Taxes, Governmental Assessments and Fees and (ii) Financial Institutions to Honor and Process Related Checks and Transfers [ECF No. 24].

Except for a few individuals that may be entitled to unsecured priority claims earned in the 180 day period prior to the Petition Date, the Debtors believe that most of the employee claims entitled to priority under the Bankruptcy Code were or will be paid pursuant to certain first day orders that authorized the payment of such claims. Accordingly, only employee-related claims by and against the Debtors for prepetition amounts due that have not been paid as of the time that the Schedules and SOFAs were prepared by the Debtors, including employee-related claims for items not authorized to be paid by order of the Bankruptcy Court, have been included in Schedule E/F for each Debtor, if applicable.

**Schedule E/F, Part 2 – Creditors With Non-Priority Unsecured Claims**

The Debtors have made reasonable efforts to report all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records. The claims of individual creditors for among other things, products, goods or services are listed as either the lower of the amounts invoiced by the creditor or the amounts entered on the Debtors' books and records and may not reflect credits or allowances due from such creditors to the Debtors. The Debtors reserve all rights with respect to any such credits and allowances including the right to assert claims objections and/or setoffs. The claims listed on Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. While commercially reasonable efforts have been made, determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

Schedule E/F does not include certain deferred charges, deferred liabilities, accruals or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, they are reflected on the Debtors' books and records as required in accordance with GAAP.

Schedule E/F contains information regarding pending litigation involving the Debtors. In certain instances, the Debtor that is subject of the litigation is uncertain or undetermined. Where the named defendant is "Arch" plus "et al.," the Debtors have listed such claim on Schedule E/F of Arch. However, to the extent that litigation involving a particular Debtor has been identified, information regarding that litigation is contained in Schedule E/F for that Debtor.

**Schedule G – Executory Contracts and Unexpired Leases**

The businesses of the Debtors are complex. Although the Debtors' existing books, records, financial systems and contracts management systems have been relied upon to identify and schedule executory contracts for each of the Debtors and reasonable efforts have been made to ensure the accuracy of the Schedule G, inadvertent errors, omissions, or overinclusion may have occurred. The Debtors reserve all of their rights to dispute the validity, status or enforceability of any contracts, agreements or leases set forth on Schedule G and to amend or supplement such Schedule, as necessary. The contracts, agreements and leases listed on Schedule G may have expired or may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppels, certificates, letters, memoranda and other documents, instruments and agreements that may not be listed on Schedule G, despite the

Debtors' use of reasonable efforts to identify such documents. In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider. Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties and obligations are not separately set forth on Schedule G. Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease.

The Debtors have included only contracts and agreements to which a Debtor is a party. Schedule G does not include contracts or agreements in which payments to third parties were made on any of the Debtors' behalf for administrative convenience or as a result of the Debtors' cash management system.

The Debtors have included certain interests in real property such as easements, rights of way and other similar interests on Schedule G. The listing of such real property interests on Schedule G as "executory" does not constitute an admission by a Debtor that any such contract is executory. The Debtors reserve all rights to recategorize and/or recharacterize their interests in such real property at a later date, as necessary. Although not required, because leased coal reserves represent such a significant asset of the Debtors, the Debtors have also included the book value of leased coal reserves in Schedule A/B.

The Debtors are continuing their review of all relevant documents and expressly reserve their right to amend all Schedules at a later time as necessary and/or to challenge the classification of any agreement as an executory contract or unexpired lease in any appropriate filing. The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument (including any intercompany agreement) related to a creditor's claim.

In addition, the Debtors may have entered into various other types of agreements in the ordinary course of business, such as subordination, nondisturbance and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements. Such documents may not be set forth on Schedule G. Certain of the contracts, agreements and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts could not be specifically ascertained in every circumstance. In such cases, the Debtors made their best efforts to determine the correct Debtors' Schedule G on which to list such executory contract or unexpired lease. Certain of the executory contracts may not have been memorialized and could be subject to dispute. Each unexpired lease listed in Schedule G may include one or more ancillary documents, including but not limited to any underlying assignment and assumption agreements, amendments, supplements, full and partial assignments, renewals and partial releases. Executory contracts that are oral in nature, if any, have not been included on Schedule G. Schedule G does not constitute an admission that any such contract or agreement is

an executory contract or unexpired lease. The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document or instrument.

**Schedule H – Co-Debtors**

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary business transactions. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross claims and counter-claims against other parties. Due to the volume of such claims, and because all such claims are contingent, unliquidated and disputed, and listed elsewhere in the Schedules and SOFAs, such claims have not been set forth individually on Schedule H.

Schedule H reflects Guarantees, if any, by various Debtors of obligations of related affiliates. The Debtors may not have identified certain Guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements. Certain of the Guarantees reflected on Schedule H, if any, may have expired or no longer be enforceable. Thus, the Debtors reserve their rights to amend the Schedules to the extent that additional Guarantees are identified or such Guarantees are discovered to have expired or are unenforceable, or to contest the validity or enforceability of the Guarantees in another filing.

**Claims of Third-Party Related Entities**

Although the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to both such entity and its affiliates. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and SOFAs shall similarly be considered as disputed, whether or not they are designated as such.

**Umbrella Agreements**

A number of contracts listed in the Schedules and SOFAs are umbrella agreements that cover some or all of the Debtors. Such agreements have been listed in the Schedules and SOFAs of the Debtor that was the main signatory to the agreement, although more than one of the Debtors may be obligated under the agreement.

**Pension Obligations for Active and Retired Employees**

The Debtors maintain two qualified defined benefit pension plans that, as of September 30, 2015, were overfunded for funding purposes: (a) the Arch Coal, Inc. Retirement Account Plan, which was frozen effective as of December 31, 2014 as to future service benefit accruals and (b) the

Cumberland River Coal Company Pension Plan, which was frozen effective as of February 15, 2015 as to future service benefit accruals.

Pursuant to the Order Authorizing (i) Debtors to (a) Pay Prepetition Wages, Salaries, Employee Benefits and Other Compensation and (b) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (ii) Current and Former Employees to Proceed With Outstanding Workers' Compensation Claims and (iii) Financial Institutions to Honor And Process Related Checks And Transfers [ECF No. 54] entered by the Bankruptcy Court on January 13, 2016, the Debtors are authorized to continue, but not to pay outstanding prepetition amounts under, (x) the Arch Coal, Inc. Supplemental Retirement Plan, which is a non-qualified defined pension plan and (y) the Arch Coal, Inc. Deferred Compensation Plan, which is a non-qualified deferred compensation plan.

**Workers' Compensation Claims**

The Debtors are subject to the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 901 *et seq.* (the "**Black Lung Benefits Act**") and other workers' compensation laws in the states in which they operate. Under the Black Lung Benefits Act, such Debtors are required to provide benefits to their current and former coal miners (and certain of their qualified dependents) suffering from coal workers' pneumoconiosis, an occupational disease often referred to as black lung disease. The Debtors estimate that, as of December 31, 2015, their Black Lung Benefits Act liabilities total approximately $90 million . The Debtors estimate that, as of December 31, 2015, other workers' compensation liabilities total approximately $38 million. Separately, the Debtors have posted approximately $150 million in letters of credit, cash and/or bonds to secure their liabilities with respect to Black Lung Benefits Act liabilities and other workers' compensation liabilities. Arch's Schedule E/F includes a number of workers' compensation obligations that originated against companies that have been dissolved or sold but were retained by the Debtors. Workers' compensation obligations are broken out among the applicable Debtor entities and have been listed on their respective Schedule E/Fs as undetermined individual amounts.

**SOFAs Part 1, Question 2 – Non-Business Revenue**

The Debtors record a non-material amount of certain transactions as other income in their financial records. Such transactions have been included in the response to SOFAs Part 1, Question 2. These transactions are not related to the sale of coal but are related to the sale of surplus equipment, scrap metal and other sundry items.

**SOFAs Part 2, Question 3 – 90 Day Payments**

The dates set forth in the "Dates" column relate to one of the following: (a) the date of a wire transfer; (b) the date of an "ACH" payment; or (c) the check date. In general, disbursements are made by Arch and recorded to the proper entity with the liability through intercompany journal entries. For the purpose of this schedule, all of these payments are recorded on Arch's SOFA Part 2, Question 3 except where otherwise noted in the response of a particular Debtor to SOFA Part 2, Question 3. In addition to the payments disclosed in response to this Question, the

Debtors periodically replenish "petty cash" working accounts held locally by some entities. Disbursements from these working accounts, held by various Debtors, to third party payees are included in this Question but the intercompany replenishment transactions are not.

**SOFAs Part 2, Question 4 – Payments to Insiders**

The listing of a party as an "insider," throughout the Schedules and SOFAs, is not intended to be, nor shall be, construed as a legal characterization or determination of such party as an actual insider and does not act as an admission of any fact, claim, right, or defense, and all such rights, claims and defenses are hereby expressly reserved.

Certain of the Debtors' directors, officers and senior management members can elect to defer payment of a percentage of the wages they earn to a future period. The response to SOFAs Part 2, Question 4 does not include wages earned and deferred during the one year period prior to the Petition Date of each of the respective Debtors but does include any wages that were deferred in the past and paid to employees during the one year period preceding the Petition Date.

Certain of the Debtors' directors and officers receive (a) restricted stock grants and (b) performance stock grants (together the "**Grants**") as part of a long term incentive plan. The amounts shown in SOFAs Part 2, Question 4 include amounts for the Grants issued but not vested during the one year period preceding the Petition Date.

Certain of the Debtors' senior management members receive rights to purchase stock of the Debtors as part of their compensation package. The amounts shown in SOFAs Part 2, Question 4 include the rights granted during the one year period preceding the Petition Date, regardless of when the rights are vested or exercised.

Additionally, the amounts shown in SOFAs Part 2, Question 4 include payments under the Debtors' primary incentive compensation plans ("**Incentive Compensation Payments**") earned in both calendar year 2014 and calendar year 2015. The Incentive Compensation Payments earned in calendar year 2014 were paid in 2015, and the Incentive Compensation Payments earned in calendar year 2015 were paid in 2016. No further Incentive Compensation Payments to the individuals listed in SOFAs Part 2, Question 4 will occur in calendar year 2016.

The payments to "insiders" listed in SOFAs Part 2, Question 4 were made primarily by Arch and Arch Coal Sales Company, Inc. These payments were not allocated among the subsidiary Debtors, so the list of total payments to each "insider" is shown for all Debtors.

**SOFAs Part 2, Question 5 – Repossessions, Foreclosures and Returns**

The Debtors routinely return damaged, unsatisfactory or out-of-specification raw materials and other goods to vendors in the ordinary course of business. These ordinary course returns have not been listed in SOFAs Part 2, Question 5.

**SOFAs Part 2, Question 6 – Setoffs**

The Debtors incur setoffs during the ordinary course of business. Setoffs in the ordinary course can result from various items including derivative transactions in connection with market risk management activities and counterparty settlements. These normal setoffs can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list all normal setoffs. Therefore, normal setoffs are excluded from the Debtors' responses to SOFAs Part 2, Question 6, except where otherwise noted in the response of a particular Debtor to SOFA Part 2, Question 6.

**SOFAs Part 3 – Legal Actions or Assignments**

There are several pending litigation matters that are believed to have potential recoveries. The actual amount of these litigation matters is contingent on the outcome of the cases. The Debtors routinely participate in administrative actions and appeals with state agencies regarding permits in the ordinary course of their business and they have identified those administrative actions that were pending within one year of the Petition Date.

**SOFAs Part 4, Question 9 – Certain Gifts and Charitable Contributions**

Certain gifts and charitable conditions made during the period from January 1, 2015 through January 10, 2016 have been listed in SOFAs Part 4, Question 9. Multiple donations to a single organization may have been consolidated into one line in response to SOFAs Part 4, Question 9.

**SOFAs Part 5 – Certain Losses**

Any claims for losses that do not exceed the deductible amount of $3,500,000 for certain casualty insurance policies maintained by the Debtors have been excluded from SOFAs Part 5.

**SOFAs Part 6 – Certain Payments or Transfers**

The Debtors make *de minimus* sales to third parties for such items including, but not limited to, scrap steel, obsolete parts and supplies, and surplus inventory and equipment.

**SOFAs Part 11 – Property Held for Another**

The Debtors withhold or retain certain funds from employees for payment to certain governmental authorities. These funds are held in trust for turnover to the applicable governmental authority. Given that the Debtors do not retain control of such funds and such funds are not considered property of the Debtors' estate, amounts of such funds have not been listed under SOFAs Part 11.

In the ordinary course of business, Arch enters into consignment agreements (the "**Consignment Agreements**") on behalf of certain of the Debtors with some of their vendors. Under the Consignment Agreements, the Debtors take possession but not title to various materials and supplies, including parts and components of various mining and mining-related

equipment (the "**Consigned Assets**"). Title to the Consigned Assets does not transfer to the Debtors, and the Debtors are not obligated to pay for the Consigned Assets until the Consigned Assets are placed in service. Consigned Assets have not been listed in SOFAs Part 11.

**SOFAs Part 12 – Details About Environmental Information**

The Debtors historically have operated in many locations across the United States. At some locations, the Debtors no longer have any active operations and may no longer have relevant records or the records may no longer be complete or reasonably accessible or reviewable. Some individuals who once possessed responsive information are no longer employed by the Debtors. For all these reasons, it may not be possible to identify and supply the requested information for every "site" and "proceeding" literally responsive to SOFAs Part 12. The Debtors have devoted substantial internal and external resources to identifying and providing the requested information that is responsive for as many sites and proceedings as reasonably possible. The Debtors may supplement or amend this response in the future. Due to the volume of potentially responsive information, the practical burdens in compiling information on inactive and/or resolved matters and the presumably lower relevance of information on inactive and/or resolved matters, responsive information is presented only for matters and issues that have arisen within the last five years, including matters and issues that the Debtors consider to have been resolved. When some requested categories of information were not reasonably available for a listed "site" or "proceeding," the Debtors' response gives as much information as was reasonably available. This response does not include sites or proceedings related to non-environmental laws such as occupational safety and health laws or transportation laws. The Debtors are legally required to make routine reports and submissions to regulatory agencies concerning discharges resulting from normal operations consistent with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions and submissions concerning air emissions. This response is limited to identifying circumstances in which governmental agencies have alleged in writing that particular operations of the Debtors are in violation of environmental laws and proceedings that have resulted from alleged violations of environmental laws.

**SOFAs Part 13, Question 26 – Books, Records and Financial Statements**

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, Arch and its subsidiaries have filed with the SEC reports on Form 8-K, Form 10-Q, and Form 10-K. These SEC filings contain consolidated financial information. Because the SEC filings are of public record, Arch does not maintain records of the parties that requested or obtained copies of any of the SEC filings from the SEC or Arch. In addition, Arch provides certain parties, such as banks, auditors, potential investors, vendors and financial advisors financial statements that may not be part of a public filing. Arch does not maintain complete lists to track such disclosures. As such, Arch has not provided lists of these parties in response to SOFAs Part 13, Question 26c and Question 26d.

**SOFAs Part 13, Question 27 – Inventories**

The Debtors' policy concerning the counts of parts and supplies inventory does not include periodic counts of the entire inventory. Instead, cycle counts of portions of inventory are

16

continuously taken. Thus, information concerning parts and supplies inventory counts are not included in the response to SOFAs Part 13, Question 27.

**SOFAs Part 13, Question 30 – Payments, Distributions or Withdrawals to Insiders**

The response to SOFAs Part 13, Question 30 incorporates by reference items listed in the response to SOFAs Part 2, Question 4.

**Limitation of Liability**

The Debtors and their officers, employees, agents, attorneys, and financial advisors do not guarantee or warrant the accuracy, completeness, or currentness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused, in whole or in part, by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. The Debtors and their officers, employees, agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised or recategorized. In no event shall any of the Debtors or any of their officers, employees, agents, attorneys and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or lost profits), whether foreseeable or not and however caused.

## SCHEDULE 1
## Debtor Entities

| | | | | |
|---|---|---|---|---|
| 1. | ACI Terminal, LLC | | 37. | ICG Eastern, LLC |
| 2. | Allegheny Land Company | | 38. | ICG Eastern Land, LLC |
| 3. | Apogee Holdco, Inc. | | 39. | ICG Illinois, LLC |
| 4. | Arch Coal, Inc. | | 40. | ICG Knott County, LLC |
| 5. | Arch Coal Sales Company, Inc. | | 41. | ICG Natural Resources, LLC |
| 6. | Arch Coal West, LLC | | 42. | ICG Tygart Valley, LLC |
| 7. | Arch Development, LLC | | 43. | International Coal Group, Inc. |
| 8. | Arch Energy Resources, LLC | | 44. | Jacobs Ranch Coal LLC |
| 9. | Arch Reclamation Services, Inc. | | 45. | Jacobs Ranch Holdings I LLC |
| 10. | Arch Western Acquisition Corporation | | 46. | Jacobs Ranch Holdings II LLC |
| 11. | Arch Western Acquisition, LLC | | 47. | Juliana Mining Company, Inc. |
| 12. | Arch Western Bituminous Group, LLC | | 48. | King Knob Coal Co., Inc. |
| 13. | Arch Western Finance LLC | | 49. | Lone Mountain Processing, Inc. |
| 14. | Arch Western Resources, LLC | | 50. | Marine Coal Sales Company |
| 15. | Arch of Wyoming, LLC | | 51. | Melrose Coal Company, Inc. |
| 16. | Ark Land Company | | 52. | Mingo Logan Coal Company |
| 17. | Ark Land KH, Inc. | | 53. | Mountain Coal Company, L.L.C. |
| 18. | Ark Land LT, Inc. | | 54. | Mountain Gem Land, Inc. |
| 19. | Ark Land WR, Inc. | | 55. | Mountain Mining, Inc. |
| 20. | Ashland Terminal, Inc. | | 56. | Mountaineer Land Company |
| 21. | Bronco Mining Company, Inc. | | 57. | Otter Creek Coal, LLC |
| 22. | Catenary Coal Holdings, Inc. | | 58. | Patriot Mining Company, Inc. |
| 23. | Catenary HoldCo, Inc. | | 59. | P.C. Holding, Inc. |
| 24. | Coal-Mac, Inc. | | 60. | Powell Mountain Energy, LLC |
| 25. | CoalQuest Development LLC | | 61. | Prairie Coal Company, LLC |
| 26. | Cumberland River Coal Company | | 62. | Prairie Holdings, Inc. |
| 27. | Energy Development Co. | | 63. | Saddleback Hills Coal Company |
| 28. | Hawthorne Coal Company, Inc. | | 64. | Shelby Run Mining Company, LLC |
| 29. | Hobet Holdco, Inc. | | 65. | Simba Group, Inc. |
| 30. | Hunter Ridge, Inc. | | 66. | Thunder Basin Coal Company, L.L.C. |
| 31. | Hunter Ridge Coal Company | | 67. | Triton Coal Company, L.L.C. |
| 32. | Hunter Ridge Holdings, Inc. | | 68. | Upshur Property, Inc. |
| 33. | ICG, Inc. | | 69. | Vindex Energy Corporation |
| 34. | ICG, LLC | | 70. | Western Energy Resources, Inc. |
| 35. | ICG Beckley, LLC | | 71. | White Wolf Energy, Inc. |
| 36. | ICG East Kentucky, LLC | | 72. | Wolf Run Mining Company |