# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| In re:<br><br><br>**ARCH COAL, INC.,** *et al.,*<br><br>Debtors.[1] | **Chapter 11**<br>**Case No. 16-40120-705**<br><br>**(Jointly Administered)**<br><br>**Objection Deadline:**<br>July 27, 2016<br><br>**Hearing Date and Time:**<br>August 10, 2016, 1:00 p.m.<br>(Prevailing Central Time)<br><br>**Hearing Location:**<br>Courtroom 7 South |

## NOTICE OF FIRST INTERIM
## APPLICATION OF DAVIS POLK & WARDWELL LLP FOR
## <u>ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>

PLEASE TAKE NOTICE that this application is scheduled for hearing on August 10, 2016, at 1:00 p.m. (prevailing Central Time), in Bankruptcy Courtroom 7 South, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102.

**WARNING:  ANY RESPONSE OR OBJECTION TO THIS APPLICATION MUST BE FILED WITH THIS COURT BY JULY 27, 2016.  A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED.  FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.**

---

[1] The Debtors are listed on Schedule 1 attached hereto.  The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

## SUMMARY COVER SHEET PURSUANT TO APPENDIX B
## GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION
## AND REIMBURSEMENT OF EXPENSES FILED UNDER
## <u>UNITED STATES CODE BY ATTORNEYS IN LARGER CHAPTER 11 CASES</u>

### FIRST INTERIM FEE APPLICATION

| | |
|---|---|
| **Basic Information** | |
| Name of Applicant | Davis Polk & Wardwell LLP |
| Name of Client | Arch Coal, Inc. and its subsidiaries |
| Role in the Case | Counsel to the Debtors |
| Petition Date | January 11, 2016 |
| Retention Date | Retroactive to January 11, 2016 |
| Date of Order Approving Employment | February 24, 2016 |
| | |
| **This Application** | |
| Time Period Covered | January 11, 2016 through and including May 31, 2016 |
| Total Fees Requested | $7,580,394.00 |
| 80% of Fees Requested | $6,064,315.20 |
| Total Expenses Requested[2] | $257,488.33 |
| Attorney Blended Rate | $869.08 |
| All Timekeepers Blended Rate | $828.61 |
| Fees Requested Over Budgeted | $0 |
| Total Number of Significant Timekeepers | 17 |
| Total Number of Significant Timekeepers Not in Staffing Plan[3] | 3 |
| Total Professionals Billing <15 Hours | 37 |
| Rate Increases Not Previously Approved/Disclosed? | No |
| | |
| **Historical Information** | |
| Prior Applications | None |

---

[2] These amounts reflect $26,417.50 in voluntary reductions of fees, which voluntary reductions are in addition to reductions of fees and expenses of $58,474.50 on account of Eastern District of Missouri and U.S. Trustee guidelines.

[3] Davis Polk's Staffing Plan for the Period of January 11, 2016 through May 31, 2016 set forth the number of principal timekeepers expected to perform significant work across all matters during the Compensation Period (as defined below).

**FIRST INTERIM APPLICATION OF
DAVIS POLK & WARDWELL LLP FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

NOW COME Davis Polk & Wardwell LLP ("**Davis Polk**"), counsel to Arch Coal, Inc.

and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively,

the "**Debtors**"), and move this Court for entry of an order approving compensation and

reimbursement of expenses.  In support of this first interim fee application (the "**Application**"),

the Davis Polk shows the Court as follows:

**Relief Requested**

1.       By this Application, and pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), Local Rules 2016-1 and 2016-2 of the Local Rules of the

Bankruptcy Court for the Eastern District of Missouri (the "**Local Rules**") and the *Order*

*Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained*

*Professionals* entered by this Court on February 24, 2016 [ECF No. 399] (the "**Interim**

**Compensation Order**"), Davis Polk seeks entry of an order (the "**Proposed Order**")[1] allowing

compensation for professional services performed by Davis Polk, counsel to the Debtors, during

the period commencing January 11, 2016 through and including May 31, 2016 (the

"**Compensation Period**") and reimbursement of its actual and necessary expenses incurred

during the Compensation Period.

---

[1] A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made
available on the Debtors' Case Information Website at *https://cases.primeclerk.com/archcoal*.

## Jurisdiction

2.      This Court has jurisdiction over this Application under 28 U.S.C. § 1334.  Venue of this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## Background

3.      The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 11, 2016 (the "**Petition Date**").

4.      The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

5.      The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* entered by this Court on January 13, 2016 in each of the Debtors' cases.

6.      The Court entered the *Order Establishing Certain Notice, Case Management and Administrative Procedures* on January 21, 2016 [ECF No. 155] (the "**Case Management Order**").

7.      Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Declaration of John T. Drexler, Senior Vice President and Chief Financial Officer of Arch Coal, Inc.*, filed on the Petition Date [ECF No. 3], which is incorporated herein by reference.

8.      Pursuant to the *Order Approving Debtors' Application for Authority to Employ and Retain Davis Polk & Wardwell LLP as Attorneys for the Debtors Nunc Pro Tunc to the*

2

*Petition Date* entered by the Court on February 24, 2014 [ECF No. 401] (the "**Retention Order**"), the Debtors were authorized to retain Davis Polk as their attorneys to render legal services in the prosecution of their chapter 11 cases retroactive to the Petition Date.  As set forth in the Retention Order, Davis Polk intends to make a reasonable effort to comply with requests by the U.S. Trustee (as defined below) for information and additional disclosures as set forth in the UST Guidelines (as defined below) in connection with its interim and final fee applications.

9.      On January 25, 2016 the Office of the United States Trustee for the Eastern District of Missouri (the "**U.S. Trustee**") appointed the official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.

10.     The Debtors filed a monthly operating report covering the period from January 11, 2016 to January 31, 2016 on February 29, 2016, February 1, 2016 through February 29, 2016 on March 31, 2016, March 1, 2016 through March 31, 2016 on April 29, 2016, April 1, 2016 through April 30, 2016 on May 31, 2016 and May 1, 2016 through May 31, 2016 on June 30, 2016.

**Preliminary Statement**

11.     The Debtors' chapter 11 cases are very complex.  The Debtors' May 2016 Monthly Operating Report listed consolidated assets of approximately $4.7 billion and consolidated liabilities of approximately $6.3 billion.  The Debtors sent their notice of commencement to more than 25,000 entities, and they are party to thousands of contracts.  As of the Petition Date, the Debtors employed more than 4,600 people in active status.

12.     As lead bankruptcy counsel, it has been necessary for Davis Polk to expend considerable amounts of time, energy and resources in efforts to help the Debtors continue operating their businesses and address the various and complex issues that arise in chapter 11

3

cases.  In the five months since the Petition Date, Davis Polk has provided assistance and counsel to the Debtors in connection with the Debtors' efforts on multiple fronts to stabilize and restructure their businesses.  During the Compensation Period, Davis Polk has dedicated significant time and resources to, among other things, (a) conferring with the Debtors' management, employees and professional advisors covering topics such as the Debtors' chapter 11 cases generally, postpetition financing, interpretation of court orders, operational issues and general business issues; (b) assisting with the Debtors' retention of professionals in the Debtors' chapter 11 cases and in the ordinary course of business, and reviewing and drafting certain professional retention applications and motions establishing procedures for compensating retained professionals and ordinary course professionals; (c) managing and responding to creditors and other parties in interest concerning the Debtors' chapter 11 cases and the rights of creditors under the Bankruptcy Code and conducting associated legal research; (d) drafting a chapter 11 plan of reorganization, a related disclosure statement and a motion to approve the disclosure statement and solicitation procedures, and negotiating with the Committee and the Debtors' other creditors with regard to same; (e) obtaining critical first day relief to permit the Debtors to continue to operate in the ordinary course of business; and (f) researching and analyzing environmental, tax and other regulatory issues, including with respect to the Debtors' continued ability to self-bond in the state of Wyoming, and advising the Debtors regarding the same.  As of June 30, 2016, there were over 1,040 entries on the Debtors' bankruptcy court docket, many of which required attention by Davis Polk attorneys.

13.    Additionally, Davis Polk has helped successfully address scores of inquiries and issues on a consensual basis that might well otherwise have become contested matters.  Indeed, the fact that there has been only one contested hearing in these chapter 11 cases thus far is due in

4

large part to Davis Polk's extensive efforts to reach out to and negotiate with parties that have

raised concerns regarding a range of issues during the pendency of these chapter 11 cases. By

reducing the amount of contested matters, Davis Polk has minimized the number of hours that

would be required to prepare for and participate in litigation and the attendant cost to the

Debtors.

14.     Through all of this, Davis Polk has tried to be as efficient as possible to minimize

cost to the Debtors' estates.

15.     A core group of nine Davis Polk attorneys accounted for approximately 70% of

the associate time expended on these cases during the Compensation Period, and three partners

accounted for more than 90% of the partner hours worked during the Compensation Period. In

addition to the efficient core team, due to the large number of varied issues in these cases,

attorneys from different practice areas were called on to assist with discrete issues within their

areas of expertise, such as issues related to financing, employee benefits and compensation,

capital markets, tax, real estate and environmental law. Many, of course, billed only a very

limited number of hours.

16.     As described in further detail herein, Davis Polk's efforts to advise and represent

the Debtors during the Compensation Period have provided substantial benefits to the Debtors'

chapter 11 estates. Among other things, (1) the Debtors' operational transition into chapter 11

has been smooth, (2) Davis Polk has assisted the Debtors in resolving numerous matters

consensually and avoiding greater expense to the estates and (3) Davis Polk has assisted the

Debtors in their ongoing restructuring process through, among other things, filing the *Debtors'*

*Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No.

968] (the "**Plan**") and the *Disclosure Statement for Debtors Amended Joint Plan of*

5

*Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 969] (the "**Disclosure**

**Statement**").  Moreover, Davis Polk and the Debtors have established a harmonious relationship

with the Creditors' Committee and have reached agreement with the Creditors' Committee on

almost every matter raised or litigated during the Compensation Period.

17.    In consideration of the complexity of these cases, Davis Polk's fees for

professional services and expenses are reasonable under applicable standards.  For all of these

reasons, Davis Polk requests that the Court grant this Application and allow the compensation

for professional services and the reimbursement of expenses described herein.

**Summary of Requested Professional Compensation and Reimbursement of Expenses**

18.    Pursuant to the Interim Compensation Order, Davis Polk served by email on the

Core Parties (i) a monthly fee statement covering the period from January 11, 2016 through

February 29, 2016 on April 7, 2016, (ii) a monthly fee statement covering the period from March

1, 2016 through March 31, 2016 on May 11, 2016, (iii) a monthly fee statement covering the

period from April 1, 2016 through April 30, 2016 on June 8, 2016 and (iv) a monthly fee

statement covering the period from May 1, 2016 through May 31, 2016 on June 30, 2016 (each,

a "**Served Monthly Fee Statement**").  Davis Polk did not receive a Notice of Objection to

Monthly Fee Statement (as defined in the Interim Compensation Order) with respect to any

Served Monthly Fee Statement.

19.    By this Application, Davis Polk seeks allowance in full of interim compensation

for professional services rendered to the Debtors during the Compensation Period, in the

aggregate amount of $7,580,394.00, and for reimbursement of actual, necessary expenses

incurred in connection with such services in the aggregate amount of $257,488.33.  During the

6

Compensation Period, Davis Polk attorneys, summer associates and paraprofessionals expended a total of 9,148.3 hours for which compensation is sought.

20.     In accordance with the Interim Compensation Order, Davis Polk will have received payments to date totaling $6,321,803.53, of which $6,064,315.20 is for services rendered and $257,488.33 of which is for reimbursement of expenses) for the Compensation Period.[2]  By this Application, Davis Polk seeks payment of the remaining $1,516,078.80, which amount represents the Court-ordered 20% holdback of Davis Polk's requested fees during the Compensation Period.

21.     During the Compensation Period, other than pursuant to the Interim Compensation Order, Davis Polk has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  There is no agreement or understanding between Davis Polk and any other person, other than partners of the firm, for the sharing of compensation to be received for services rendered in these cases.

22.     The fees charged by Davis Polk in these cases during the Compensation Period are billed at rates that reflect a negotiated discount from the rates that Davis Polk customarily charges other clients for work of this type.  The rates charged by Davis Polk for the services rendered in these chapter 11 cases do not (and will not) exceed the rates Davis Polk customarily charges for services rendered in comparable matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable assignments in a competitive national legal market.

---

[2] These amounts include fees and expenses set forth in Davis Polk's May Served Monthly Fee Statement that have not been received by Davis Polk as of the date hereof.

7

23.     Davis Polk maintains computerized records of the time spent by all Davis Polk attorneys, summer associates and paraprofessionals in connection with the Debtors' chapter 11 cases.

24.     As of the date hereof, Davis Polk continues to hold a retainer equal to approximately $877,637.01 (the "**Advance Payment Retainer**"), which Davis Polk held as of the Petition Date.  In accordance with the Retention Order, Davis Polk may continue to hold the Advance Payment Retainer and is authorized, but not directed, to apply the Advance Payment Retainer to the extent necessary to pay any allowed fees, costs and expenses relating to services rendered by Davis Polk to the Debtors after the Petition Date in accordance with the Application (as defined in the Retention Order).

25.     To the extent that time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Davis Polk reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

## U.S. Trustee Guidelines

26.     This Application has been prepared in substantial compliance with (a) the Local Rules (b) Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "**UST Guidelines**") and (c) the Appendix to the Procedures Manual accompanying the Local Rules (the "**Fee Guidelines**" and, together with the Local Rules and the UST Guidelines, the "**Guidelines**").

27.     Consistent with Davis Polk's efforts to comply with the requests set forth in the Guidelines, the following exhibits are attached hereto:

8

- Exhibit A contains schedules setting forth all Davis Polk professionals and paraprofessionals who have performed services in these chapter 11 cases during the Compensation Period, the capacities in which each such individual is employed by Davis Polk, the department in which each individual practices, the hourly billing rate charged by Davis Polk for services performed by such individual, the year in which each professional was first licensed to practice law and the year in which each professional was licensed to practice in New York, if different and applicable, and the aggregate number of hours expended in this matter and fees billed therefor.

- Exhibit B is a schedule specifying the categories of actual, necessary expenses for which Davis Polk is seeking reimbursement and the total amount for each such expense category.

- Exhibit C is the budget and staffing plan prepared by Davis Polk and approved by the Debtors.

- Exhibit D is a summary of the number of hours and amounts billed by Davis Polk during the Compensation Period, as well as a summary of the hours and fees budgeted by Davis Polk and approved by the Debtors, organized by project categories.

- Exhibit E is a disclosure of customary and comparable compensation.

- Exhibit F contains time records of Davis Polk professionals organized by project category.

**Attorney Statement Pursuant to UST Guidelines**

28. The following is provided in response to the request for additional information set forth in ¶C.5 of the UST Guidelines:

a. **Question:** Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response: Yes. As set forth in the *Debtors' Application for Authority to Employ and Retain Davis Polk & Wardwell LLP as Attorneys for the Debtors Nunc Pro Tunc to the Petition Date* filed on February 9, 2016 [ECF No. 279], Davis Polk agreed to billing rates that reflect a negotiated

9

discount from the rates that Davis Polk customarily charges other clients for work of this type.

b.   **Question:**   If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:   Not applicable.  The fees sought in this Application are less than the fees budgeted for the Compensation Period.

c.   **Question:**   Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:   No.

d.   **Question:**   Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

Response:   No.  All time or fees included in this Application related to work involved in preparing and editing billing records would be compensable outside of bankruptcy.

e.   **Question:**   Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:   Yes.  However, any time or fees included in this Application for reviewing time records to redact any privileged or other confidential information is necessary to avoid publicly disclosing sensitive information.  All such time and fees are related to work that would be compensable

10

outside of bankruptcy.

f. **Question:**   If the fee application includes any rate increases
since retention: (i) Did your client review and
approve those rate increases in advance?  (ii) Did
your client agree when retaining the law firm to
accept all future rate increases?  If not, did you
inform your client that they need not agree to
modified rates or terms in order to have you
continue the representation, consistent with ABA
Formal Ethics Opinion 11-458?

Response:   Not applicable.  This Application does not
include any rate increases since retention.

### Summary of Services

29.     Throughout the Compensation Period, Davis Polk was required to render

substantial professional services, in some cases under extraordinary time constraints, to assist the

Debtors in dealing with various issues typically faced by a debtor during a chapter 11 case.

Recitation of each and every item of professional services performed by Davis Polk during the

Compensation Period would be extremely burdensome.  Hence, the following summary

highlights the major areas to which Davis Polk devoted time and attention during the

Compensation Period.  This summary is organized in accordance with Davis Polk's internal

system of project categories.

(a)     Asset Dispositions (Project Category 1)

The total number of hours billed for this project was 330.2.  The total fees related to this
project were $278,793.50.

Under this project category, Davis Polk worked on matters including:

- Drafting a motion seeking approval of the sales of de minimis assets and negotiating the
  provisions thereof with the Debtors' constituencies, and effecting certain sales pursuant
  to the same.

11

- Drafting motions seeking approval of the sales of the Debtors' membership interests in Debtor ICG Knott County, LLC and Millennium Bulk Terminals-Longview, LLC as well as negotiating and documenting such sales, including obtaining the necessary approvals.

- Drafting a motion seeking entry of an order dismissing the bankruptcy case of Debtor ICG Knott County, LLC and obtaining creditor constituency approval of the same.

    (b)    <u>Corporate Governance, Board Matters and Communications (Project Category 2)</u>

The total number of hours billed for this project was 118.8.  The total fees related to this project were $119,269.00.

Davis Polk provided services in connection with communications regarding media inquiries and general matters involving the Arch Coal, Inc.'s board of directors, including presenting at meetings of the board of directors, analysis and advice regarding corporate governance issues and review and preparation of corporate documents and board presentations.

    (c)    <u>Creditor, Equityholder and UCC Issues (Project Category 3)</u>

The total number of hours billed for this project was 2,527.6.  The total fees related to this project were $1,997,120.50.

Davis Polk assisted the Debtors with various claims-related issues.  In addition, this project category includes negotiations and communications with the Creditors' Committee or creditors and creditor issues that do not fall into a more specific category.  In this regard, Davis Polk worked on matters including:

- Responding to numerous telephone calls and communications from creditors, equity holders and other parties in interest concerning the Debtors' chapter 11 cases, the filing of claims against the Debtors and the rights of creditors under the Bankruptcy Code, and conducting associated legal research.

- Reviewing due diligence requests of the Creditors' Committee and communicating with the Debtors and their advisors regarding document disclosure.

- Negotiating with the Creditors' Committee regarding various pleadings and administration of the Debtors' estates generally.

- Responding to comments and concerns raised by the Creditors' Committee regarding various pleadings, the Debtors' estates and the Debtors restructuring process.

- Meeting with Creditors' Committee professionals regarding the chapter 11 cases and the Debtors' businesses.

- Preparing for and attending the section 341 meeting of creditors.

12

- Researching, analyzing and drafting related to motions to establish a claims bar date, claim objection procedures, procedures for claims asserted pursuant to section 503(b)(9) of the Bankruptcy Code and claim settlement procedures.

- Extensive negotiations with the Creditors' Committee and its advisors in connection with certain claims and causes of action as well as concerning recoveries to unsecured creditors in the chapter 11 cases.

- Analysis, negotiation and documentation concerning reclamation demands, critical vendors, surety bond issuers and utility providers.

(d)    <u>DPW Retention (Project Category 4)</u>

The total number of hours billed for this project was 40.0.  The total fees related to this project were $32,141.50.

Davis Polk assisted the Debtors with issues surrounding the Debtors' retention of Davis Polk in connection with these cases. Davis Polk also worked to ensure its compliance with applicable guidelines, court rules and orders. In these regards, Davis Polk performed services including:

- Research, analysis and drafting related to the Debtors' application to employ and retain Davis Polk as Debtors' counsel.

- Conducting checks for conflicts of interest and correspondence regarding same.

(e)    <u>Employee/Labor Issues (Project Category 5)</u>

The total number of hours billed for this project was 494.1.  The total fees related to this project were $432,479.00.

The Employee/Labor Issues project category encompasses the services necessary to address issues related to the Debtors' employees.  Entry into chapter 11 mandates analysis of an entirely new set of issues applicable to employees. To ensure that the Debtors' workforce remains functioning, Davis Polk has worked on matters including:

- Analyzing employee issues related to severance and retention.

- Drafting and reviewing a final order authorizing the Debtors to pay prepetition wages and provide employee benefits and other compensation to their employees.

- Reviewing and analyzing the Debtors' existing employment agreements and compensation plans.

- Researching market treatment of severance and retention plans for employees.

13

(f)     Financing, Cash Collateral and Adequate Protection (Project Category 6)

The total number of hours billed for this project was 1,475.4.  The total fees related to this project were $1,231,342.00.

During the Compensation Period, Davis Polk provided substantial services with respect to the Debtors' postpetition financing facility.  Under this project category, Davis Polk worked on matters including:

- Finalizing negotiation of the Debtors' postpetition debtor in possession credit agreement (the "**DIP Credit Agreement**").

- Attending to post-closing matters related to the DIP Credit Agreement, including negotiating, revising and reviewing ancillary agreements and legal opinions.

- Analyzing provisions of the DIP Credit Agreement and related documents.

- Numerous telephone conferences with counsel to the Debtors' prepetition lenders, counsel to the administrative agent and lenders under the DIP Credit Agreement and other parties in connection with the DIP Credit Agreement and other financing documentation.

- Negotiating and drafting revisions to the DIP Credit Agreement with counsel to the administrative agent and lenders under the DIP Credit Agreement and counsel to the Creditors' Committee in response to the Creditors' Committee's objection to the Debtors' motion to approve the DIP Credit Agreement and the Creditors' Committee's motion to approve alternative debtor in possession financing.

- Negotiating in connection with objections to the Debtors' motion to approve the DIP Credit Agreement and drafting, researching and reviewing a draft reply brief in response thereto.

- Preparing witness testimony and evidence in support of the Debtors' motion to approve the DIP Financing and obtaining approval of the same on a final basis at a contested evidentiary hearing.

- Communicating with the Debtors and their advisors regarding compliance with certain reporting requirements under the DIP Credit Agreement.

14

(g)    General Case Administration (Project Category 7)

The total number of hours billed for this project was 727.3.  The total fees related to this project were $618,575.50.

General Case Administration encompasses a multitude of tasks that do not fall within the other project categories.  The specific tasks associated with General Case Administration include:

- Participating in meetings and telephone conferences with the Debtors' management and employees covering topics such as the chapter 11 cases generally, interpretation of court orders, determination of the status of claims, contract and lease rejection issues, operational issues and general business issues.

- Participating in telephone conferences with the Office of the U.S. Trustee regarding various procedural, case management and other issues.

- Preparing final proposed orders granting certain relief.

- Preparing for, attending and taking part in bankruptcy court hearings.

- Reviewing filings that appear on the Debtors' case docket.

- Preparing agendas for bankruptcy court hearings.

- Communicating with the Debtors' claims, noticing and balloting agent regarding service of court papers.

- Maintaining a case calendar and communicating regarding meetings, deadlines and scheduling of bankruptcy court hearings.

(h)    Leases and Contracts (Project Category 8)

The total number of hours billed for this project was 315.3.  The total fees related to this project were $249,484.00.

During the Compensation Period, Davis Polk provided substantial services with respect to the Debtors' leases and executory contracts.  Under this project category, Davis Polk worked on matters including:

- Analyzing and researching issues related to numerous leases and executory contracts and advising the Debtors regarding the assumption, rejection and extending the time to assume or reject the same.

15

- Participating in sessions with the Debtors and their financial advisors regarding analysis of leases and executory contracts, including with respect to equipment and real estate leases.

- Researching and drafting a motion seeking approval of procedures to reject executory contracts and unexpired leases, and filing numerous notices to reject executory contracts and unexpired leases in accordance therewith.

- Researching and drafting several motions to assume or reject certain executory contracts and unexpired leases.

- Responding to numerous inquiries from contractual counterparties regarding assumption, rejection and other issues.

   (i)    <u>Litigation (Project Category 9)</u>

The total number of hours billed for this project was 116.9. The total fees related to this project were $104,476.50.

Under this project category, Davis Polk worked on matters including:

- Researching and reviewing adversary proceedings related to the Debtors' chapter 11 cases.

- Communicating with the Debtors' local counsel regarding potential violations of the automatic stay by a third party.

   (j)    <u>Non-DPW Retention and Fee Issues (Project Category 10)</u>

The total number of hours billed for this project was 197.3. The total fees related to this project were $153,396.00.

Davis Polk assisted the Debtors with issues surrounding the Debtors' retention of professionals retained specifically for these cases and other professionals retained in the ordinary course of the Debtors' businesses. Davis Polk also worked to ensure compliance of such professionals with applicable guidelines, court rules and orders. In these regards, Davis Polk performed services including:

- Assisting with the Debtors' retention of professionals in the Debtors' chapter 11 cases and in the ordinary course of business.

- Reviewing and commenting upon retention applications for the professionals separately retained by the Debtors in these cases.

- Communication and consultation with other retained professionals regarding retention and compensation requirements, scheduling and procedures.

16

- Responding to the other retained professionals' retention, monthly fee statement and interim fee application inquiries and various assistance to those professionals.

- Negotiating and resolving issues raised by the Debtors relating to the retention of certain advisors to the Creditors' Committee.

- Drafting and reviewing a motion to establish interim compensation procedures for retained professionals.

- Communication with and advice to the Debtors regarding monthly billing schedules and procedures.

- Communication with the Debtors' retained professionals related to establishing the schedule for the first interim fee application process.

(k)     Non-Working Travel (Project Category 11)

The total number of hours billed for this project was 103.1.  The total fees related to this project were $52,614.00.

The Non-Working Travel project category isolates Davis Polk's non-working travel time. It includes traveling to and from various destinations as part of Davis Polk's representation of the Debtors, including, but not limited to, this Court and the Debtors' offices in St. Louis, Missouri. Per the UST Guidelines, adjustments in the aggregate amount of $52,614.00 were made to Davis Polk's monthly statements during the Compensation Period to reflect a 50% reduction in time billed for non-working travel time.

(l)     Plan/Disclosure Statement (Project Category 12)

The total number of hours billed for this project was 1,938.1.  The total fees related to this project were $1,694,135.50.

Davis Polk performed services including:

- Drafting a motion seeking approval of the Debtors' entry into the restructuring support agreement and negotiating amendments to the restructuring support agreement.

- Drafting a motion seeking a 120-day extension of the Debtors' exclusive periods within which to file a plan and solicit votes thereon.

- Drafting and filing a chapter 11 plan of reorganization, a disclosure statement and a motion to approve the disclosure statement and solicitation procedures related thereto.

- Communicating with the Creditors' Committee and other parties regarding the plan of reorganization and the disclosure statement.

17

- Communicating with the Debtors' claims, noticing and balloting agent regarding the solicitation procedures.

(m)    <u>Preparation of Fee Statements and Applications and Budget (Project Category 13)</u>

The total number of hours billed for this project was 151.6.  The total fees related to this project were $95,570.00.

Davis Polk performed services including:

- Drafting and serving the Served Monthly Fee Statements in accordance with the Interim Compensation Order and the Guidelines.

- Analyzing the UST Guidelines to ensure compliance therewith.

- Formulating a budget and staffing plan in accordance with the UST Guidelines.

(n)    <u>Regulatory and Environmental (Project Category 14)</u>

The total number of hours billed for this project was 296.4.  The total fees related to this project were $262,592.50.

Davis Polk has assisted the Debtors with numerous environmental, regulatory and tax issues.  In connection therewith, Davis Polk performed services including:

- Researching and drafting a motion seeking approval for the Debtors to continue self-bonding their surface coal mining operations in Wyoming during the chapter 11 cases.

- Researching and analyzing environmental and regulatory issues, including with respect to the Mine Safety and Health Administration, and advising the Debtors regarding the same.

- Analyzing environmental permitting, licensing and reclamation issues in connection with the Debtors' restructuring process.

- Researching and analyzing tax issues and advising the Debtors regarding the same.

(o)    <u>Reporting (Project Category 15)</u>

The total number of hours billed for this project was 316.2.  The total fees related to this project were $258,404.50.

Under this project category, Davis Polk worked on matters including:

- Assisting the Debtors with all of their public disclosure filings with the Securities and Exchange Commission, including form 8-K and other questions of disclosure obligations under the securities law.

18

- Preparing and filing Exchange Act filings.

- Reviewing and commenting on reporting requests made by the U.S. Trustee and negotiating with the U.S. Trustee regarding the same.

- Researching issues arising with respect to the Debtors' schedules and statements of financial affairs.

- Reviewing, commenting on and preparing the Debtors' schedules and statements of financial affairs, and communicating with the Debtors' advisors regarding the same.

- Reviewing and discussing the Debtors' monthly operating reports.

30.     The foregoing professional services performed by Davis Polk were necessary and appropriate to the administration of the Debtors' chapter 11 cases. These services were in the best interests of the Debtors and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved. The services were performed in an efficient manner.

**Actual and Necessary Expenses**

31.     As set forth in Exhibit B hereto, Davis Polk has incurred or disbursed $257,488.33[3] in expenses in providing professional services to the Debtors during the Compensation Period. These expense amounts are intended to cover Davis Polk's direct operating costs, which costs are not incorporated into the Davis Polk hourly billing rates. Only clients who actually use services of the types set forth in Exhibit B are separately charged for such services. The effect of including such expenses as part of the hourly billing rates would unfairly impose additional costs upon clients who do not require extensive photocopying, delivery and other services.

---

[3] This amount does not include certain additional amounts that Davis Polk voluntarily wrote off during the Compensation Period.

19

32.    On several occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These expenses are not included in Davis Polk's overhead for the purpose of setting billing rates.  Davis Polk has made every effort to minimize its expenses in these cases.  The actual expenses incurred in providing professional services to the Debtors were necessary, reasonable and justified under the circumstances to serve the needs of the Debtors, their estates and their creditors.

### The Requested Compensation and Expense Reimbursement Should Be Allowed

33.    Section 331 of the Bankruptcy Code provides for compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  *Id*. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

20

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

*Id.* § 330(a)(3).

34.     The Guidelines require that all professional fee applications analyze the 12 factors for allowance of compensation set forth in *Johnson v. Georgia Highway Express*, 388 F.2d 714 (5th Cir. 1974) (the "**Johnson Factors**"); *see also P.A. Novelly v. Palans,* 960 F.2d 728 (8th Cir. 1992); *Chamberlain v. Kula*, 213 B.R. 729, 736-739 (B.A.P. 8th Cir. 1997).  These twelve factors are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant cases; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the cases; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

35.     Davis Polk respectfully submits that its Application satisfies all of the *Johnson* Factors, as discussed below.

(a)     <u>The time and labor required</u>.  Davis Polk's representation of the Debtors as debtors in possession required extensive time and effort during a critical period in the Debtors' cases.

(b)     <u>The novelty and difficulty of questions</u>.  More than 1,040 motions, notices, applications, petitions, orders and other pleadings have been filed in the more than five months since the Petition Date.  Addressing these motions, negotiations and a

21

multitude of creditor, supplier and customer inquiries has required extensive time and resources, and such efforts have been largely successful. To date, there has been only one contested hearing in these chapter 11 cases, which is largely attributable to Davis Polk's extensive efforts responding to and negotiating with parties that have raised issues during the Compensation Period. However, the sheer number and scope of issues that have arisen during these cases demonstrate their size and complexity.

       (c)    <u>The skill required to perform legal services properly</u>. Each of the novel and difficult issues presented in this case has required the dedicated and diligent attention of Davis Polk's attorneys. Davis Polk believes that its attorneys have demonstrated the skill levels necessary for the vigorous representation of the Debtors' interests in these cases.

       (d)    <u>The preclusion of employment due to acceptance of the case</u>. It cannot be known whether this assignment has precluded Davis Polk from other employment, but the professionals involved in this case devoted significant portions (and, with respect to the core members of the team, the overwhelming majority) of their time to the Debtors' affairs and were, to that extent, unable to address other matters.

       (e)    <u>The customary fee</u>. The rates charged by Davis Polk in this matter reflect a negotiated discount from the rates that Davis Polk customarily charges other clients for work of this type.

       (f)    <u>Whether the fee is fixed or contingent</u>. The fees requested herein are requested on an hourly basis.

22

(g)     <u>Time limitations imposed by the client or the circumstances</u>.  This case posed time pressures due to the need for the Debtors to proceed with their restructuring process expeditiously.

(h)     <u>The amount involved and the results obtained</u>.  The Debtors and their professionals have taken numerous positive steps in these proceedings.  Taking into account the size and complexity of the Debtors' cases, the Debtors have made progress toward achieving their goals of maximizing value for all stakeholders and reorganizing and emerging as a competitive and viable business.  As would be expected of companies as large as and with businesses as complex as the Debtors', there is more that needs to be done, and Davis Polk anticipates that progress will continue to be made.  Davis Polk believes that the amounts involved are commensurate with the results obtained and the foundation for future resolutions laid during the Compensation Period.

(i)     <u>The experience, reputation and ability of the attorneys</u>.  Davis Polk is widely recognized as one of the premier law firms in the country, particularly in the area of coal industry restructurings.  The Davis Polk attorneys working on this matter have substantial experience with highly complex restructuring matters.

(j)     <u>The undesirability of the case</u>.  Davis Polk was and is privileged to have the opportunity to represent the Debtors.

(k)     <u>The nature and length of the professional relationship with the client</u>.  As discussed in its employment application, Davis Polk has rendered legal services to the Debtors since March of 2015.

(l)      <u>Awards in similar cases</u>.  Both the rates charged and hours incurred in this

case are proportionate to, and in some instances less than, fees requested in similar large

chapter 11 cases throughout the United States.

36.      In the instant case, Davis Polk respectfully submits that the services for which it

seeks compensation and the expenditures for which it seeks reimbursement in this Application

were necessary for and beneficial to the orderly administration of the Debtors' estates and the

Debtors' restructuring process.  Davis Polk worked assiduously to anticipate or respond to the

Debtors' needs and assist in the Debtors' chapter 11 process.  Such services and expenditures

were necessary to and in the best interests of the Debtors' estates and creditors.  Davis Polk

further submits that the compensation requested herein is reasonable in light of the nature, extent

and value of such services to the Debtors, their estates and all parties in interest.

37.      Whenever possible, Davis Polk sought to minimize the costs of its services to the

Debtors by utilizing talented junior attorneys, summer associates and paraprofessionals to handle

more routine aspects of case administration.  A small group of the same Davis Polk attorneys

was utilized for the vast majority of the work in these cases to minimize the costs of intra-Davis

Polk communication and education about the Debtors' circumstances.  For example, as

mentioned above, a core group of nine Davis Polk attorneys accounted for approximately 70% of

the associate time expended on these cases during the Compensation Period, and three partners

accounted for more than 90% of the partner hours worked during the Compensation Period.

38.      In sum, approval of the compensation for professional services and

reimbursement of expenses sought herein is warranted.

## Notice

39.     Consistent with the Case Management Order and the Interim Compensation Order, Davis Polk will serve notice of this Application on (a) the Core Parties (including on the U.S. Trustee via overnight mail) and the Non-ECF Parties (as those terms are defined in the Case Management Order) (collectively, the "**Notice Parties**").  All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this Application through the ECF system no later than the day after its filing with the Court.  A copy of this Application and any order approving it will also be made available on the Debtors' Case Information Website (located at *https://cases.primeclerk.com/archcoal*).  A copy of the Proposed Order will be made available on the Debtors' Case Information Website.  The Proposed Order may be modified or withdrawn at any time without further notice.  If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Debtors' Case Information Website, and no further notice will be provided.  In light of the relief requested, the Debtors submit that no further notice is necessary.

## No Prior Request

40.     Davis Polk has not previously sought the relief requested herein from this or any other court.

WHEREFORE, Davis Polk respectfully requests that this Court:

(a) allow of compensation for professional services rendered during the Compensation Period in the amount of $7,580,394.00 and reimbursement of actual and necessary expenses Davis Polk incurred during the Compensation Period in the amount of $257,488.33;

(b) authorize the Debtors to pay to Davis Polk that portion of the compensation amount not yet paid;

(c) allow such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Davis Polk's right to seek additional compensation for services performed and expenses incurred during the Compensation Period that were not processed at the time of this Application; and

(d) grant such other and further relief as is just.

26

Dated:    June 30, 2016
          New York, New York

                              Respectfully submitted,

                              DAVIS POLK & WARDWELL LLP


                              /s/ Kevin J. Coco
                              Marshall S. Huebner
                              Brian M. Resnick
                              Michelle M. McGreal
                              Kevin J. Coco

                              450 Lexington Avenue
                              New York, New York 10017
                              (212) 450-4000
                              Fax:    (212) 607-7983
                              marshall.huebner@davispolk.com
                              brian.resnick@davispolk.com
                              michelle.mcgreal@davispolk.com
                              kevin.coco@davispolk.com

                              *Counsel to the Debtors and Debtors in Possession*

                              -and-

                              BRYAN CAVE LLP

                              Lloyd A. Palans, #22650MO
                              Brian C. Walsh, #58091MO
                              Cullen K. Kuhn, #53151MO
                              Laura Uberti Hughes, #60732MO

                              One Metropolitan Square
                              211 N. Broadway, Suite 3600
                              St. Louis, Missouri 63102
                              (314) 259-2000
                              Fax:  (314) 259-2020
                              lapalans@bryancave.com
                              brian.walsh@bryancave.com
                              ckkuhn@bryancave.com
                              laura.hughes@bryancave.com

                              *Local Counsel to the Debtors and Debtors in
                              Possession*

## SCHEDULE 1
## Debtor Entities

| | |
|---|---|
| 1. ACI Terminal, LLC | 37. ICG Eastern, LLC |
| 2. Allegheny Land Company | 38. ICG Eastern Land, LLC |
| 3. Apogee Holdco, Inc. | 39. ICG Illinois, LLC |
| 4. Arch Coal, Inc. | 40. ICG Natural Resources, LLC |
| 5. Arch Coal Sales Company, Inc. | 41. ICG Tygart Valley, LLC |
| 6. Arch Coal West, LLC | 42. International Coal Group, Inc. |
| 7. Arch Development, LLC | 43. Jacobs Ranch Coal LLC |
| 8. Arch Energy Resources, LLC | 44. Jacobs Ranch Holdings I LLC |
| 9. Arch Reclamation Services, Inc. | 45. Jacobs Ranch Holdings II LLC |
| 10. Arch Western Acquisition Corporation | 46. Juliana Mining Company, Inc. |
| 11. Arch Western Acquisition, LLC | 47. King Knob Coal Co., Inc. |
| 12. Arch Western Bituminous Group, LLC | 48. Lone Mountain Processing, Inc. |
| 13. Arch Western Finance LLC | 49. Marine Coal Sales Company |
| 14. Arch Western Resources, LLC | 50. Melrose Coal Company, Inc. |
| 15. Arch of Wyoming, LLC | 51. Mingo Logan Coal Company |
| 16. Ark Land Company | 52. Mountain Coal Company, L.L.C. |
| 17. Ark Land KH, Inc. | 53. Mountain Gem Land, Inc. |
| 18. Ark Land LT, Inc. | 54. Mountain Mining, Inc. |
| 19. Ark Land WR, Inc. | 55. Mountaineer Land Company |
| 20. Ashland Terminal, Inc. | 56. Otter Creek Coal, LLC |
| 21. Bronco Mining Company, Inc. | 57. Patriot Mining Company, Inc. |
| 22. Catenary Coal Holdings, Inc. | 58. P.C. Holding, Inc. |
| 23. Catenary HoldCo, Inc. | 59. Powell Mountain Energy, LLC |
| 24. Coal-Mac, Inc. | 60. Prairie Coal Company, LLC |
| 25. CoalQuest Development LLC | 61. Prairie Holdings, Inc. |
| 26. Cumberland River Coal Company | 62. Saddleback Hills Coal Company |
| 27. Energy Development Co. | 63. Shelby Run Mining Company, LLC |
| 28. Hawthorne Coal Company, Inc. | 64. Simba Group, Inc. |
| 29. Hobet Holdco, Inc. | 65. Thunder Basin Coal Company, L.L.C. |
| 30. Hunter Ridge, Inc. | 66. Triton Coal Company, L.L.C. |
| 31. Hunter Ridge Coal Company | 67. Upshur Property, Inc. |
| 32. Hunter Ridge Holdings, Inc. | 68. Vindex Energy Corporation |
| 33. ICG, Inc. | 69. Western Energy Resources, Inc. |
| 34. ICG, LLC | 70. White Wolf Energy, Inc. |
| 35. ICG Beckley, LLC | 71. Wolf Run Mining Company |
| 36. ICG East Kentucky, LLC | |

**Index of Exhibits**

| | |
|---|---|
| Exhibit A | Summary of Timekeepers Included in This Application |
| Exhibit B | Schedule of Expenses |
| Exhibit C | Budget and Staffing Plan |
| Exhibit D | Summary of Hours and Amounts Billed by Project Category |
| Exhibit E | Customary and Comparable Compensation Disclosures |
| Exhibit F | Time Records of Davis Polk Professionals |

# EXHIBIT A

# SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION

**I.      Partners/Counsel**

| NAME OF PARTNER/ COUNSEL | YEAR ADMITTED | DEPARTMENT | TOTAL HOURS BILLED | HOURLY RATE | TOTAL FEES |
|---|---|---|---|---|---|
| **Partners** | | | | | |
| Michael Davis | 2000-NY | Mergers & Acquisitions | 4.1 | $1250 | $5,125.00 |
| Kathleen L. Ferrell | 1981-MA 1982-DC 1998-NY | Tax | 19.7 | $1250 | $24,625.00 |
| Edmond T. FitzGerald | 1991-NY | Executive Compensation | 3.4 | $1250 | $4,250.00 |
| Marshall S. Huebner | 1994-NY | Insolvency and Restructuring | 410.3 | $1250 | $500,812.50 |
| Michael Kaplan | 1995-NJ 1996-NY | Capital Markets | 9.4 | $1250 | $11,750.00 |
| Jinsoo H. Kim | 1996-NY | Credit | 76.2 | $1250 | $95,250.00 |
| Elliot Moskowitz | 2002-NY | Litigation | 419 | $1250 | $515,125.00 |
| Brian M. Resnick | 2004-NY | Insolvency and Restructuring | 501.4 | $1250 | $623,937.50 |
| Amelia T.R. Starr | 1995-NY | Litigation | 3.0 | $1250 | $3,750.00 |
| **Counsel** | | | | | |
| Ron M. Aizen | 2006-NY | Executive Compensation | 54.5 | $955 | $52,047.50 |
| David R. Bauer | 2008-NY | Intellectual Property | 3.6 | $955 | $3,438.00 |
| Susan D. Kennedy | 1984-NY | Real Estate | 2.6 | $955 | $2,483.00 |
| Meredith L. Mackey | 2003-NY | Capital Markets | 91.1 | $955 | $87,000.50 |
| Michelle M. McGreal | 2007-NJ 2008-NY | Insolvency and Restructuring | 480.5 | $955 | $448,086.00 |
| John Perry | 2008-NY | Credit | 26.2 | $955 | $25,021.00 |
| Erika D. White | 1982-NY | Insolvency and Restructuring | 3.0 | $955 | $2,865.00 |
| David A. Zilberberg | 1999-NY | Environmental | 17.8 | $955 | $16,999.00 |
| **Total Partners and Counsel** | | | **2125.8** | | **$2,422,565.00** |

II.    **Associates**

| NAME OF ASSOCIATE | YEAR ADMITTED | DEPARTMENT | TOTAL HOURS BILLED | HOURLY RATE | TOTAL FEES[9] |
|---|---|---|---|---|---|
| Daniel J. Ain | Admission Pending | Credit | 99.8 | $575 | $57,385.00 |
| Nick M. Axelrod | 2014-NY | Litigation | 800.7 | $840 | $670,908.00 |
| Ashley Barriere | Admission Pending | Litigation | 33.0 | $575 | $18,975.00 |
| Ashley Barriere | 2016-NY | Litigation | 372.2 | $710 | $256,729.00 |
| Kevin A. Bensley | 2012-NY | Intellectual Property | 1.2 | $870 | $1,044.00 |
| Lara Samet Buchwald | 2008-NJ 2009-NY | Litigation | 239.3 | $870 | $207,973.50 |
| Julian Bulaon | Admission Pending | Insolvency and Restructuring | 48.8 | $575 | $28,060.00 |
| Kevin J. Coco | 2010-NY | Insolvency and Restructuring | 862.6 | $870 | $745,329.00 |
| Joshua S. Cohn | 2015-NY | Litigation | 22.4 | $710 | $15,904.00 |
| Courtney Collins | 2014-NY | Capital Markets | 90.7 | $840 | $76,188.00 |
| Michael Comstock | 2013-NY | Environmental | 8.1 | $870 | $7,047.00 |
| Dylan A. Consla | 2015-NY | Insolvency and Restructuring | 36 | $710 | $25,560.00 |
| Peter J. Davis | 2013-NY | Litigation | 98 | $870 | $85,260.00 |
| Hilary Dengel | 2008-NY | Credit | 1.3 | $870 | $1,131.00 |
| Aryeh E. Falk | 2013-NY | Insolvency and Restructuring | 659.8 | $870 | $574,026.00 |
| Hannah B. Gerstenblatt | NY-2015 | Litigation | 14.5 | $710 | $10,295.00 |
| Erin Harvey | Admission Pending | Tax | 74.9 | $575 | $43,067.50 |
| Erin Harvey | 2016-NY | Tax | 6.6 | $710 | $3,795.00 |
| Felipe M. Heiderich | NY-2014 | Mergers & Acquisitions | 28.5 | $575 | $23,940.00 |
| Stephen J. Holler | 2010-NY | Real Estate | 114.1 | $870 | $99,267.00 |
| Vanessa L. Jackson | 2013-NY | Credit | 98.9 | $870 | $86,043.00 |
| Jennifer (Yujia) Jiang | 2012-NY | Capital Markets | 20.6 | $710 | $14,626.00 |
| Douglas R. Keeton | Admission Pending | Insolvency and Restructuring | 438.8 | $575 | $252,310.00 |

---

[9] These figures reflect voluntary reductions discussed in footnote 2 on the first page of this Monthly Fee Statement.

2

| | | | | | |
|---|---|---|---|---|---|
| Douglas R. Keeton | 2016-NY | Insolvency and Restructuring | 151.6 | $710 | $107,636.00 |
| Ronald J. Krock | 2015-NY | Litigation | 61.8 | $575 | $35,535.00 |
| Nara Lee | Admission Pending | Capital Markets | 2.2 | $575 | $1,265.00 |
| Amy Ma | 2013-NY | Insolvency and Restructuring | 65.6 | $870 | $57,072.00 |
| Daniel S. Magy | 2015-NY | Litigation | 182.8 | $710 | $129,788.00 |
| Tracy L. Matlock | 2013-NY | Tax | 83.9 | $870 | $72,993.00 |
| Ryan McCartney | 2015-NY | Litigation | 272.4 | $710 | $193,404.00 |
| Patrick Moroney | 2013-NY | Litigation | 4.7 | $870 | $4,089.00 |
| Cristopher Nairn | 2016-NY | Credit | 64.4 | $710 | $45,724.00 |
| Cameron W. Ormsby | 2016-NY | Capital Markets | 8.1 | $575 | $4,657.50 |
| Bradley A. Schecter | 2014-NY | Insolvency and Restructuring | 224.3 | $840 | $180,600.00 |
| David Schiff | 2014-NY | Insolvency and Restructuring | 14.0 | $840 | $11,760.00 |
| Brian G. Sieben | Admission Pending | Executive Compensation | 51.6 | $575 | $29,670.00 |
| Lara Singer | Admission Pending | Corporate | 1.8 | $320 | $576.00 |
| Matthew Specht | Admission Pending | Litigation | 18.8 | $575 | $10,810.00 |
| Jillian Rennie Stillman | 2010-NY | Litigation | 395.5 | $870 | $340,605.00 |
| Alan J. Tabak | 2011-NY | Litigation | 6.5 | $870 | $5,655.00 |
| Andrei Takhteyev | 2011-NY | Credit | 31.7 | $870 | $27,579.00 |
| William Tong | 2010 – England and Wales | Corporate | 2.2 | $870 | $1,914.00 |
| Natasha Tsiouris | 2011-NY | Insolvency and Restructuring | 27.3 | $870 | $23,751.00 |
| Brandon Une | Admission Pending | Insolvency and Restructuring | 57.4 | $575 | $33,005.00 |
| Brandon Une | 2016-NY | Insolvency and Restructuring | 57.4 | $710 | $33,005.00 |
| Rebecca Van Derlaske | 2014-NY | Insolvency and Restructuring | 79.4 | $840 | $66,696.00 |
| Jordan Weber | 2015-NY | Insolvency and Restructuring | 1.2 | $710 | $852.00 |
| Jacob Weiner | Admission Pending | Insolvency and Restructuring | 175.6 | $575 | $100,970.00 |
| Samuel J. Zeidman | 2013-NY | Litigation | 51.0 | $870 | $44,370.00 |
| **Total Associates** | | | **6264.0** | | **$4,868,844.50** |

3

**III.     Summer Associates**

| NAME OF ASSOCIATE | YEAR ADMITTED | DEPARTMENT | TOTAL HOURS BILLED | HOURLY RATE | TOTAL FEES |
|---|---|---|---|---|---|
| Joseph M. Gerstel | N/A | N/A | 1.1 | $300 | $330.00 |
| Edward K. Yu | N/A | N/A | 4.3 | $300 | $1,290.00 |
| **Total Summer Associates:** | | | **5.4** | | **$1,620.00** |

**IV.    Paraprofessionals**

| NAME OF PARAPROFESSIONAL | DEPARTMENT | TOTAL HOURS BILLED | HOURLY RATE | TOTAL FEES[10] |
|---|---|---|---|---|
| Lysander Anastacio | Litigation Technical Services | 18.6 | $375 | $6,975.00 |
| Colin Ivor Bowrey | Litigation Technical Services | 35.0 | $310 | $10,850.00 |
| Kin Man Chau | Litigation Technical Services | 68.1 | $260 | $17,706.00 |
| Karen S. Cottrell | Legal Assistant | 105.2 | $445 | $46,814.00 |
| John P. Denkowski | Research Services | 1.8 | $445 | $801.00 |
| Yoon (Robert) S. Han | Discovery Attorney | 35.3 | $365 | $12,884.50 |
| Laura Healy | Litigation Technical Services | 28.2 | $385 | $10,857.00 |
| Lisa Hirakawa | Legal Assistant | 1.7 | $445 | $756.50 |
| Alex Ionescu | Litigation Technical Services | 46.0 | $260 | $11,960.00 |
| Sonya Jackman | Legal Assistant | 0.2 | $445 | $89.00 |
| Eileen Y. Kim | Discovery Attorney | 34.0 | $365 | $12,410.00 |
| Elliot C. Law | Legal Assistant | 141.5 | $445 | $62,967.50 |
| Sorina Delia Lazar | Legal Assistant | 1.8 | $445 | $801.00 |
| Amanda M. Mitchell | Legal Assistant | 30.4 | $445 | $13,528.00 |
| Mary Kate Nolan | Legal Assistant | 6.4 | $270 | $1,728.00 |
| Marlon Oliva | Litigation Technical Services | 3.0 | $355 | $1,065.00 |
| Jeffrey Parris | Discovery Attorney | 40.5 | $365 | $14,782.50 |
| Adam Pravda | Litigation Technical Services | 2.1 | $385 | $808.50 |
| Camila R. Rich | Legal Assistant | 2.2 | $270 | $594.00 |
| Marjorie Richmond | Research Services | 3.2 | $395 | $1,264.00 |
| Heidi J. Shin | Document Clerk | 3.0 | $125 | $375.00 |
| Stephanie Smith | Discovery Attorney | 54.3 | $365 | $19,819.50 |
| Jonah J. Stotsky | Legal Assistant | 3.2 | $445 | $1,424.00 |
| Vanessa Toro-Plaza | Legal Assistant | 55.2 | $445 | $24,564.00 |
| Meagan J. Tousley | Discovery Attorney | 20.2 | $365 | $7,373.00 |
| Joshua P. Trosch | Legal Assistant | 6.7 | $270 | $1,809.00 |
| Theresa Volano | Legal Assistant | 2.4 | $445 | $1,068.00 |
| Mark Zaleck | Research Services | 2.9 | $445 | $1,290.50 |
| **Total Paraprofessionals** | | **753.1** | | **$287,364.50** |

---

[10] These figures reflect voluntary reductions discussed in footnote 2 on the first page of this Monthly Fee Statement.

**EXHIBIT B**

**ACTUAL AND NECESSARY EXPENSES
INCURRED BY DAVIS POLK & WARDWELL LLP ON
BEHALF OF THE DEBTORS DURING THE COMPENSATION PERIOD**

| CATEGORY OF EXPENSES | AMOUNTS |
|---|---|
| Computer Research | $36,567.33 |
| Conference Calls | $2,746.77 |
| Court Reporter | $10,819.60 |
| Duplication | $11,830.75 |
| Filing Fees | $124,342.36 |
| Litigation Support | $3,007.85 |
| Meals | $6,171.29 |
| Outside Documents and Research | $9,125.75 |
| Postage, Courier and Freight | $1,388.56 |
| Travel | $35,984.57 |
| Word Processing Services | $15,503.50 |
| **Total:** | **$257,488.33** |

## EXHIBIT C

## BUDGET AND STAFFING PLAN

**I.      Budget by Project Category for the Period of January 11, 2016 Through May 31, 2016**

| Project Category | Estimated Hours | Estimated Fees |
|---|---|---|
| Asset Dispositions | 206-252 | $181,147-$221,402 |
| Corporate Governance, Board Matters and Communication | 206-252 | $181,147-$221,402 |
| Creditor, Equityholder and UCC Issues | 1547-1891 | $1,358,608-$1,660,522 |
| DPW Retention | 206-252 | $181,147-$221,402 |
| Employee/Labor Issues | 206-252 | $181,147-$221,402 |
| Financing, Cash Collateral and Adequate Protection | 1959-2394 | $1,720,905-$2,103,327 |
| General Case Administration | 1031-1260 | $905,739-$1,107,014 |
| Leases and Contracts | 516-631 | $452,869-$553,507 |
| Litigation | 928-1134 | $815,166-$996,313 |
| Non-DPW Retention and Fee Issues | 206-252 | $181,147-$221,402 |
| Non-Working Travel | 103-126 | $90,574-$110,702 |
| Plan/Disclosure Statement | 1959-2394 | $1,720,905-$2,103,327 |
| Preparation of Fee Statement and Applications and Budget | 206-252 | $181,147-$221,402 |
| Regulatory and Environmental | 825-1008 | $724,591-$885,611 |
| Reporting | 206-252 | $181,147-$221,402 |
| **Total:** | **10,309-12,603** | **$9,057,393-$11,070,144** |

**II.    Staffing Plan by Timekeeper Category for the Period of January 11, 2016 Through May 31, 2016**

| Category of Timekeeper | Number of Principal Timekeepers Expected to Perform Significant Work Across All Matters During the Budget Period | Average Hourly Rate[1] |
|---|---|---|
| Partner | 4 | $1,246 |
| Counsel | 1 | $955 |
| Associate | 10 | $769 |
| Paraprofessional | 1 | $428 |
| **Total:** | **16** | **$879** |

---

[1] The Average Hourly Rate is a weighted blended rate based on the individual hourly rate of, and projected number of hours to be worked by, each timekeeper during the budget period.

2

## EXHIBIT D

### SUMMARY OF HOURS AND AMOUNTS BILLED DURING
### THE COMPENSATION PERIOD BY DAVIS POLK & WARDWELL LLP,
### ORGANIZED BY INTERNAL PROJECT CATEGORY

| PROJECT CATEGORY | DESCRIPTION | HOURS BUDGETED | FEES BUDGETED | HOURS BILLED | FEES SOUGHT |
|---|---|---|---|---|---|
| 1. | Asset Dispositions | 206-252 | $181,147-$221,402 | 330.2 | $278,793.50 |
| 2. | Corporate Governance, Board Matters and Communications | 206-252 | $181,147-$221,402 | 118.8 | $119,269.00 |
| 3. | Creditor, Equityholder and UCC Issues | 1547-1891 | $1,358,608-$1,660,522 | 2527.6 | $1,997,120.50 |
| 4. | DPW Retention | 206-252 | $181,147-$221,402 | 40 | $32,141.50 |
| 5. | Employee/Labor Issues | 206-252 | $181,147-$221,402 | 494.1 | $432,479.00 |
| 6. | Financing, Cash Collateral and Adequate Protection | 1959-2394 | $1,720,905-$2,103,327 | 1475.4 | $1,231,342.00 |
| 7. | General Case Administration | 1031-1260 | $905,739-$1,107,014 | 727.3 | $618,575.50 |
| 8. | Leases and Contracts | 516-631 | $452,869-$553,507 | 315.3 | $249,484.00 |
| 9. | Litigation | 928-1134 | $815,166-$996,313 | 116.9 | $104,476.50 |
| 10. | Non-DPW Retention and Fee Issues | 206-252 | $181,147-$221,402 | 197.3 | $153,396.00 |
| 11. | Non-Working Travel | 103-126 | $90,574-$110,702 | 103.1 | $52,614.00 |
| 12. | Plan/Disclosure Statement | 1959-2394 | $1,720,905-$2,103,327 | 1938.1 | $1,694,135.50 |
| 13. | Preparation of Fee Statement and Applications and Budget | 206-252 | $181,147-$221,402 | 151.6 | $95,570.00 |
| 15. | Regulatory and Environmental | 825-1008 | $724,591-$885,611 | 296.4 | $262,592.50 |
| 16. | Reporting | 206-252 | $181,147-$221,402 | 316.2 | $258,404.50 |
| **Total Hours and Fees:** | | **10,309-12,603** | **$9,057,393-$11,070,144** | **9,148.3** | **$7,580,394.00** |

## EXHIBIT E

## CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | **BILLED**<br>Professionals at the New York Office of<br>Davis Polk & Wardwell LLP for 2015, Excluding Bankruptcy Matters[1] | **BILLED**<br>This Application |
| **Partner** | $1,226.24 | $1,250.00 |
| **Counsel** | $973.23 | $955.00 |
| **Associate** | $649.65 | $777.27 |
| **Legal Assistant** | $289.47 | $381.58 |
| **All Timekeepers Aggregated** | $728.82 | $828.61 |

---

[1] This blended hourly rate is adjusted to exclude hours and compensation billed to certain clients with special billing arrangements.